COOLEY GODWARD KRONISH LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
LEO P. NORTON (216282) (lnorton@cooley.com)
4401 Eastgate Mall
San Diego, CA  92121
Telephone:     (858) 550-6000
Facsimile:      (858) 550-6420

Attorneys for Defendant
GOOGLE INC.[1]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID ALMEIDA, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>GOOGLE, INC. a Delaware Corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No.  08-CV-02088 RMW (PVT)<br><br>**DECLARATION OF LEO P. NORTON IN SUPPORT OF ADMINISTRATIVE MOTION TO CONSIDER WHETHER PUTATIVE CLASS ACTION CASES AGAINST GOOGLE INC. REGARDING ADWORDS ADVERTISING PROGRAM SHOULD BE RELATED (Civil L.R. 3-12 & 7-11)** |

---

[1] KEKER & VAN NEST LLP attorneys Daralyn J. Durie, David J. Silbert, Ryan M. Kent, and Alyse Bertenthal are counsel of record for Google Inc. in this case, and have already appeared in this action.  COOLEY GODWARD KRONISH LLP ("Cooley") and its attorneys listed above are counsel for Google Inc. in the three actions sought to be related with this action.  Civil Local Rule 3-12 requires that this motion be made in the first filed action, which is this action, and therefore the Cooley attorneys make this motion in this case on Google's behalf.

I, Leo P. Norton, declare:

1.     I am an attorney licensed to practice law in the State of California, and I am admitted to practice before this Court.  I am an associate with the law firm of Cooley Godward Kronish LLP, attorneys for Defendant Google Inc. in three of the four actions sought to be related.  As an attorney for Google, I have personal knowledge of the facts set forth in this Declaration, and if called upon to testify, I could and would testify competently thereto.

2.     Attached hereto as Exhibit 1 is a true and correct copy of the Complaint against Google in the case entitled *David Almeida v. Google, Inc.*, Case No. C 08-02088-RMW ("*Almeida* case"), which was filed on April 22, 2008.

3.     Attached hereto as Exhibit 2 is a true and correct copy of the Complaint against Google in the case entitled *Hal K. Levitte v. Google, Inc.*, Case No. C 08-03369-JW ("*Levitte* case"), which was filed on July 11, 2008.

4.     Attached hereto as Exhibit 3 is a true and correct copy of the Complaint against Google in the case entitled *RK West, Inc. v. Google, Inc.*, Case No. C 08-03452-RMW ("*RK West* case"), which was filed on July 17, 2008.

5.     Attached hereto as Exhibit 4 is a true and correct copy of the Complaint against Google in the case entitled *Pulaski & Middleman, LLC v. Google Inc.*, Case No. C 08-03888-SI ("*Pulaski* case"), which was filed on August 14, 2008.

6.     On August 25, 2008, I sent plaintiffs' counsel in the *Almeida*, *Levitte*, *RK West*, and *Pulaski* cases a meet and confer letter via email and mail.  I wrote to them to:  (1) notify them that the *Levitte*, *RK West*, and *Pulaski* cases are related to each other and to the earlier-filed *Almeida* case; (2) attempt to reach a stipulation on Google's intended administrative motion under Civil Local Rules 3-12 and 7-11 to relate the cases; and (3) request that Google's time to answer or otherwise respond to the *Levitte*, *RK West*, and *Pulaski* cases complaints be coordinated and an extension of time such that Google's new response deadline in those three cases is on or before September 30, 2008.  I requested that plaintiffs' counsel respond to my letter by end of day Wednesday, August 27, 2008.  Attached as Exhibit 5 is a true and correct copy of the letter I sent to plaintiffs' counsel on August 25, 2008.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

1.

NORTON DEC I/S/O ADMINISTRATIVE MOTION
08-CV-02088 RMW (PVT)

7.    On August 26, 2008, at 9:24 a.m., I received an email from plaintiff's counsel in the *Levitte* case, which was copied to all other plaintiffs' counsel, purporting to write on behalf of plaintiffs' counsel in the *Almeida*, *Levitte*, *RK West*, and *Pulaski* cases and requesting an additional week to and including September 3, 2008 to respond to my August 25, 2008 letter and granting an interim extension to respond to the complaint in the *Levitte* case.  Later that day, at 12:19 p.m., I responded via email, which was copied to all plaintiffs' counsel in the four cases, granting their requested extension.  Still later that day, at 1:00 p.m., I received another email from plaintiff's counsel in the *Levitte* case, which was copied to all other plaintiffs' counsel, stating that plaintiffs' counsel in the four cases would be discussing the issues raised in my August 25, 2008 letter and that they would respond by Thursday, August 28, 2008 at the latest.  Attached as Exhibit 6 is a true and correct copy of an email chain containing my email to all plaintiffs' counsel on August 25, 2008 enclosing my August 25, 2008 letter, the *Levitte* case plaintiff's counsel's response on August 26, 2008, at 9:24 a.m., my response that day at 12:19 p.m., and the *Levitte* case plaintiff's counsel's response at 1:00 p.m.

8.    I did not receive a response from any of the plaintiffs' counsel on Thursday, August 28, 2008 as promised.  Having still not received any response after the holiday weekend, I emailed all plaintiffs' counsel on September 2, 2008, at 8:11 a.m., demanding that plaintiffs respond to my August 25, 2008 letter by noon.  Attached as Exhibit 7 is a true and correct copy of my September 2, 2008 email.

9.    As of the signing and filing of this declaration, I have not received a response to my August 25, 2008 letter or any of my email communications from the *RK West* case plaintiff's counsel.  The *RK West* plaintiff's counsel, who is also the *Almeida* case plaintiff's counsel, is the only plaintiff's counsel that has not responded to my communications, and it is the only plaintiff's counsel that has not responded to my request that Google's time to answer or otherwise respond to the *Levitte*, *RK West*, and *Pulaski* cases complaints be coordinated and that Google be granted an extension of time such that Google's new response deadline in those three cases is on or before September 30, 2008.  I have received responses from the *Levitte* and *Pulaski* cases plaintiffs, both of whom take the position that the *Almeida* case is not related but have stipulated to Google's

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

2.

NORTON DEC I/S/O ADMINISTRATIVE MOTION
08-CV-02088 RMW (PVT)

1  request for a consolidated response deadline of September 30, 2008.

2          10.    Late in the morning on September 2, 2008, I received via priority U.S. mail the *RK*

3  *West* case plaintiff's Administrative Motion to Consider Whether Cases Should be Related

4  Pursuant to Civil Local Rule 3-12 and supporting documents that were filed in the *RK West* case.

5  The administrative motion seeks to relate the *Levitte*, *RK West*, and *Pulaski* cases before Judge

6  James Ware.

7          11.    Concurrently with the filing of this administrative motion, Google filed an

8  opposition to the *RK West* case plaintiff's administrative motion in the *RK West* case. Attached as

9  Exhibit 8 is a true and correct copy of Google's Opposition to Administrative Motion to Consider

10  Whether Cases Should be Related Pursuant to Civil Local Rule 3-12 filed on September 4, 2008.

11  Attached as Exhibit 9 is a true and correct copy of the Declaration of Leo P. Norton in Support of

12  Opposition to Administrative Motion to Consider Whether Cases Should be Related Pursuant to

13  Civil Local Rule 3-12 filed on September 4, 2008.

14          I declare under penalty of perjury under the laws of the United States that the foregoing is

15  true and correct.  Executed on September 4, 2008, at San Diego, California.

16

17                                                           Leo P. Norton

18

19

20

21

22

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

3.

NORTON DEC I/S/O ADMINISTRATIVE MOTION
08-CV-02088 RMW (PVT)

# CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2008, I electronically filed the foregoing **DECLARATION OF LEO P. NORTON IN SUPPORT OF ADMINISTRATIVE MOTION TO CONSIDER WHETHER PUTATIVE CLASS ACTION CASES AGAINST GOOGLE INC. REGARDING ADWORDS ADVERTISING PROGRAM SHOULD BE RELATED (CIVIL L.R. 3-12 & 7-11)** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record at the following listed email addresses.

- **Alyse Deborah Bertenthal**
  abertenthal@kvn.com,efiling@kvn.com,kxs@kvn.com
- **Daralyn J. Durie**
  ddurie@kvn.com,efiling@kvn.com,smitra@kvn.com,sbrock@kvn.com,dmiller@kvn.com
- **Brian S. Kabateck**
  bsk@kbklawyers.com
- **Ryan Marshall Kent**
  rkent@kvn.com,mcanales@kvn.com,efiling@kvn.com
- **David Jason Silbert**
  djs@kvn.com,efiling@kvn.com,aap@kvn.com
- **Alfredo Torrijos**
  at@kbklawyers.com,icd@kbklawyers.com

I also hereby certify that I caused the foregoing document to be personally delivered by consigning the document(s) to an authorized courier and/or process server for hand delivery on this 4th day of September, 2008 to the following listed addresses.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

4.

NORTON DEC I/S/O ADMINISTRATIVE MOTION
08-CV-02088 RMW (PVT)

| | | |
|---|---|---|
| 1 | Guido Saveri | Terry Gross |
| 2 | R. Alexander Saveri | Adam C. Belsky |
| | Cadio Zirpoli | Monique Alonso |
| 3 | Saveri & Saveri Inc. | Gross Belsky Alonso LLP |
| | 111 Pine Street | 180 Montgomery Street |
| 4 | Suite 1700 | Suite 2200 |
| | San Francisco , CA 94111 | San Francisco , CA 94104 |
| 5 | *Attorneys for Plaintiff Pulaski & Middleman,* | *Attorneys for Plaintiff Pulaski & Middleman,* |
| | *LLC* | *LLC* |
| 6 | | |

1  Guido Saveri
2  R. Alexander Saveri
   Cadio Zirpoli
3  Saveri & Saveri Inc.
   111 Pine Street
4  Suite 1700
   San Francisco , CA 94111
5  *Attorneys for Plaintiff Pulaski & Middleman, LLC*
6

Terry Gross
Adam C. Belsky
Monique Alonso
Gross Belsky Alonso LLP
180 Montgomery Street
Suite 2200
San Francisco , CA 94104
*Attorneys for Plaintiff Pulaski & Middleman, LLC*

7  Brian S. Kabateck
   Richard L Kellner
8  Alfredo Torrijos
   Kabateck Brown Kellner, LLP
9  644 S. Figueroa Street
   Los Angeles , CA 90017
10 *Attorneys for Plaintiff RK West, Inc.*

11 *Attorneys for Plaintiff David Almeida*
12

Erik Swen Syverson
Pick & Boydston, LLP
1000 Wilshire Boulevard
Suite 600
Los Angeles , CA 90017
*Attorneys for Plaintiff RK West, Inc.*

*Attorneys for Plaintiff David Almeida*

13 Robert C. Schubert
   Willem F. Jonckheer
14 Kimberly Ann Kralowec
   Schubert Jonckheer Kolbe & Kralowec LLP
15 Three Embarcadero Center
   Suite 1650
16 San Francisco , CA 94111
   **Attorneys for Plaintiff Hal K. Levitte**
17

Hon. Susan Illston
United States District Court
Northern District of California
450 Golden Gate Ave.
Courtroom 10, 19th Floor
San Francisco, CA 94102
**COURTESY COPY**
*Pulaski & Middleman, LLC v. Google Inc.,*
*Case No. 08-cv-03888*

18
19 Hon. Ronald M. Whyte
   United States District Court
20 Northern District of California
   280 South 1st Street
21 Courtroom 6, 4th Floor
   San Jose, CA 95113
22 **COURTESY COPY**
   *RK West, Inc., Case No. 08-cv-03452*
23

Hon. James Ware
United States District Court
Northern District of California
280 South 1st Street
Courtroom 8, 4th Floor
San Jose, CA 95113
**COURTESY COPY**
*Hal K. Levitte, Case No. 08-cv-03369*

24
25 Kendra Jones
   COOLEY GODWARD KRONISH LLP
26 4401 Eastgate Mall
   San Diego, CA 92121-1909
27 Telephone: (858) 550-6000
   FAX: (858) 550-6420
28 Email: kjones@cooley.com

601202 /SD

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

5.

NORTON DEC I/S/O ADMINISTRATIVE MOTION
08-CV-02088 RMW (PVT)

# EXHIBIT 1

FILED

Fee Paid
$1
④

2008 APR 22 A 11: 47

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA, S. J.

ADR

E-FILING

By Fax

CHRL

1  BRIAN S. KABATECK, SBN 152054
   (bsk@kbklawyers.com)
2  RICHARD L. KELLNER, SBN 171416
   (rlk@kbklawyers.com)
3  ALFREDO TORRIJOS, SBN 222458
   (at@kbklawyers.com)
4  KABATECK BROWN KELLNER LLP
   644 South Figueroa Street
5  Los Angeles, California 90017
   Telephone: (213) 217-5000
6  Facsimile: (213) 217-5010

7  Attorneys for Plaintiff
   David Almeida
8

9

10          UNITED STATES DISTRICT COURT

11          NORTHERN DISTRICT OF CALIFORNIA

12  DAVID ALMEIDA, individually and on       C08   02088   HRL
13  behalf of all others similarly situated,

14          Plaintiff,                        CLASS ACTION COMPLAINT

15      vs.

16                                            JURY TRIAL DEMANDED

17  GOOGLE, INC., a Delaware
    Corporation; and DOES 1 through 10,
18  inclusive,

19          Defendants.

20

21

22

23          Plaintiff David Almeida ("Plaintiff"), individually and on behalf of the class

24  described below, by his attorneys, makes the following allegations pursuant to the

25  investigation of his counsel and based upon information and belief except as to

26  allegations specifically pertaining to Plaintiff and his counsel, which are based on

27  personal knowledge.  Plaintiff brings this action for damages and injunctive relief against

28  defendant, demanding a trial by jury.

─────────────────────────────────────

                    CLASS ACTION COMPLAINT

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

## NATURE OF THE ACTION

1.    Plaintiff brings this class action against Google, Inc. ("Google") to recover damages and other relief available at law and in equity on behalf of himself as well as on behalf of the members of the following class:

> All persons or entities located within the United States who bid on a keyword though AdWords, left the "CPC content bid" input blank, and were charged for content ads.

2.    This action arises from Google's deceptive, fraudulent and unfair practice of tricking advertisers who seek on-line advertising through Google's AdWords program into bidding for a service that they do not want.

3.    Google is commonly thought simply as an Internet search engine; in fact Google's business is online advertising. Google's business model is primarily dependent on linking individuals who are searching the internet with advertisers who pay Google (and others) for each time the linkage occurs. The Google Network is the largest online advertising network in the United States.

4.    AdWords is Google's primary advertising program and is the main source of its revenue. Through AdWords, Google permits would-be advertisers to bid on words or phrases that will trigger the advertisers' ads. AdWords is premised on a pay-per-click ("PPC") model, meaning that advertisers pay only when their ads are clicked. As part of the AdWords bidding process, therefore, advertisers must set a maximum cost per click ("CPC") bid that the advertiser is willing to pay each time someone clicks on its ad. When an advertiser is choosing its CPC bid, it is also given the "option" of entering a separate bid for clicks originating from Google's "content network" which consists of sites that are not search engines. These content network sites are those that use AdSense, the other side of the Google advertising model.

5.    This action arises from the fact that Google does not inform its advertisers that if they leave the content bid CPC input blank, Google will use the advertiser's CPC bid for clicks occurring on the content network. Google does this despite the fact that ads

— 2 —

CLASS ACTION COMPLAINT

1   placed on the content network are demonstrably inferior to ads appearing on search result

2   pages. Because there is no option to opt out of content ads during the AdWords

3   registration process, advertisers reasonably believe that by leaving the content ad CPC

4   input blank they can opt out of having their ads placed on the content network. Google,

5   however, has charged and continues to charge those advertisers who leave content ad

6   CPC input blank for content ads on third party websites.

### PARTIES

8       6.    Plaintiff David Almeida ("Plaintiff") is a resident of Essex County,

9   Massachusetts and citizen of Massachusetts. Plaintiff has previously registered for an

10  AdWords account as more particularly described herein and has also previously been

11  charged for content ads as more particularly described herein.

12      7.    Plaintiff is informed and believes and thereon alleges that defendant

13  Google. Inc. ("Google") is a Delaware Corporation doing business in the state of

14  California. Plaintiff is informed and believes and thereon alleges that there is no one

15  state where Google conducts a substantial predominance of its business, making its

16  principal place of business the state where it is headquartered. Network Solutions'

17  headquarters – and, thus, its principal place of business – are located at 1600

18  Amphitheatre Parkway, Mountain View, California. Accordingly, Defendant Google is a

19  citizen of Delaware and California.

20      8.    Plaintiff does not know the true names or capacities of the persons or

21  entities sued herein as DOES 1 to 10, inclusive, and therefore sues such defendants by

22  such fictitious names. Plaintiff is informed and believes and thereon alleges that each of

23  the DOE defendants is in some manner legally responsible for the damages suffered by

24  Plaintiff and the members of the class as alleged herein. Plaintiff will amend this

25  complaint to set forth the true names and capacities of these defendants when they have

26  been ascertained, along with appropriate charging allegations, as may be necessary.

27

28

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
Tel: (213) 217-5000
FAX (213) 217-5010

— 3 —

**CLASS ACTION COMPLAINT**

## JURISDICTION AND VENUE

9.     This Court has diversity subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d) in that this is a civil action filed under Rule 23 of the Federal Rules of Civil Procedure and members of the class of Plaintiffs are citizens of a State different from defendant Google, and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs. See 28 U.S.C. § 1332(d)(2), (6).

10.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(a) in that: (1) Google resides in this judicial district; (2) a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district; and (3) Google is subject to personal jurisdiction in the Northern District of California.

## FACTUAL BACKGROUND

11.     Google offers advertisers two types of ads. The first is a search ad. When an Internet user uses Google to search for a specific term or term, Google will display the ads of advertisers who have bid for those particular keywords. The second type of ad is contextual based ads, or content ads. These ads are shown on third party websites that have content that matches the keywords bid on by the advertiser. For example, an ad for a hardware store may be shown on a website that has content about home improvement projects.

12.     In order to advertise with Google, advertisers must register with AdWords, Google's advertising program. The process of registering with AdWords involves an online process that begins by clicking on the "Advertising Programs" link on Google's homepage. After selecting to register with AdWords and the desired version, the advertiser moves to the initial step of the sign-up process. First, the advertiser selects the target language and geographic location. Then, the advertiser creates the ad that will be placed on Google's website or on third party websites and selects the desired keywords. The advertiser then selects the maximum daily budget and the maximum CPC bid. Here,

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

— 4 —

1  the advertiser has two choices, the "Default CPC bid" and the "CPC content bid". Next
2  to the "CPC content bid" input is the word "optional".

3      12.    Nowhere on this page, or anywhere in the registration process, is there the
4  option to opt-out of content ads.

5      13.    Advertisers who do not want to pay for ads placed on third party websites,
6  therefore leave the "CPC content bid" input blank, reasonably believing that the word
7  "optional" means that having content ads placed on third party websites is optional.

8      14.    Google, however, fails to inform that an advertiser who leaves this
9  "optional" input blank will nonetheless be charged for third party content ads. By
10  redefining the universally understood meaning of an input form left blank, and then
11  intentionally concealing this redefinition, Google has fraudulently taken millions of
12  dollars from Plaintiff and the members of the class.

13      15.    Plaintiff enrolled in AdWords in November 2006. Plaintiff created an
14  advertising campaign for his private investigation business. Plaintiff set the desired bids
15  for his ads, and, not wanting to pay for ads placed on third part content sites, left the CPC
16  content bid input blank. Plaintiff, like any reasonable consumer, expected that leaving an
17  input blank would indicate that he did not want to bid on content ads. This expectation
18  was supported by the fact that Plaintiff was not given the option of opting out of content
19  bids during the advertising campaign creation process.

20      16.    Despite leaving the CPC content bid input blank, Google charged Plaintiff
21  for unwanted third party content ads.

22
23      **CLASS ALLEGATIONS**

24      13.    <u>Description of the Class</u>: Plaintiff brings this nationwide class action on
25  behalf of himself and the Class defined as follows:

26          *All persons or entities located within the United States*
27          *who bid on a keyword though AdWords, left the "CPC*
28          *content bid" input blank, and were charged for content ads.*

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

— 5 —

**CLASS ACTION COMPLAINT**

14.   Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

15.   Plaintiff reserves the right to modify the class description and the class period based on the results of discovery.

16.   Numerosity: The proposed Class is so numerous that individual joinder of all its members is impracticable. Due to the nature of the trade and commerce involved, however, Plaintiff believes that the total number of class members is at least in the hundreds of thousands and that the members of the Class are numerous and geographically dispersed across the United States. While the exact number and identities of class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the court.

17.   Common Questions of Law and Fact Predominate:   There are many questions of law and fact common to the representative Plaintiff and the proposed Class, and those questions substantially predominate over any individualized questions that may affect individual class members. Common questions of fact and law include, but are not limited to, the following:

   a.   Whether Google charges for advertisements placed on third party websites when the "optional" CPC content bid input is left blank, and whether Google discloses this material fact to consumers;

   b.   Whether Google failed to disclose that when the "optional" CPC content bid input is left blank, Google will still charge for ads placed on third party websites;

Kaudeck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

c.  Whether or not Plaintiff and the members of the Class have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relief that should be afforded;

d.  Whether Google engaged in unfair, unlawful and/or fraudulent business practices; and

e.  Whether Google failed to disclose material facts about the subject Google Adwords program.

18.  **Typicality**:  Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since they were charged for ads although they also left the "optional" CPC content bid blank..

19.  **Adequacy of Representation**:  Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so.  Neither Plaintiff nor his counsel has any interests adverse to those of the proposed Class.

20.  **Superiority of a Class Action**:  Plaintiff and the members of the Class have suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy as individual joinder of all members of the Class is impractical.  Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of

— 7 —

**CLASS ACTION COMPLAINT**

1  all class members' claims in a single forum. The conduct of this action as a class action

2  conserves the resources of the parties and of the judicial system, and protects the rights of

3  the class member.  Furthermore, for many, if not most, Class members, a class action is

4  the only feasible mechanism that allows an opportunity for legal redress and justice.

5  21.    Adjudication of individual Class members' claims with respect to the

6  Defendant would, as a practical matter, be dispositive of the interests of other members

7  not parties to the adjudication and could substantially impair or impede the ability of

8  other Class members to protect their interests.

9

10  ## FIRST CAUSE OF ACTION

11  ### UNJUST ENRICHMENT

12  22.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and,

13  to the extent necessary, pleads this cause of action in the alternative.

14  23.    Through the actions described above, Google has received money

15  belonging to Plaintiff and the Class through the fees collected from ads placed on third

16  party content sites when a reasonable advertiser would have believed that leaving the

17  CPC content bid input blank meant that they would not be charged for content ads.

18  24.    Additionally, Google has reaped substantial profit by concealing the fact

19  that when left blank, the "optional" CPC content bid would be set at an amount that could

20  reach the amount bid for the search bid.  Ultimately, this resulted in Google's wrongful

21  receipt of profits and injury to Plaintiff and the Class.  Google has benefited from the

22  receipt of such money that it would not have received but for its concealment.

23  25.    As a direct and proximate result of Google's misconduct as set forth above,

24  Google has been unjustly enriched.

25  26.    Under principles of equity and good conscience, Google should not be

26  permitted to keep the full amount of money belonging to Plaintiff and the Class which

27  Google has unjustly received as a result of its actions.

28  WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

— 8 —

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

## SECOND CAUSE OF ACTION

### FRAUDULENT CONCEALMENT

27.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

28.    Google knew at all material times that when an advertiser left the "optional" CPC content bid input blank, that advertiser would still be charged for content ad placed on third party websites. These facts were not known to Plaintiff and the Class.

29.    Google had a duty to disclose the above known material facts because it knew that these material facts were unknown to Plaintiff and the Class, that Google was in a superior position of knowledge with regard to its own technology, and Google chose to make certain representations that presented only a part of the true story and misled consumers about the subject products.

30.    Google's knowledge that advertisers would be charged for content ads placed on third party websites even when they left the "optional" CPC content bid input blank, combined with Google's knowledge that Plaintiff and the Class relied or relies upon Google to communicate the true state of facts relating to its AdWords program creates a legal obligation on Google's part to disclose to Plaintiff and the Class that leaving the "optional" CPC content bid input blank did not mean that they were not subject to charges for ads placed on third party websites.

31.    Google intentionally concealed and/or suppressed the above facts with the intent to defraud Plaintiff and the Class.

32.    Plaintiff and the Class were unaware of the above facts and would not have acted as they did if they had known of the concealed material facts.

33.    Google's concealment of the above facts has caused damage to Plaintiff and the Class in an amount to be shown at trial.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

CLASS ACTION COMPLAINT

## THIRD CAUSE OF ACTION

### VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE

### SECTIONS 17200 ET SEQ.

34.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

35.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and have lost money or property as a result of Google's actions as delineated herein.

36.    Class members have suffered injury in fact and have lost money or property as a result of Google's actions as delineated herein.

37.    Google's actions as alleged in this complaint constitute an unfair or deceptive practice within the meaning of California Business and Professions Code sections 17200 *et seq.* in that Google's actions are unfair, unlawful and fraudulent, and because Google has made unfair, deceptive, untrue or misleading statements in advertising media, including the Internet, within the meaning of California Business and Professions Code sections 17500 *et seq.*

38.    Google's business practices, as alleged herein, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that consumers are not informed that they will be charged for ads placed on third party websites even though the "optional" CPC content bid input was left blank.

39.    Google's business practices, as alleged herein, are unlawful because the conduct constitutes fraudulent concealment, as well as the other causes of action herein alleged.

40.    Google's practices, as alleged herein, are fraudulent because they are likely to deceive consumers.

41.    Google's wrongful business acts alleged herein constituted, and constitute, a continuing course of conduct of unfair competition since Google is marketing and selling their products in a manner that is likely to deceive the public.

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

— 10 —

CLASS ACTION COMPLAINT

42.    Google's business acts and practices, as alleged herein, have caused injury to Plaintiff, the Class and the public.

43.    Pursuant to section 17203 of the California Business and Professions Code, Plaintiffs and the class seek an order of this court enjoining Google from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including those acts set forth in the complaint. Plaintiff and the Class also seek an order requiring Google to make full restitution of all moneys it wrongfully obtained from Plaintiff and the Class.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and members of the proposed Class request that the court enter an order or judgment against Defendant as follows:

1.    Certification of the proposed Class and notice thereto to be paid by Defendant;

2.    Adjudge and decree that Defendant has engaged in the conduct alleged herein;

3.    For restitution and disgorgement on certain causes of action;

4.    For an injunction ordering Defendant to cease and desist from engaging in the unfair, unlawful, and/or fraudulent practices alleged in the Complaint;

5.    For compensatory and general damages according to proof on certain causes of action;

6.    For special damages according to proof on certain causes of action;

7.    For both pre and post-judgment interest at the maximum allowable rate on any amounts awarded;

8.    Costs of the proceedings herein;

9.    Reasonable attorneys fees as allowed by statute; and

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
Tel: (213) 217-5000
FAX (213) 217-5010

— 11 —

CLASS ACTION COMPLAINT

10.    Any and all such other and further relief that this Court may deem just and
proper.

Dated: April 22, 2008          KABATECK BROWN & KELLNER, LLP

                               By: _____
                                   BRIAN S. KABATECK
                                   RICHARD L. KELLNER
                                   ALFREDO TORRIJOS
                                   *Attorneys for Plaintiff and proposed class*

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in the instant action.

Dated: April 22, 2008          KABATECK BROWN & KELLNER, LLP

By: _____
    BRIAN S. KABATECK
    RICHARD L. KELLNER
    ALFREDO TORRIJOS
    *Attorneys for Plaintiff and proposed class*

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

— 13 —

# EXHIBIT 2

ROBERT C. SCHUBERT S.B.N. 62684
WILLEM F. JONCKHEER S.B.N. 178748
KIMBERLY A. KRALOWEC S.B.N. 163158
SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161

*Attorneys for Plaintiff*

**ORIGINAL FILED**

**E-FILING**

JUL 1 1 2008

Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

**ADR**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

**C08    03369** JW

| | |
|---|---|
| HAL K. LEVITTE, Individually and On Behalf of All Others Similarly Situated, | Case No: |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 ET SEQ. AND 17500 ET SEQ. AND UNJUST ENRICHMENT** |
| v. | |
| GOOGLE, INC., a Delaware corporation, | |
| Defendant. | **JURY TRIAL DEMANDED** |

RS

Plaintiff alleges, individually and on behalf of the class described below, and upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge, as follows:

## SUMMARY OF CLAIMS

1.      This is a class action against defendant Google, Inc. ("Google") for violation of Business & Professions Code Sections 17200 and 17500 and unjust enrichment in connection with Google's AdWords program for Internet advertisers. Plaintiff alleges that Google has concealed from and/or misrepresented material information to plaintiff and the class concerning the Google

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1.

AdWords program. Google has damaged plaintiff and the class by improperly charging them for advertising placed by Google on low-quality parked domain and error page websites.

## PARTIES

2.    Plaintiff Hal K. Levitte is a resident of Suffolk County, Massachusetts and citizen of Massachusetts. Plaintiff is the principal of Levitte Law Group, a law firm located in Boston, Massachusetts. During the class period, plaintiff ran an advertising campaign called "Levitte International" for his law firm, using the Google AdWords advertising service.

3.    Defendant Google is a Delaware corporation doing business and headquartered in Mountain View, California.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) in that this is a civil action filed under Federal Rule of Civil Procedure 23 and plaintiff and other members of the class are citizens of a state different from Google, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there are more than 100 class members. 28 U.S.C. § 1332(d)(2), (6).

5.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(a) in that: (1) Google resides in this judicial district; (2) a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district; and (3) Google is subject to jurisdiction in the Northern District of California.

## FACTS

6.    Google's free Internet search engine is the most widely used search engine in the world. In 2007, Google's total revenue was approximately $16.6 billion, 99% of which was derived from advertising services.

7.    Google offers two basic advertising and placement programs—Google AdWords and Google AdSense. Google AdWords is for advertisers, such as plaintiff and the class, who wish to place ads on Google and other sites within Google's network. Google AdSense is for website publishers who wish to permit Google AdWords advertisers' ads to appear on their sites.

8.    Google describes Google AdWords as follows:

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

2.

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Google AdWords** is a quick and simple way to advertise on Google, regardless of your budget. AdWords ads are displayed along with search results on Google, as well as on search and content sites in the growing Google Network, including AOL, EarthLink, HowStuffWorks, & Blogger. With searches on Google and page views on the Google Network each day, your Google AdWords ads reach a vast audience.

9.    Under the Google AdWords program, advertisers select and bid on particular internet search terms. When an internet user employs Google to search for that term, Google displays the ads of its customers on the Google webpage that returns the search results. The more an advertiser bids for a particular search term, the better placement that advertiser generally receives. Advertisers pay Google based on the number of Internet users who click on their ads.

10.    The Google AdWords program also allows advertisers to have their ads placed on third-party sites through Google's AdSense program. Google describes Google AdSense as follows:

**Google AdSense** is a fast and easy way for website publishers of all sizes to display relevant, unobtrusive Google ads on their website's content pages and earn money. Because the ads are related to what your users are looking for on your site, you'll finally have a way to both monetize and enhance your content pages. It's also a way for web site publishers to provide Google search to their site users, and to earn money by displaying Google ads on the search results pages.

11.    Under the Google AdSense program, website publishers can have subject matter related ads displayed on their websites. Google AdSense is comprised of three separate networks: AdSense for Search, AdSense for Content, and AdSense for Domains.

12.    AdSense for Search refers to websites that include the Google search function, and that display ads alongside the results of Google searches conducted on the website. AdSense for Search is also known as Google's "Search Network."

13.    AdSense for Content includes third-party websites that display ads alongside their content, as described above. AdSense for Content is also known as Google's "Content Network."

14.    AdSense for Domains includes inactive, parked sites with little or no content, but that display ads related to their domain name.

15.    AdSense for Domains is only available to domain name registrars and holders of large domain portfolios, and is defined by Google as follows:

3.

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

**Google AdSense for Domains** allows domain name registrars and large domain name holders to provide valuable and relevant content on their parked pages. Parked domain pages generally have no content; however, by adding targeted ads, we hope to help users find what they are looking for. Using Google's semantic technology to analyze and understand the meaning of the domain names, AdSense for domains delivers targeted, conceptually related advertisements to parked domain pages to improve the user experience on these pages.

16.    Finally, Google has a little-publicized advertising program called AdSense for Errors. AdSense for Errors places ads on unregistered web pages or malformed search queries incorrectly entered into a web browser's address bar instead of a search engine. In place of generating an error page, the resulting web page includes ads that are related to address of the page. Google lumps these error page ads into its Content and Search Networks.

17.    Most AdWords and AdSense transactions follow a pay-per-click model. Pursuant to these programs, Google places ads on its own website and on third-party sites. Each time an ad is clicked, the site owner is compensated, and the advertiser is charged. Third-party site owners receive a fraction of the amount advertisers are charged, and Google takes the rest.

18.    Google marketed AdWords by emphasizing the high quality of sites on which AdWords ads will be placed, and did not disclose Google's practice of placing ads on parked domains and error pages.

19.    Google's AdWords website, which potential customers viewed before clicking the "Start Now" button to sign up for the service, includes the following statement:

**Expand your reach through the content network**
With hundreds of thousands of high-quality websites, news pages, and blogs that partner with Google to display AdWords ads, the Google content network can reach users all over the web to help you drive conversions. Choose from text, image, and video formats to communicate your message.

20.    Google hosts an AdWords help page titled "Where will my ads appear?" that states:

**The search network**
Your ads may appear alongside or above search results, as part of a results page as a user navigates through a site's directory, or on other relevant search pages. Our global search network includes Google Product Search and Google Groups and the following entities: AOL, Netscape Netcenter, Earthlink, CompuServe, Shopping.com, AT&T Worldnet, Ask.com.

4.

**The content network partners**
Our extensive content network of websites and products includes these partners:
About, Lycos, The New York Times, InfoSpace, Reed Business, howstuffworks.com,
business.com, foodnetwork.com, HGTV.

**Ads on the content network**
AdWords ads on content sites are targeted to the content and URL of each page. In
the screenshot below you can see how the ads are displayed on a content page and
that the ads are directly relevant to the content of the page.

21.    Without their knowledge or consent, advertisers who joined Google's AdWords
program have had their ads placed on pages contained in AdSense for Domains, or parked sites, and
AdSense for Errors, or error pages. The quality of these sites as an advertising medium is
substantially lower than sites on the rest of Google's network.

22.    Specifically, these websites result in a lower conversion rate than standard search
traffic or web sites with actual content on them. The conversion rate is defined as the number of
people who take action based on a click (be it placing an item in a shopping cart, signing a petition,
or contacting a business), expressed as a percentage of total clicks.

23.    Plaintiff used Google AdWords to conduct his "Levitte International" campaign for
his law practice. From approximately June 1, 2007 to August 17, 2007 in the "Levitte International"
campaign, plaintiff received 202,528 impressions (or times his ad appeared in a web browser in
response to a search) from parked domain ads, 668 clicks, and zero conversions. Over the same
period, plaintiff received 1,009 impressions from error page ads, 25 clicks, and zero conversions.
Domain and error page ads accounted for approximately 16.2% of all clicks on plaintiff's ad during
his campaign, yet did not result in a single person completing the online form on the site, or
contacting plaintiff by phone or email.

24.    Plaintiff spent $136.11 for advertising on parked domains and error pages, or
approximately 15.3% of his total campaign costs of $887.67, for which he received no benefit.

25.    Google includes millions of parked domains and error pages that have little to no
content, and that result in practically zero conversions, in both its Content Network and its Search
Network.

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

5.

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

26.     Given the low quality of these parked domain and error page ads, advertisers would not want to spend their advertising budgets on these distribution networks. However, Google designed its network in such a way that it was virtually impossible to opt out of the AdSense for Domains and/or AdSense for Errors programs.

27.     Including parked domains and error pages within the Search and Content Networks is the opposite of what AdWords advertisers like plaintiff expected. Google's practice of including parked domain and error pages within the Search Network is misleading, since no actual searches are performed on these pages. Likewise, Google's practice of including parked domains and error pages within the Content Network is also misleading, since most of these sites include little or no content.

28.     Furthermore, even if an advertiser discovered that the parked domain and error pages were included within these other networks, the advertiser would have to opt out of both the Search Network and the Content Network to prevent its ads from being placed on low-quality parked domains and error pages. However, doing so would also prevent the ads from being displayed on the websites of any of Google's high-quality partners, such as AOL and The New York Times.

29.     For each advertising campaign, Google provides a settings page that allows advertisers to decide which networks on which to show their ads. Choices include Google Search, Search Network, and Content Network. There is no setting on this screen to allow advertisers to opt-out of the domains or error networks, and until March 2008, there was no method anywhere in Google's user interface to opt out of the domains or errors networks.

30.     When customers complained to Google that their ads were being shown on low-quality parked domains and error pages, Google dismissed these complaints, claimed the clicks were legitimate, and refused to refund customers for the charges.

31.     For example, in response to plaintiff's demand for a refund for amounts charged in connection with parked domain and error page clicks, Google declined to refund plaintiff for clicks originating from parked domains or error pages, which accounted for 16.4% of the total clicks during plaintiff's campaign. In an email from AdWords support to plaintiff, Google wrote, "My

1   team verified that the clicks you have been charged for appear to fit a pattern of normal activity."

2   The email went on to explain that clicks on the Content and Search Networks were all normal.

3       32.    On March 6, 2008, Google posted a message on its AdWords blog announcing a

4   change to its policy. Prior to that announcement, Google offered a "Site Exclusion Tool" that

5   allowed advertisers to identify websites on which they did not wish Google to place their ads.

6   However, the "Site Exclusion Tool" did not allow advertisers to opt out of parked domains or error

7   pages. Their only options were to opt out of the entire Content Network or the entire Search

8   Network. The site exclusion tool was later updated and renamed the "Site and Category exclusion

9   tool."

10      33.    After this change in Google's policy, by clicking on a well-hidden "page types" tab

11  within the tool, advertisers could now see summarized click data for "Error Pages" and "Parked

12  Domains," and for the first time, exclude their ads from appearing on these sites. However, instead

13  of including this option on the main settings page for each campaign, Google instead placed this opt-

14  out button four clicks deep within its interface, where many advertisers would not notice it.

15      34.    On its marketing pages, which are shown to prospective customers prior to signing

16  up for AdWords, Google states the following under "Reach More Customers":

17  **Measure and optimize your results**
    With the Placement Performance Report, you have visibility into where all your ads
18  appear. Review your ad's performance on a site-by-site basis to see impression, click,
    cost, and conversion data, and use this data to identify well-performing sites to target
19  more aggressively and low-value placements that require content optimization or
20  exclusion.

21      35.    Google's Placement Performance Reports provided limited information only on sites

22  included in Google's Content Network. No such reports have ever been available for Google's

23  Search Network. What's more, Google did not automatically provide these reports to its AdWords

24  customers. Rather, the reports would be generated only for AdWords customers who made a special

25  effort to locate the appropriate page on Google's site and have the report generated. Moreover,

26  while the reports did provide an incomplete list of some of the sites where an ad appeared, it

27  concealed the domain names, IP addresses, and associated performance data of parked domains and

28

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1  error pages on which an ad was placed by aggregating this data into two lump-sum line items,

2  among hundreds of line items on a typical report, called "Domain ads" and "Error page ads." The

3  meaning of those line-items was not explained in the report, nor did Google disclose the low quality

4  of those pages or the low conversion rates of advertising placed on those pages. Before June 12,

5  2007, when Google first made the Placement Performance Report tool available for its Content

6  Network, not even this limited, aggregated data on "Domain ads" and "Error page ads" was

7  available to AdWords customers. At no time did Google ever disclose to customers contemplating

8  an AdWords purchase that low-quality parked domain and error pages were included in both its

9  Content Network and its Search Network.

10        36.    In addition to failing to disclose that ads would be placed on parked domains and

11  error pages, and preventing advertisers from opting out of placement on these pages prior to March

12  2008, Google also concealed the individual addresses of the parked sites and error pages on which it

13  placed AdWords ads. This policy was at odds with Google's marketing claims about what data it

14  makes available to its users.

15        37.    When Google originally launched the Placement Performance Report tool on June

16  12, 2007, it posted a message to its official AdWords blog stating: "Currently, AdSense for domains

17  statistics are collectively reported, but we are working to give you site-by-site level statistics soon."

18        38.    Without a site-by-site listing of which parked domains and error pages their ad was

19  placed on, advertisers could not adjust their advertising budgets on these sites or exclude some or all

20  parked domains and error pages from receiving ad placement. By aggregating this information,

21  Google effectively prohibited advertisers from utilizing another means of opting out of domain or

22  error page ads using the AdWords interface.

23        39.    On May 2, 2008, Google posted a message titled "Where did I park?" on its

24  AdWords Agency Blog announcing that it had finally changed the policy and was providing site-by-

25  site data for parked domains.

26        40.    Katharine Allan of Google's Agency Team wrote: "We recently added a new level of

27  detail to Placement Performance reports to answer this question. Placement Performance reports

28  give site-by-site performance metrics for the sites where your ads appeared within Google's content

1  network. Now, rather than seeing one consolidated entry for all parked domains in your reports,

2  you'll see separate rows displaying performance statistics for individual parked domains."

3      41.    Prior to May 2, 2008, Google failed to disclose domain names, IP addresses, and

4  associated performance data of parked domain and error pages included in its Content Network.

5  Google has never disclosed this data for parked domain and error pages included in its Search

6  Network.

7  **CLASS ALLEGATIONS**

8      42.    Plaintiff brings this nationwide class action on behalf of himself and the class defined

9  as follows:

10      All persons or entities located within the United States who, within four years of the filing of
11  this complaint, had an AdWords account with Google and who were charged for
    advertisements appearing on parked domain and/or error page websites.

12      43.    Excluded from the class are governmental entities, defendant, any entity in which

13  defendant has a controlling interest, and defendant's officers, directors, affiliates, legal

14  representatives, employees, co-conspirators, successors, subsidiaries, and assigns.

15      44.    Also excluded from the class are any judges, justices, or judicial officers presiding

16  over this matter and the members of their immediate families and judicial staff.

17      45.    Upon information and belief, plaintiff alleges that the total number of class members

18  is at least in the hundreds of thousands and that the members of the class are geographically

19  dispersed across the United States.  Consequently, joinder of the individual class members would be

20  impracticable.

21      46.    There are many questions of law and fact common to the representative plaintiff and

22  the proposed class, and those questions substantially predominate over any individualized questions

23  that may affect individual class members.  Common questions of fact and law include, but are not

24  limited to, the following:

25      • Whether Google's representations regarding AdWords were false or misleading.

26      • Whether Google, in violation of applicable law and its own stated policy, charged

27         plaintiff and the members of the class for ads that were placed on parked domain and

28         error page websites;

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

9.

- Whether Google engaged in unfair, unlawful and/or deceptive business practices;
- Whether Google failed to disclose material facts about its Adwords program; and
- Whether or not plaintiff and the members of the class have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relief that should be provided.

47.    Plaintiff's claims are typical of the claims of the members of the class. Plaintiff and all class members have been similarly affected by defendant's common course of conduct.

48.    Plaintiff will fairly and adequately represent and protect the interests of the class. Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interests adverse to those of the proposed class.

49.    Plaintiff and the members of the class have suffered, and will continue to suffer, harm as a result of defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy, because joinder of all members of the class would be impractical.

50.    Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation would cause delay and undue expense to all parties affected by defendant's common course of conduct.

51.    The class action device will allow a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action will conserve the resources of the parties and of the judicial system, and will protect the rights of the class members.

52.    Furthermore, for many, if not most, class members, a class action is the only feasible mechanism for legal redress for the harm alleged.

53.    Adjudication of individual class members' claims against the defendant would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

### FIRST CLAIM FOR RELIEF
### (VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 ET SEQ. — UNFAIR CONDUCT)

54.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

55.    Plaintiff has standing to pursue this claim as plaintiff has suffered injury in fact and has lost money or property as a result of Google's actions as set forth above.

56.    Class members have suffered injury in fact and have lost money or property as a result of Google's actions as set forth above.

57.    Google's actions as alleged in this complaint constitute "unfair" conduct within the meaning of California Business and Professions Code sections 17200 *et seq.*

58.    Google's business practices, as alleged herein, are "unfair" because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.  Google's conduct is "unfair" because Google fails to disclose that customers' ads are placed on parked domain and error page sites, and Google does not provide an effective means for customers to exclude their ads from appearing on these sites.  In fact, until March 2008, Google provided no means at all for customers to exclude their ads from appearing on these sites.

59.    As a result of Google's "unfair" conduct, plaintiff and members of the class expended money on advertising that they would not otherwise have spent, and received less value for their advertising dollars than they should have received.

60.    Google's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since Google continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

11.

61.    Pursuant to Cal. Bus. & Prof. Code section 17203, plaintiff and the class seek an order of this court enjoining Google from continuing to engage in unlawful, unfair, and/or deceptive business practices and any other act prohibited by law, including those acts set forth in this complaint.

62.    Plaintiff and the class also seek an order requiring Google to make full restitution of all moneys it has wrongfully obtained from plaintiff and the class, along with all other relief allowable under Cal. Bus. & Prof. Code sections 17200 *et seq.*

## SECOND CLAIM FOR RELIEF
### (VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 ET SEQ. — FRAUDULENT CONDUCT)

63.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

64.    Plaintiff has standing to pursue this claim as plaintiff has suffered injury in fact and has lost money or property as a result of Google's actions as set forth above.

65.    Class members have suffered injury in fact and have lost money or property as a result of Google's actions as set forth above.

66.    Google's actions as alleged in this complaint constitute "fraudulent" conduct within the meaning of California Business and Professions Code sections 17200 *et seq.*

67.    Google's business practices, as alleged herein, are "fraudulent" because they are likely to deceive consumers, including plaintiff and members of the class.  Google fails to disclose all material information to AdWords advertisers concerning the types of sites on which their ads will be displayed, and affirmatively conceals the fact that low-quality parked domains and error pages are included in both its Content Network and its Search Network.  Google failed to disclose to advertisers, including plaintiff and the class, that, until March 2008, they would have no way to exclude their ads from appearing on these sites.  Google continues to fail to provide an effective and adequate method of excluding ads from these sites, or to adequately disclose that any method of excluding ads from these sites exists at all.

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

12.

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

68.     As a result of Google's "fraudulent" conduct, plaintiff and members of the class expended money on advertising that they would not otherwise have spent, and received less value for their advertising dollars than they should have received.

69.     Google's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since Google continues to market and sell its products in a manner that is likely to deceive customers.

70.     Pursuant to Cal. Bus. & Prof. Code section 17203, plaintiff and the class seek an order of this court enjoining Google from continuing to engage in "fraudulent" business practices and any other act prohibited by law, including those acts set forth in this complaint.

71.     Plaintiff and the class also seek an order requiring Google to make full restitution of all moneys it has wrongfully obtained from plaintiff and the class, along with all other relief allowable under Cal. Bus. & Prof. Code sections 17200 *et seq.*

**THIRD CLAIM FOR RELIEF**
**(VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE**
**SECTION 17200 ET SEQ. — UNLAWFUL CONDUCT)**

72.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

73.     Plaintiff has standing to pursue this claim as plaintiff has suffered injury in fact and has lost money or property as a result of Google's actions as set forth above.

74.     Class members have suffered injury in fact and have lost money or property as a result of Google's actions as set forth above.

75.     Google's actions as alleged in this complaint constitute an "unlawful" practice within the meaning of California Business and Professions Code sections 17200 *et seq.* because Google's actions are "unfair" and "fraudulent," as alleged above, and because they violate California Business and Professions Code sections 17500 *et seq.*, which proscribe false advertising, as alleged below.

76.     As a result of Google's "unlawful" conduct, plaintiff and members of the class expended money on advertising that they would not otherwise have spent, and received less value for their advertising dollars than they would have received.

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

77.    Pursuant to Cal. Bus. & Prof. Code section 17203, plaintiff and the class seek an order of this court enjoining Google from continuing to engage in unlawful business practices, including those acts set forth in this complaint.

78.    Plaintiff and the class also seek an order requiring Google to make full restitution of all moneys it has wrongfully obtained from plaintiff and the class, along with all other relief allowable under Cal. Bus. & Prof. Code sections 17200 *et seq.*

### FOURTH CLAIM FOR RELIEF
### (VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17500 ET SEQ.)

79.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

80.    Plaintiff brings this claim for relief on behalf of himself and the class.

81.    Google engaged in advertising and marketing to the public and offered for sale advertising services on a nationwide basis, including in California.

82.    Google engaged in the advertising and marketing alleged herein with an intent to directly or indirectly induce the sale of advertising services to customers like plaintiff.

83.    Google's advertisements and marketing representations regarding the characteristics of AdWords and the placement of its customers' ads were false, misleading and deceptive as set forth more fully above.

84.    At the time it made and disseminated the statements alleged herein, Google knew or should have known that the statements were untrue or misleading, and acted in violation of Cal. Bus. & Prof. Code §§ 17500 *et seq.*

85.    Plaintiff seeks restitution, injunctive relief, and all other relief allowable under Cal. Bus. & Prof. Code §§ 17500 *et seq.*

### FIFTH CLAIM FOR RELIEF
### (UNJUST ENRICHMENT)

86.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

87.     Through the actions described above, Google has received money belonging to plaintiff and the class through fees collected from ads placed on parked domains and error websites, even though reasonable customers would have believed that they were not paying for and would not be charged for ads placed on such websites.

88.     Google has also reaped substantial profit by collecting and retaining revenue from plaintiff and the class generated through clicks generated through ads that were displayed on such websites.

89.     Google has received money belonging to plaintiff and the class resulting from clicks on these ads.

90.     As a direct and proximate result of Google's misconduct as set forth above, Google has been unjustly enriched.

91.     Google should not be permitted to keep sums that Google has unjustly received as a result of its actions.

WHEREFORE, plaintiff and the class pray for relief as set forth below.

## PRAYER FOR RELIEF

Plaintiff requests that the Court enter an order or judgment against defendant as follows:

1.     Certification of the proposed class pursuant to Fed. R. Civ. P. 23;

2.     A declaration that defendant has engaged in the conduct alleged herein;

3.     An injunction ordering defendant to cease and desist from engaging in the unfair, unlawful, and/or deceptive practices alleged in this complaint;

4.     Restitution and disgorgement on certain causes of action;

5.     Compensatory and general damages according to proof on certain causes of action;

6.     Special damages according to proof on certain causes of action;

7.     Both pre- and post-judgment interest at the maximum allowable rate on any amounts awarded;

8.     Costs of the proceedings herein;

9.     Reasonable attorneys' fees; and

10.     Any and all such other and further relief that this Court may deem just and proper.

15.

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
(415) 788-4220

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

Dated: July 11, 2008

SCHUBERT JONCKHEER KOLBE &
KRALOWEC LLP

ROBERT C. SCHUBERT
WILLEM F. JONCKHEER
KIMBERLY A. KRALOWEC
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161

*Attorneys for Plaintiff*

16.

# EXHIBIT 3



E-filing

ADR

FILED

JUL 17 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  BRIAN S. KABATECK, SBN 152054
   (bsk@kbklawyers.com)
2  RICHARD L. KELLNER, SBN 171416
   (rlk@kbklawyers.com)
3  ALFREDO TORRIJOS, SBN 222458
   (att@kbklawyers.com)
4  KABATECK BROWN KELLNER LLP
   644 South Figueroa Street
5  Los Angeles, California  90017
   Telephone: (213) 217-5000
6  Facsimile: (213) 217-5010

7  Attorneys for Plaintiff
   RK West, Inc.

8

FILED

JUL 17 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

9          UNITED STATES DISTRICT COURT

10         NORTHERN DISTRICT OF CALIFORNIA

11

12  RK West, Inc., a California corporation         CASE NO.
    d/b/a Malibu Wholesale,
13  individually and on Behalf of All Others        C08  03452   RS
    Similarly Situated,
14                                                  CLASS ACTION COMPLAINT

15                 Plaintiff,

16                                                  JURY TRIAL DEMANDED

17         v.

18  GOOGLE, INC., a Delaware
    Corporation; and DOES 1 through 10,
19  inclusive,

20                 Defendants.

21

22

23         Plaintiff RK West, Inc. d/b/a Malibu Sales ("Plaintiff"), individually and on behalf

24  of the class described below, by its attorneys, makes the following allegations pursuant to

25  the investigation of its counsel and based upon information and belief except as to

26  allegations specifically pertaining to Plaintiff and its counsel, which are based on

27  personal knowledge.  Plaintiff brings this action for damages and injunctive relief against

28  defendant, demanding a trial by jury.

                        CLASS ACTION COMPLAINT

## NATURE OF THE ACTION

1.     Plaintiff brings this class action against Google, Inc. ("Google") to recover damages and other relief available at law and in equity on behalf of itself as well as on behalf of the members of the following class:

> *All persons or entities located within the United States who created an AdWords campaign and were subsequently charged for clicks from ads placed on parked domains.*

2.     This action arises from Google's deceptive, fraudulent and unfair practice of hiding the sources of invalid clicks from advertisers who seek on-line advertising through Google's AdWords.

3.     Google is commonly thought simply as an Internet search engine; in fact Google's business is online advertising. Google's business model is primarily dependent on connecting individuals who are searching the internet with advertisers who pay Google (and others) for each time the linkage occurs. The Google Network is the largest online advertising network in the United States.

4.     AdWords is Google's primary advertising program and is the main source of its revenue. Through AdWords, Google permits would-be advertisers to bid on words or phrases that will trigger the advertisers' ads. AdWords is premised on a pay-per-click ("PPC") model, meaning that advertisers pay only when their ads are clicked. In addition to being displayed on Google.com, the ads from Google's customers can also be placed on Google's "content network" which consists of sites that are not search engines. These content network sites include "parked domains" which are websites with no other content besides ads. This is done through the AdSense for Domains program, the other side of the Google advertising model.

5.     This action arises from the fact that Google does not disclose to its advertisers the web addresses of the parked domains where their ads were placed, clicked on and subsequently charged for. Google does this despite the fact that ads placed on parked domains are a constant source of invalid clicks. By charging for clicks in a single

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000

— 2 —

CLASS ACTION COMPLAINT

bulk, generic "parked domain" category, advertisers have no way to distinguish between valid and invalid clicks from parked domains. Nonetheless, Google charges for all clicks from parked domains, regardless of validity.

## PARTIES

6.     RK West, Inc. d/b/a Malibu Sales ("Plaintiff") is a California Corporation doing business in the state of California. Plaintiff conducts a substantial predominance of its business in California, where its headquarters are located, thus making California its principal place of business.   Accordingly, Plaintiff is a citizen of California. Plaintiff has previously registered for an AdWords account and has also previously been charged for clicks from ads placed on parked domains as more particularly described herein.

7.     Plaintiff is informed and believes and thereon alleges that defendant Google, Inc. ("Google") is a Delaware Corporation doing business in the state of California. Plaintiff is informed and believes and thereon alleges that there is no one state where Google conducts a substantial predominance of its business, making its principal place of business the state where it is headquartered.  Google's headquarters – and, thus, its principal place of business – are located at 1600 Amphitheatre Parkway, Mountain View, California. Accordingly, Defendant Google is a citizen of Delaware and California.

8.     Plaintiff does not know the true names or capacities of the persons or entities sued herein as DOES 1 to 10, inclusive, and therefore sues such defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the DOE defendants is in some manner legally responsible for the damages suffered by Plaintiff and the members of the class as alleged herein. Plaintiff will amend this complaint to set forth the true names and capacities of these defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000

– 3 –
CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

9.    This Court has diversity subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d) in that this is a civil action filed under Rule 23 of the Federal Rules of Civil Procedure and members of the class of plaintiffs are citizens of a State different from defendant Google, and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs. See 28 U.S.C. § 1332(d)(2), (6).

10.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(a) in that: (1) Google resides in this judicial district; (2) a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district; and (3) Google is subject to personal jurisdiction in the Northern District of California.

## FACTUAL BACKGROUND

11.    Google offers advertisers two types of ads. The first is a search ad. When an Internet user uses Google to search for a specific term or term, Google will display the ads of advertisers who have bid for those particular keywords. The second type of ad is contextual based ads, or content ads. These ads are shown on third party websites that have content that matches the keywords bid on by the advertiser. For example, an ad for a hardware store may be shown on a website that has content about home improvement projects.

12.    An internet domain refers to the web address associated with a particular website. For example, the domain associated with the United States District Court in the Northern District of California is "cand.uscourts.gov." Domains are acquired by registering the name with an appropriate internet domain name registrar.

13.    A parked domain refers to a web address pointing to a website which contains no content besides ads. The domain name is registered for the sole purpose of selling the domain name at a later date, or to generate ad revenue. Since the domain name is no longer available for registration, it is commonly referred to as being "parked."

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, CA 90017
(213) 217-5000

— 4 —

14.  By default Google includes parked domains in its third party network. Domains owners are compensated for clicks that occur in these content-less websites through the Adsense for Domains program.

15.  In order to advertise with Google, advertisers must register with AdWords, Google's advertising program. After registration advertisers are able to change the default option and exclude their ads from being placed on parked domains only after engaging a complicated account settings page.

12.  Plaintiff enrolled in AdWords in or around August 2006. Plaintiff created several advertising campaigns for its online store business.

13.  Plaintiff was charged for several clicks originating from parked domains, with no additional information given by Google as to the nature or specific source of these clicks beyond the designation "parked domain."

14.  Plaintiff examined charges to its Adsense account from unknown domains labeled only as "parked domains." Upon further inspection Plaintiff realized that this traffic was being directed from parked domains which had little relation to its business, yet generated traffic to its site.

15.  Despite indication that some of the clicks from parked domains were invalid, Google failed to disclose to the Plaintiff specific domains names in which these ads were clicked on, making detection of invalid clicks difficult and even worse concealing any evidence of invalid clicks.

16.  Since Google profits from all generated clicks, regardless of validity they benefit by actively hiding sources of invalid clicks being charged to its advertisers. Hiding the source of parked domain clicks launders invalid clicks and makes any claims of invalid clicks from these sites nearly impossible to show.

///

///

///

— 5 —

CLASS ACTION COMPLAINT

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000

## CLASS ALLEGATIONS

16.  Description of the Class: Plaintiff brings this nationwide class action on behalf of himself and the Class defined as follows:

*All persons or entities located within the United States who created an AdWords campaign and were subsequently charged for clicks from ads placed on parked domains.*

17.  Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

18.  Plaintiff reserves the right to modify the class description and the class period based on the results of discovery.

19.  Numerosity: The proposed Class is so numerous that individual joinder of all its members is impracticable.  Due to the nature of the trade and commerce involved, however, Plaintiff believes that the total number of class members is at least in the hundreds of thousands and that the members of the Class are numerous and geographically dispersed across the United States.  While the exact number and identities of class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the court.

20.  Common Questions of Law and Fact Predominate:  There are many questions of law and fact common to the representative Plaintiff and the proposed Class, and those questions substantially predominate over any individualized questions that may affect individual class members.  Common questions of fact and law include, but are not limited to, the following:

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000

— 6 —

a.  Whether Google committed fraud it failed to disclose sources of clicks from parked domains;

b.  Whether or not Plaintiff and the members of the Class have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relief that should be afforded;

c.  Whether Google engaged in unfair, unlawful and/or fraudulent business practices; and

d.  Whether Google failed to disclose material facts about the subject Google Adwords program.

21.  **Typicality:**  Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since material information pertaining to the source of clicks coming from parked domains was equally withheld from all.

22.  **Adequacy of Representation:**  Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiff nor its counsel has any interests adverse to those of the proposed Class.

23.  **Superiority of a Class Action:**  Plaintiff and the members of the Class have suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy as individual joinder of all members of the Class is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000

— 7 —
**CLASS ACTION COMPLAINT**

1    common course of conduct. The class action device allows a single court to provide the
2    benefits of unitary adjudication, judicial economy, and the fair and equitable handling of
3    all class members' claims in a single forum. The conduct of this action as a class action
4    conserves the resources of the parties and of the judicial system, and protects the rights of
5    the class member. Furthermore, for many, if not most, Class members, a class action is
6    the only feasible mechanism that allows an opportunity for legal redress and justice.

7        24.    Adjudication of individual Class members' claims with respect to the
8    Defendant would, as a practical matter, be dispositive of the interests of other members
9    not parties to the adjudication and could substantially impair or impede the ability of
10   other Class members to protect their interests.

## FIRST CAUSE OF ACTION
### UNJUST ENRICHMENT

14       25.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and,
15   to the extent necessary, pleads this cause of action in the alternative.

16       26.    Through the actions described above, Google has received money
17   belonging to Plaintiff and the Class through the fees collected ads placed on third party
18   parked domain sites.

19       27.    Additionally, Google has reaped substantial profit by concealing invalid
20   clicks from parked domains. Ultimately, this resulted in Google's wrongful receipt of
21   profits and injury to Plaintiff and the Class. Google has benefited from the receipt of
22   such money that it would not have received but for its concealment.

23       28.    As a direct and proximate result of Google's misconduct as set forth above,
24   Google has been unjustly enriched.

25       29.    Under principles of equity and good conscience, Google should not be
26   permitted to keep the full amount of money belonging to Plaintiff and the Class which
27   Google has unjustly received as a result of its actions.

28       WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000

## SECOND CAUSE OF ACTION

### FRAUDULENT CONCEALMENT

30.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

31.    Google knew at all material times the source of invalid clicks from parked domains, and that its customers would not be able to distinguish between valid and invalid clicks from parked domains with the limited information that was provided to them. These facts were not known to Plaintiff and the Class.

32.    Google had a duty to disclose the above known material facts because it knew that these material facts were unknown to Plaintiff and the Class, that Google was in a superior position of knowledge with regard to its own technology, and Google chose to make certain representations that presented only a part of the true story and thus misled its customers.

33.    Google's knowledge that advertisers would be charged for invalid clicks hidden in the bulk AdWords charges from parked domains, combined with Google's knowledge that Plaintiff and the Class relied or relies upon Google to communicate the true state of facts relating to its AdWords program creates a legal obligation on Google's part to disclose the source of clicks originating from parked domains.

34.    Google intentionally concealed and/or suppressed the above facts with the intent to defraud Plaintiff and the Class.

35.    Plaintiff and the Class were unaware of the above facts and would not have acted as they did if they had known of the concealed material facts.

36.    Google's concealment of the above facts has caused damage to Plaintiff and the Class in an amount to be shown at trial.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

/ / /

/ / /

/ / /

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000

— 9 —

**CLASS ACTION COMPLAINT**

### THIRD CAUSE OF ACTION

## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTIONS 17200 ET SEQ.

37.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

38.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Google's actions as delineated herein.

39.   Class members have suffered injury in fact and have lost money or property as a result of Google's actions as delineated herein.

40.   Google's actions as alleged in this complaint constitute an unfair or deceptive practice within the meaning of California Business and Professions Code sections 17200 et seq. in that Google's actions are unfair, unlawful and fraudulent, and because Google has made unfair, deceptive, untrue or misleading statements in advertising media, including the Internet, within the meaning of California Business and Professions Code sections 17500 et seq.

41.   Google's business practices, as alleged herein, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that consumers are not informed of the sources of invalid clicks for which they are charged for.

42.   Google's business practices, as alleged herein, are unlawful because the conduct constitutes fraudulent concealment, as well as the other causes of action herein alleged.

43.   Google's practices, as alleged herein, are fraudulent because they are likely to deceive consumers.

44.   Google's wrongful business acts alleged herein constituted, and constitute, a continuing course of conduct of unfair competition since Google is marketing and selling its products in a manner that is likely to deceive the public.

45.   Google's business acts and practices, as alleged herein, have caused injury

**CLASS ACTION COMPLAINT**

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
P: (213) 217-5000

1    to Plaintiff, the Class and the public.

2         46.    Pursuant to section 17203 of the California Business and Professions Code,

3    Plaintiffs and the class seek an order of this court enjoining Google from continuing to

4    engage in unlawful, unfair, or deceptive business practices and any other act prohibited

5    by law, including those acts set forth in the complaint.  Plaintiff and the Class also seek

6    an order requiring Google to make full restitution of all moneys it wrongfully obtained

7    from Plaintiff and the Class.

8         WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

9

10                            **PRAYER FOR RELIEF**

11        WHEREFORE, Plaintiff and members of the proposed Class request that the

12   court enter an order or judgment against Defendant as follows:

13        1.    Certification of the proposed Class and notice thereto to be paid by

14               Defendant;

15        2.    Adjudge and decree that Defendant has engaged in the conduct alleged

16               herein;

17        3.    For restitution and disgorgement on certain causes of action;

18        4.    For an injunction ordering Defendant to cease and desist from engaging in

19               the unfair, unlawful, and/or fraudulent practices alleged in the Complaint;

20        5.    For compensatory and general damages according to proof on certain

21               causes of action;

22        6.    For special damages according to proof on certain causes of action;

23        7.    For both pre and post-judgment interest at the maximum allowable rate on

24               any amounts awarded;

25        8.    Costs of the proceedings herein;

26        9.    Reasonable attorneys fees as allowed by statute; and

27   ///

28   ///

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000

— 11 —

**CLASS ACTION COMPLAINT**

07-17-2008   09:56AM   FROM-   Case 5:08-cv-03452-RS    Document 1    Filed 07/17/2008    Page 12 of 13    T-018   P-013/018   F-653



10.    Any and all such other and further relief that this Court may deem just and proper.

Dated: July 17, 2008

KABATECK BROWN KELLNER, LLP

By:

BRIAN S. KABATECK
RICHARD L. KELLNER
ALFREDO TORRIJOS
*Attorneys for Plaintiff and proposed class*

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
FAX (213) 217-5010

— 12 —
CLASS ACTION COMPLAINT



## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in the instant action.

Dated: July 17, 2008

KABATECK BROWN KELLNER, LLP

By
BRIAN S. KABATECK
RICHARD L. KELLNER
ALFREDO TORRIJOS
*Attorneys for Plaintiff and proposed class*

— 13 —

CLASS ACTION COMPLAINT

# EXHIBIT 4

1    GUIDO SAVERI (022349)
     *guido@saveri.com*
2    R. ALEXANDER SAVERI(173102)
     *rick@saveri.com*
3    CADIO ZIRPOLI (179108)
     *cadio@saveri.com*
4    SAVERI & SAVERI, INC.
     111 Pine Street, Suite 1700
5    San Francisco, CA 94111-5619
     Telephone: (415) 217-6810
6    Facsimile: (415) 217-6813

7    TERRY GROSS (103878)
     *terry@gba-law.com*
8    ADAM C. BELSKY (147800)
     *adam@gba-law.com*
9    MONIQUE ALONSO (127078)
     *monique@gba-law.com*
10   GROSS BELSKY ALONSO LLP
     180 Montgomery Street, Suite 2200
11   San Francisco, CA 94104
     Telephone:  (415) 544-0200
12   Facsimile:  (415) 544-0201            **E-filing**

13   Attorneys for Pulaski & Middleman, LLC

14

15               UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17                 SAN FRANCISCO DIVISION

18                                    CV 08      3888

19   Pulaski & Middleman, LLC., individually and )  Case No.:
                                                 )
20   on behalf of all others similarly situated, )  **CLASS ACTION**
                                                 )
21               Plaintiff,                      )  **COMPLAINT**
                                                 )
22          v.                                   )  **JURY TRIAL DEMANDED**
                                                 )
23   GOOGLE INC., a Delaware corporation,        )
                                                 )
24               Defendant                       )
                                                 )
25

26

27

28

COMPLAINT                          0

1    Plaintiff, Pulaski & Middleman, LLC, ("Pulaski") alleges, individually and on behalf of
2 the Class described below, and upon information and belief, except as to allegations specifically
3 pertaining to itself, which are based on personal knowledge, as follows:

### SUMMARY OF CLAIMS

4
5       1.      This case is about Defendant Google's fraudulent, unfair and deceptive
6 business practices in connection with its AdWords advertising program ("AdWords").  Pulaski
7 brings this case both individually, and on behalf of a similarly situated Class, against Defendant
8 Google, Inc. ("Google") for breach of contract, breach of duty of good faith and fair dealing,
9 violations of Business Professions Code Sections 17200 and 17500 and unjust enrichment.

### PARTIES

10
11      2.      Plaintiff, Pulaski & Middleman, LLC, is Texas limited liability company
12 engaged in the practice of law.  Pulaski's offices are located at 6800 West Loop South, Suite
13 200, Bellaire, Texas 77401.  During the relevant time set forth herein, Plaintiff contracted with
14 Google to place advertisements through AdWords.  Pulaski has contracted with Google and
15 participated in the AdWords program since on or about May 6, 2006.

16      3.      Defendant Google Inc. ("Google") is a publicly held corporation that was
17 incorporated in California in September 1998 and reincorporated in Delaware in August 2003.
18 Google's headquarters are located at 1600 Amphitheatre Parkway, Mountain View, California
19 94043.  Defendant Google's website is located at www.Google.com.  In 2007, Google's total
20 revenue was approximately 16.6 billion, 99% of which was derived from Internet based
21 advertising services offered through AdWords.

### JURISDICTION AND VENUE

22
23      4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.
24 §1332(d) in that this is a civil action filed under Federal Rule of Civil Procedure 23 and Plaintiff
25 and other members of the Class are citizens of a state different from Google, the aggregate
26 amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and there are more
27 than 100 Class members 28 U.S.C. §1332(d)(2), (6).

28

COMPLAINT                                      1

1    5.    Venue is proper in the Northern District of California Pursuant to 28 U.S.C. §

2    1391(a) in that: (1) Google resides in this judicial district; (2) a substantial part of the events or

3    omissions giving rise to the claims asserted herein occurred in this judicial district; and (3)

4    Google is subject to jurisdiction in the Northern District of California.

5    6.    No other forum would be more convenient for the parties and witnesses to

6    litigate this action. Defendant Google is a resident of this judicial district and a substantial

7    amount of the evidence and witnesses are located in this judicial district.

8    <u>**FACTS**</u>

9    **A.    General Background**

10    7.    Google is the world's single largest online marketing/advertising business

11    in the world. According to Google: "There's no larger network for contextual advertising in the

12    world." https://adwords.google.com/select/afc.html.

13    8.    The "AdWords Advertising Program" ("AdWords") is Google's primary

14    advertising program and the source of over 98% of its annual revenue. In 2004, 2005, 2006, and

15    2007 Defendant Google generated approximately 99% of its annual revenue from its AdWords

16    advertisers.

17    9.    Google's advertising network ("Google Network") reaches over 86% of

18    Internet users worldwide. http://adwords.google.com/support/bin/answer.py?answer=6119. In

19    attracting AdWords advertisers to contract for participation in AdWords, Defendant Google

20    represents its "reach" as follows:

21
| Country | Unique Reach |
|---|---|
| Germany | 89% |
| Japan | 86% |
| France | 79% |
| United Kingdom | 75% |
| United States | 76% |
| Global | 75% |

Source: comScore Networks machine-based panel

https://adwords.google.com/select/afc.html

COMPLAINT    2

1        10.    Pulaski and the Class are "Adwords advertisers" that have contracted with

2   Google to participate in the AdWords advertising program and display their advertisements on

3   the Google Network.

4   **B.    Google Network**

5        11.    The Google Network, also referred to as the Google AdSense Network, is the

6   association of individuals/entities that collectively provide the internet locations where AdWords

7   advertisements are displayed and monetized.  The Google Network consists of: (1) Google; (2)

8   Google Search Network participants (America Online, CompuServe, Netscape, AT&T Worldnet,

9   EarthLink, Sympatico, and others); (3) Google Content Network participants (New York Post

10  Online Edition, Mac Publishing (includes Macworld.com, JavaWorld, LinuxWorld),

11  HowStuffWorks, and others); (4)  Google Domain Network participants (Sedo.com, Oversee.net

12  and others); and (5) Google AdSense Network participants.

13       12.    The Google AdSense program pays participants for AdWords ads monetized on

14  their sites.  Google AdSense consists of the following different programs:  AdSense for Content,

15  AdSense for Search, AdSense for Mobile, AdSense for Video, AdSense for Domains, and

16  AdSense for Errors.

17       13.    *AdSense For Content:*  AdSense Network partners that contract with Google to

18  allow AdWords Advertisements to be placed/displayed on content based webpages under their

19  ownership, license, registration, and or other control. As explained by Google on its website:

20  "The Google content network comprises hundreds of thousands of high-quality websites, news

21  pages, and blogs that partner with Google to display targeted AdWords ads. When you choose to

22  advertise on the content network, you can expand your marketing reach to targeted audiences--

23  and potential customers--visiting these sites every day. There's no larger network for contextual

24  advertising in the world."   It includes, but is not limited to the following individuals/entities:





28  https://adwords.google.com/select/afc.html

COMPLAINT                                  3

14.     **_AdSense for Search:_** AdSense Network partners that contract with Google to place a Google search box on their websites to allow a website's users to perform search queries using keywords from a website they have visited. Based on the search query typed into the search box, Google will display Google search results along with related Adwords advertisements and Google shares the revenue with the site owner.

15.     As Google states: "__AdSense for search__ allows website publishers to provide Google web and site search to their visitors, and to earn money by displaying Google ads on the search results pages."



https://www.google.com/adsense/login/en_US/?hl=en_US&sourceid=aso&subid=ww-en_US-et-ads-r3_b_top&medium=link&gsessionid=jjUuHkGH_dk

16.     Defendant Google explains on its website, the: "(g)lobal search network which includes, but is not limited to, Google Product Search and Google Groups and the following entities:



http://adwords.google.com/support/bin/answer.py?answer=6119

17.     This is how Google defines a "search":

**The Essentials of Google Search**

Doing a search on Google [or a site in the Search Network] is easy. Simply type one or more search terms (the words or phrase that best describe the

COMPLAINT                                    4

information you want to find) into the search box and hit the 'Enter' key or click on the Google Search button.

| Haw aii | Google Search |
|---------|---------------|

In response, Google produces a results page: a list of web pages related to your search terms, with the most relevant page appearing first, then the next, and so on. http://www.google.com/support/bin/static.py?page=searchguides.html&ctx=basis

18. **AdSense for Mobile:** AdSense Network partners that contract with Google to allow AdWords Advertisements to be placed/displayed on mobile webpages under their ownership, license, registration, and or other control.

19. **AdSense for Video:** AdSense Network partners that contract with Google to allow AdWords Advertisements to be placed/displayed within video streams under their ownership, license, registration, and or other control.

20. **AdSense for Domains:** AdSense Network partners that contract with Google to allow AdWords Advertisements to be placed/displayed on parked domains enterd into the address bar under their ownership, license, registration, and or other control, based on the meaning of the "domain names". Google explains on its website: AdSense for domains allows domain name registrars and large domain name holders to unlock the value in their parked page inventory. AdSense for domains delivers targeted, conceptually related advertisements to parked domain pages by using Google's semantic technology to analyze and understand the meaning of the domain names. Our program uses ads from the Google AdWords network, which is comprised of thousands of advertisers worldwide and is growing larger everyday. Google AdSense for domains targets web sites in over 25 languages, and has fully localized segmentation technology in over 10 languages. http://www.google.com/domainpark/index.html

21. **AdSense for Errors:** AdSense for Errors program serves AdWords Advertisements when an internet user enters an unregistered URL or search query in their browser's address bar.

COMPLAINT                                    5

**C. Google AdWords Program**

22.    The Google AdWords program, launched in 2000, is Google's primary advertising program. It offers participants an opportunity to place advertisements through Google's expansive network that reaches up to 86% of worldwide Internet users.

23.    AdWords advertisements appear throughout the Google Network alongside or above search results, on web pages, in e-mail, blogs, in video, and/or otherwise on Google or the Google Network (collectively referred to herein as "Advertising Properties").

24.    AdWords advertisements are offered in a variety of formats including, but not limited to, text ads, image ads (banner ads), flash ads, and video ads.

25.    Google states that advertisements are displayed throughout the Google Network based on factors such as: how much an advertiser bids, the quality of the advertiser's ad, and how many other people want to bid on a particular keyword.

26.    AdWords ads can be displayed on the: (1) Search Network and/or (2) Content Network.

27.    Search Network Ads are targeted and displayed based on a user's exact search query terms and keywords. Content Network Ads are targeted and displayed based on content themes.

28.    Google defines its "Content Network" as follows:

The Google content network comprises hundreds of thousands of high-quality websites, news pages, and blogs that partner with Google to display targeted AdWords ads. When you choose to advertise on the content network, you can expand your marketing reach to targeted audiences--and potential customers-- visiting these sites every day. There's no larger network for contextual advertising in the world.

  

As an AdWords advertiser, you can hand-pick sites from the content network or simply let Google's proven ad targeting display your ads on the website pages most relevant to your products and services.
https://adwords.google.com/select/afc.html

COMPLAINT                                   6

29. Google, at https://adwords.google.com/support/bin/answer.py?answer=6119&topic=82, provides the following representations about, and example of, ad placement on the content network:

**Ads on the content network**

AdWords ads on <u>content sites</u> are targeted to the content and URL of each page. In the screenshot below you can see how the ads are displayed on a content page and that the ads are directly relevant to the content of the page.



30. Google partners participating in the AdSense program are required to adhere to the following policies. "No Google ad may be placed on any non-content-based pages." In addition, no Google ad is allowed to be placed on web pages generated "specifically for the purpose of showing ads, whether or not the page content is relevant."

https://www.google.com/adsense/support/bin/answer.py?answer=48182&sourceid=aso&subid=ww-ww-et-asui&medium=link

31. Google states the following about the "Search Network":

**The search network**

Your ads may appear alongside or above search results, as part of a results page as a user navigates through a site's directory, or on other relevant search

COMPLAINT                                        7

pages. Our global search network includes Google Product Search and Google Groups and the following entities:

 

 

https://adwords.google.com/support/bin/answer.py?answer=6119

32.    Regarding the Search Network, Google tells advertisers: "Ads are targeted based on a user's search terms. For example, if you search for 'Italian coffee' on Google, you'll see related coffee ads next to the search results."

http://adwords.google.com/support/bin/answer.py?hl=en&answer=6104

33.    All new keyword campaigns are automatically included into both the Search and Content networks.

34.    An AdWords advertiser can exclude an ad campaign from the Search and/or Content Networks, however until May 2008, there was no way to categorically exclude "parked sites" or AdSense for Errors pages from a campaign.

35.    In fact, until May 2008, Google actively concealed the identity of parked pages and error pages that displayed AdWords advertisements.

**D.  Inclusion of Low –Quality Parked Domains and Error Pages in the Google Networks**

36.    Google includes millions of low-quality parked/undeveloped websites ("sham sites") in the Google Search and Content Networks, despite the fact that said sites do not contain any content and are not search sites.

37.    Until May 2008, Google actively concealed the monetization, with AdWords advertisements, of low-quality, parked and error pages.

38.    Google includes web pages displayed through the AdWords for Errors program in the "Content Network," despite the fact that the pages contain no content.  Google displays

COMPLAINT                                        8

1    AdWords ads on its AdSense for Errors web pages when an Internet user enters an unregistered

2    URL in their browser's address bar.

3        39.    AdWords advertisers in the Google "Content Network" may have their ads

4    displayed not only on "content sites," but also on parked/non-content sites, AdSense for

5    Domains, and AdSense for Error pages.

6        40.    AdWords advertisers in the Google "Search Network" may have their ads

7    displayed not only on "search sites," but also on parked/non-content sites and AdSense for

8    Domains pages, where someone only typed in a domain name into the address bar and/or no

9    search query from a search box occurred.

10       41.    Google intentionally includes the low-quality parked/undeveloped sites, Google

11   AdSense for domains and error pages in the Google Search and Content Networks in order to

12   inflate its reported search statistics, as well as to maximize revenue from internet traffic by

13   providing substantially more advertising venues (Internet locations) and more billed "clicks" or

14   "impressions" for AdWords advertisements.

15       42.    Google actively misleads AdWords advertisers and otherwise conceals the fact

16   that many of its AdWords advertisements appear on low–quality parked/non-content sites and

17   Error pages, by among other things:

18       a.    Repeatedly    affirmatively    representing    on    its    website,    and    in    other

19   communications, that AdWords advertisements appear on "High-quality" sites;

20       b.    Failing to reference the AdSense for Domains and AdSense for Errors pages in its

21   definition of the Google Network or on the main AdSense Pages;

22       c.    Until May 2008, failing to provide any specific identification of low-quality,

23   parked/non-content, AdSense for Domains and Error pages in its Content Network performance

24   reports;

25       d.    Even through the present, failing to identify the specific parked/undeveloped and

26   other AdSense for Domains sites monetized through its "Search Network" on its AdWords

27   advertisers' performance reports;

28

COMPLAINT                                9

1    e.    After it commenced reporting in May 2008, Google recharacterized many of the

2    parked/undeveloped sites and AdSense for Domains pages as "Search Network" sites to avoid

3    specifically reporting monetization of those sites and further conceal their conduct from

4    AdWords advertisers;

5    f.    Misrepresenting to AdWords advertisers the real reason that parked/undeveloped

6    sites and AdSense for Domains have equal or better click through rates than traditional content

7    and search sites.  Google fails to disclose such pages and only shows ads on the

8    parked/undeveloped sites.  In doing this, Google violates its own terms and conditions of how

9    ads can be displayed on the Search and Content Networks, further misleading advertisers;

10    g.    Knowingly provided AdWords advertisers false defintions of the AdSense for

11    Domains Network, and mispresented to advertisers what the AdSense for Domains Nework

12    consists of and how an internet user gets to a parked page in the AdSense for Domains Network.

13    h.    Otherwise making affirmative misrepresentations, fraudulent statements, and

14    omissions of material fact to AdWords advertisers and the general public regarding the AdWords

15    and AdSense programs.

16    43.    Google induces advertiser participation in AdWords by emphasizing the "high-

17    quality" of sites on which AdWords ads will be placed, and intentionally concealed and omitted

18    Google's practice of placing ads on low-quality parked AdSense for Domains sites or on

19    AdSense for Errors sites, as well as on sites that it knows violates cybersquatting, trademark,

20    copyright, and other intellectual property laws.

21    44.    Google's AdWords website, which potential customers view before clicking the

22    "Start Now" button to sign up for the program, includes the following statement:

23

24        Expand your reach through the content network with hundreds of thousands of
         high-quality websites, news pages, and blogs that partner with Google to display
25        AdWords ads, the Google content network can reach users all over the web to
         help you drive conversions. Choose from text, image, and video formats to
26        communicate your message.

27

28

COMPLAINT                                10

45.    Google intends to and has affirmatively mislead AdWords advertisers, and otherwise omitted material facts, regarding the composition of the Content and Search networks.

46.    Google makes numerous affirmative representations and promises, to AdWords advertisers about participation in the AdWords program, including but not limited to the following:

a.    By advertising on sites in the Google "Content Network": "Your ads appear on sites that are highly relevant to your products and services. As a result, you're already aligned with the interests of people visiting those sites."

https://adwords.google.com/select/afc/cycle.html

b.    All web sites and products are reviewed and monitored according to Google's rigorous standards, so as the network grows, your AdWords ads will continue to appear only on high quality sites and products.

https://adwords.google.com/support/bin/answer.py?answer=6104&query=Google+Network&topic=&type=f&%20onclick= Similarly, Google states: "To ensure overall quality, all sites are carefully reviewed before being allowed in the Google Network."

http://adwords.google.com/support/bin/answer.py?hl=en&answer=6104

c.    Google represents that a number of "tools" offer automated optimization of an Adwords ad campaign and will save the AdWords advertiser money, including but not limited to: AdWords Budget Optimizer, Site exclusion tool, performance reporting tools contextual targeting tools, and AdWords Discounter.

47.    Google, despite its representations to AdWords advertisers, uses its automated tools to maximize its own revenue and for its own financial gain.  Google misleads AdWords advertisers to utilize the tools with false promises that the tools will benefit the Adwords Advertiser.

48.    For example, Google offers the "AdWords Budget Optimizer" tool that promises to get AdWords advertisers the most clicks for their advertising dollars.  In fact, Google uses that tool to maximize its own revenue by displaying AdWords ads on many low-quality sites that generate costly low-quality clicks, such as AdSense for Domains pages.

COMPLAINT                                    11

**E.    Monetization of AdWords Advertisements**

49.    Google generates money when it "monetizes" AdWords advertisements by displaying them throughout the Google Network and then charging AdWords advertisers through one of its two primary pricing regimes: Cost Per Click ("CPC") and Cost per Thousand Impressions ("CPM").

50.    Google generates revenue under the CPC regime when:

 a.    Google displays the AdWords advertisement on the Google Network;

 b.    An Internet user "clicks" on the advertisement; and

 c.    Google charges the corresponding AdWords advertiser a "click fee."

51.    Google generates revenue under the CPM regime by charging advertisers a flat rate based on display of impressions, regardless of whether an Internet user "clicks" on any impression.

52.    Under the CPC pricing regime, Google places ads through the Google Network and the AdWords advertiser is charged "per click," each time an ad is clicked.

53.    Under the CPM pricing regime, an Advertiser pays Google a set fee per 1000 impressions displayed.

54.    CPC or CPM pricing is available on placement targeted ads.  Only CPC pricing is offered for contextually targeted ads.

55.    CPC advertisements are displayed when an Internet user enters search terms into the Google Search engine.  The order in which the AdWords advertisements appear depends on the amount of the bid and the "quality score" of all ads shown for a given search.

56.    AdWords advertisers can choose to pay a different price when ads appears on the content network versus when it appears on Google or a Google search network site ("content bidding").

57.    Google represents to AdWords advertisers that the "AdWords smart pricing feature" will optimize their advertising dollars, because it:  "(w)ill adjust the cost of your content network click based on the content network site's relevance to your own site.  For example, if our data shows that a particular click from a content network page is less likely to turn into a sale,

COMPLAINT      12

1  registration, or other desired behavior, we'll automatically reduce the price you pay for that

2  click." https://adwords.google.com/select/afc/pricing.html

3      58.    AdWords advertisers can set a maximum price that they are willing to pay per

4  click, a maximum daily budget, and/or use the "AdWords Budget Optimizer" that Google

5  promises will "(t)ry and find you the most clicks possible within your budget."

6      59.    Google represents that it is always actively working for AdWords advertisers to

7  get them the lowest advertising rates, with tools such as the "AdWords Discounter" which

8  Google affirmatively represents "(a)utomatically reduces the actual cost-per-click (or CPC) you

9  pay to the lowest cost needed to maintain your ad's position. The AdWords Discounter keeps

10  working no matter which method of display or bidding you choose."

11  https://adwords.google.com/support/bin/answer.py?answer=6084&topic=115

12      60.    Aggregate paid clicks on Google Network sites increased by 65% from year-

13  end 2005 through year end 2006 (*See* 2006 Google 10K at 43).

14  **F.    AdWords Contracts, Guidelines, and Policies**

15      61.    In order to participate in AdWords, advertisers must electronically accept the

16  following contracts: https://adwords.google.com/select/tsandcsfinder. ("AdWords Contract")

17  and http://www.google.com/accounts/TOS ("Google Universal Contract"), as well as all

18  general and Google policies, procedures and regulations such as: Editorial Guidelines

19  (adwords.google.com/select/guidelines.html), Google Privacy Policy

20  (www.google.com/privacy.html) and Trademark Guidelines

21  (www.google.com/permissions/guidelines.html), and Google and Partner ad specification

22  requirements (collectively, **"Policies"**). Pulaski and each member of the Class has entered into

23  said contracts with Google. ***See AdWords Contracts, attached hereto as Exhibit "A."***

24      62.    Google is contractually obligated to act in good faith and deal fairly with

25  AdWords advertisers.

26      63.    Google is further obligated to act in good faith and deal fairly with AdWords

27  advertisers in implementing and enforcing its self proscribed policies and guidelines.

28

COMPLAINT             13

64. Google is obligated to discharge its contractual obligations without violating California, United States, and International cybersquatting, typosquatting, cyberpiracy, trademark, copyright, and other intellectual property laws.

65. Google controls the Internet advertising market through restrictive agreements with many of its Google Network participants that forbid those participants from displaying any advertisements on their sites other than Google advertisements. Therefore, in order to gain access to millions of Internet advertising properties, Pulaski and the Class were left with no choice but to contract with Google for participation in the Google AdWords advertising program.

66. Google requires, as a condition for participation in the AdWords advertising program, and to gain access to the Google Network properties that purportedly reaches 86% + of world-wide internet users, that AdWords advertisers consent to and enter into electronic contracts with Google that are displayed on Google's website.

67. AdWords advertisers are required to agree to comply with Google's rules, regulations, guidelines, and other policies. In fact, several of the policies are explicitly incorporated into the contracts.

68. Pulaski and the Class have all entered into the same standard contracts with Defendant Google, as a condition of participation in Google's AdWords advertising program. Pulaski and the Class are subject to the same, standard written policies, procedures, and guidelines published by Google on its website.

69. Google unilaterally drafts all contracts, policies, procedures, and guidelines governing the relationship between Google and AdWords advertisers, as well as any and all amendments and modifications.

70. Google places all AdWords advertisements on the Google Network.

71. Pursuant to ¶2 of the Google Inc. Advertising Program Terms:

> "Google Customer understands and agrees that ads may be placed on (y) any content or property provided by Google (**"Google Property"**), and, unless Customer opts out of such placement in the manner specified by Google, (z) any other content or property provided by a third party (**"Partner"**) upon which Google places ads (**"Partner Property"**). Customer authorizes and consents to all such placements."

COMPLAINT                                    14

1    72.    Google is obligated pursuant to the terms of ¶2, to act in good faith and deal

2  fairly with Google AdWords advertisers in discharging the placement of AdWords

3  Advertisements.

4    73.    Specifically, Google has an obligation to display advertisements on legitimate

5  sites that Google and/or its "partners" are legally entitled to utilize and monetize.

6    74.    Google breaches its contractual obligations to Pulaski and the Class when it

7  displays and/or charges them for their AdWords advertisements displayed on sites that Google is

8  not legally entitled to use, sites that violate trademark law, sites that violate cybersquatting law,

9  sites that violate cyberpiracy laws, sites that violate copyright laws, and sites that violate other

10  California, United States and/or International laws.

11    75.    Google breaches its contractual obligations to Pulaski and the Class when it

12  displays and/or charges them for their AdWords advertisements displayed on sites that violate

13  Google's own written and published guidelines, policies, and rules.

14    76.    Google breaches its contractual obligations to Pulaski and the Class when it

15  overcharges them for AdWords advertisements.

16    77.    Google breaches its contractual obligations to Pulaski and the Class when it

17  includes millions of low-quality sites and Error pages in its "Content" and "Search" Networks.

18    78.    Google breaches its contractual obligations to Pulaski and the Class when it

19  utilizes its tools and technologies for their own pecuniary gain and to the detriment of Pulaski

20  and the Class, while inducing Pulaski and the Class to utilize those tools with false

21  representations that the tools will optimize/maximize the value of their participation in

22  AdWords.

23    79.    Google knowingly and intentionally displays, and charges Pulaski and the

24  Class, for AdWords advertisements on:

25        a.    Low-quality parked/non-content sites and Error pages;

26        b.    Sites that it "knows" violates cybersquatting, typosquatting, cyberpiracy,

27        trademark, copyright and other intellectual property laws;

28

COMPLAINT                    15

c.      Sites that it knows violates Google's own written and published policies, guidelines, and rules, such as gambling sites and pornography related sites;

d.      Sites that it knows it is not legally entitled to use; and

e.      Sites that neither itself nor its partners are legally entitled to use or monetize, and in fact whose use is in violation of United States and International cybersquatting, trademark, copyright and other laws ("illegal sites").

**G.      Google Representations, Promises, and Communications**

80.      Google makes specific affirmative written representations and promises to Plaintiff, the putative Class, and the general public which are located on its website, www.google.com, as well as, specifically contained in the following documents:

| | |
|---|---|
| Google's Universal Terms of Service | http://www.google.com/accounts/TOS |
| Google's Copyright and Trademark policies | http://www.google.com/tm_complaint.html. http://www.google.com/dmca.html. |
| **Google AdSense<sup>TM</sup> Online Standard Terms and Conditions** | https://www.google.com/adsense/localized-terms |
| Google AdSense Program Policies | https://www.google.com/adsense/support/bin/answer.py?answer=48182 |
| Google Webmaster Guidelines | http://www.google.com/webmasters/guidelines.html. |
| Google Landing Page and Site Quality Guidelines | https://adwords.google.com/support/bin/answer.py?answer=46675&hl=en |
| AdSense For Video Program Policies | https://www.google.com/AdSense/support/bin/answer.py?answer=73987 |
| AdSense for Mobile Content Program Policies | https://www.google.com/AdSense/support/bin/answer.py?answer=71600 |

81.      Google knowingly and intentionally uses the written representations to induce AdWords advertisers to contract with Google for participation in the AdWords advertising program. Google intends Plaintiff, the Class, and the public to rely upon and act in reliance upon its representations on www.google.com and other publicly available documents and

COMPLAINT                              16

1    communications. Plaintiff and the Class reasonably expect Google to act in accordance with

2    these representations.

3         82.    Google knows that its website, and other public communications are false,

4    misleading, and/or omit material facts and information.

5         83.    Google intentionally and knowingly continuously violates its written policies,

6    guidelines, policies and rules in operating the AdWords and AdSense programs.  It does so for its

7    own ill-gotten commercial gain, in ways such as but not limited to:

8         a.    Intentionally displays and charges Plaintiff and the Class for "clicks" on

9    advertisements placed on websites that violate Google's written contracts, guidelines, policies,

10   and public representations, such as sites generated solely for the purpose of displaying AdWords

11   Advertisements and sites violating trademark and copyright law.

12        b.    Intentionally displaying and charging Plaintiff and the Class for "clicks" on

13   advertisements placed on low-quality and undisclosed websites participating in the AdSense for

14   Domains and Adsense for Errors programs;

15        c.    Overcharging Plaintiff and the Class for advertising through the AdWords

16   program;

17        d.    Intentionally hijacking and diverting Plaintiff and the Class Member's legitimate

18   internet traffic to sham infringement websites, and then requiring Plaintiff and the Class to pay

19   "click" ransoms to get their own internet traffic back.  For example, a user intending to visit the

20   retailer Target's legitimate website might mistype as "www.wwwtarget.com."  At the "www"

21   infringing site, the internet user sees a list of ads provided by Google, including an ad for the

22   legitimate Target site.  If the user clicks the legitimate Target ad, the user is taken to the true

23   Target website, but Target has to pay a "ransom" in the form of a "PPC" click fee in order to get

24   their intended internet traffic back from Google;

25        e.    Displaying, and charging for, AdWords advertisements in spyware programs; and

26        f.    Failing to utilize targeting technology to ensure that AdWords ads are "highly

27   targeted," but rather placing and displaying AdWords ads in a random fashion.

28

COMPLAINT                    17

1    84.    Without their knowledge or consent, advertisers who joined Google's AdWords

2  program have had their ads placed on pages contained in AdSense for Domains, or parked sites,

3  and AdSense for Errors, or error pages. The quality of these sites as an advertising medium is

4  substantially lower than sites on the rest of Google's network, and many of the sites directly

5  violate United States and International trademark, copyright, and other intellectual property laws.

6    85.    For example, Google routinely and intentionally charges Plaintiff and Class

7  members for clicks on advertisements improperly displayed on parked domains that infringe

8  distinctive and valuable marks, for example "www" , "http" and "com.com" domains,  such as:

9  bedbathandbeyondcom.com; chevycom.com; chryslercom.com; cocacolacom.com;

10  discovercreditcardcom.com; disneylandcom.com; disneyworldcom.com;

11  ebaumsworldcom.com; espncom.com; fordmotorscom.com; geicocom.com;

12  homedepotcom.com; ibmcom.com; ikeacom.com; jetbluecom.com; jcpennycom.com;

13  kohlscom.com; kmartcom.com; mcdonaldscom.com; musiciansfriendcom.com;

14  nascarcom.com; oldnavycom.com; pizzahutcom.com; randcom.com; saabcom.com;

15  scottradecom.com; travelocitycom.com; usairwayscom.com; volkswagencom.com;

16  xangacom.com.  httpaarp.com, httpabc.com; httpabcgames.com; httpabckids.com;

17  httpabcnews.com; httpamericanexpress.com; httpamsouthbank.com; httpautotrader.com;

18  httpbankofamerica.com; httpbellsouth.com; httpbestbuy.com; httpblackplanet.com;

19  httpbordersbooks.com; httpbratz.com; httpcareerbuilder.com; httpcapitalone.com;

20  httpcapitolone.com; httpcarmax.com; httpcartonnetwork.com; httpcartoonetwork.com;

21  httpcartoonnetwork.com; httpchevrolet.com; httpchevy.com;  httpcircuitcity.com;

22  httpcisco.com;  httpciti.com;  httpcitibank.com; httpciticard.com and httpciticards.com.

23  "WWWAMERICANAERLINES.COM";

24  "WWWAMERICANAIRLINESARENA.COM";

25  "WWWAMERICANANIAGARA.COM"; "WWWAMERICANARLINES.COM";

26  WWWAMERICANCRAFTSMANWIN.COM"; "WWWAMERICANCURVES.COM";

27  "WWWAMERICANFUND.COM"; "WWWAMERICANFUNDS.COM";

28  "WWWAMERICANGREEETING.COM"; "WWWAMERICANHEARTASSO

COMPLAINT                              18

1 CIATION.COM"; "WWWAMERICANHOMEPARTNERS.COM";

2 "WWWAMERICANMEADOWS.COM"; "WWWAMERICANTRANSAIR.COM";

3 "WWWAMERICASFIRSTHOME.NET"; "WWWAMERIJET.COM";

4 "WWWAMIGOSADVENTISTAS.ORG"; "WWWAMIN.ORG"; "WWWAMITI.COM";

5 "WWWAMORPOSTALES.COM"; "WWWAMOUR.COM";

6 "WWWAMROKHALED.COM"; "WWWAMTRACT.COM";

7 "WWWAMWAYINDIA.COM", "WWWANALOG.COM"; "WWWAND.COM";

8 "WWWANGELPIN.NET"; "WWWANGONOTICIAS.COM".

9     86.    Google includes millions of parked domains and error pages that have little to

10 no content, and that result in practically zero conversions, in both its Content Network and its

11 Search Network.

12     87.    Given the illegality and/or low quality of these parked domain and error page

13 sites, Plaintiff and the Class would not agree to spend their advertising budgets on these

14 distribution networks. However, Google designed its network in such a way that it was

15 impossible to opt out of the AdSense for Domains and/or AdSense for Errors programs.

16     88.    Even after providing limited ability to opt-out of the AdSense for Domains and

17 AdSense for Errors programs, Google still continues to conceal from the Plaintiff and the Class

18 that those networks contain millions of illegal sites that infringe trademark, copyrights and

19 intellectual property laws.

20     89.    Google's practice of including parked domains within the Search Network is

21 misleading, since no actual searches are performed on these pages. Likewise, Google's practice

22 of including parked domains and error pages within the Content Network is also misleading,

23 since most of these sites include little or no content.

24     90.    Google violates its promise and duty to not place ads in pernicious spyware

25 programs. Google has done just that, and has charged AdWords advertisers for every click made

26 on spyware pop-up ads.

27

28

COMPLAINT                           19

91.     Google also represented that its advertisement would be "highly targeted." When, in fact, Google enters into syndication agreements with companies that show random ads that are the opposite of "highly targeted."

92.     Google has otherwise acted unfairly, in bad faith, and in a manner that is directly contrary to the interests of AdWords advertisers, and in its own pecuniary interest, in discharging its duties and obligations to AdWords advertisers.

**H.     Contextual Targeting Technology**

93.     Google promises AdWords advertisers that it has sophisticated "Contextual Targeting Tehchnology" that: "(c)an automatically match your ads to webpages in our content network that are most relevant to your business.  For example, an ad for a digital camera may show up next to an article reviewing the latest digital cameras."
https://adwords.google.com/select/Login.

94.     Google provides the following explanation and example of how "contextual targeting" technology is used to maximize an AdWords ad placement:

Google continually scans the millions of pages from the content network to look for relevant matches with your keywords and other campaign data. When we find a match, your ad becomes eligible to run on that page.  Google's extensive web search and linguistic processing technology can decipher the meaning of virtually any content network page to ensure we're showing the most relevant ads.

Consider the following example:



If you have a page about Java the coffee, our technology knows that it's not about Java the programming language. And you get ads about coffee.

Here's another example of an AdWords ad on a content network page:



I.    **Google Site Exclusion Tool**

95.    Until March 2008, Google's "Site Exclusion Tool" only allowed an advertiser to exclude an advertising campaign from: (1) specific websites, (2) the entire "Search Network," and/or (3) the entire "Content Network." It could not categorically exclude "parked" AdSense for Domains and/or AdSense for Errors pages. Rather, in order to avoid placement on illegal and/or low quality sites, an advertiser would have to entirely opt-out of <u>both</u> the Search Network and the Content Network. But, doing so would also prevent its ads from being displayed on the websites of any of Google's high-quality partners, such as AOL and The New York Times.

96.    On March 6, 2008, Google posted a message on its AdWords blog announcing a change to its exclusion policy.

97.    After this change in Google's policy, by clicking on a well-hidden "page types" tab within the tool, AdWords advertisers can now see summarized click data for "Error Pages" and "Parked Domains," and for the first time, exclude their ads from appearing on these sites. However, instead of including this option on the main settings page for each campaign, Google placed this opt-out button four (4) clicks deep within its interface, where many advertisers would not notice it.

COMPLAINT                            21

1    98.    The site exclusion tool still does not provide a mechanism by which AdWords

2    advertisers can "exclude" illegal sites from a campaign, such as those that infringe trademarks,

3    copyrights, and other intellectual property laws.

4    99.    The site exclusion tool still does not provide a mechanism by which AdWords

5    advertisers can "exclude" sites and pages that fail to meet Google's published guidelines,

6    policies, and procedures (i.e., gambling sites, pornography sites, etc.).

7    **J.    Performance Reporting**

8    100.    On Google's AdWords promotional/marketing pages, which are shown to

9    prospective customers prior to signing up for AdWords, Google states the following under

10    "Reach More Customers":

11        Measure and optimize your results With the Placement Performance Report, you have

12        visibility into where all your ads appear. Review your ad's performance on a site-by-site

13        basis to see impression, click, cost, and conversion data, and use this data to identify

14        well-performing sites to target more aggressively and low-value placements that require

15        content optimization or exclusion.

16    https://adwords.google.com/select/Login

17    101.    Google's Placement Performance Reports provide limited information only on

18    sites included in Google's Content Network. No such reports have ever been available for

19    Google's Search Network.

20    102.    Google does not automatically provide these reports to its AdWords customers.

21    Rather, the reports are generated only for AdWords advertisers that locate the appropriate page

22    on Google's website and have the report generated.

23    103.    In June 2007, Google first began offering limited data on the placement of

24    AdWords ads on parked and error pages. However, until May 2008, the reports did not provide a

25    specific (site-by-site) list of the parked and error pages where an ad appeared, rather the report

26    simply aggregated the data into two lump-sum line items, called "Domain ads" and "Error page

27    ads."

28

COMPLAINT                              22

104.   At no time prior to June 12, 2007, did Google ever disclose to AdWords advertisers that low-quality parked domain and error pages were included in both its Content and Search Networks.

105.   Without a site-by-site listing of which parked domains and error pages their ad was placed on, advertisers could not adjust their advertising budgets on these sites. Nor could they exclude some or all parked domains and error pages from receiving ad placement. By aggregating this information, Google effectively prohibited advertisers from utilizing means of opting out of domain or error page ads using the AdWords interface.

106.   In response to complaints by advertisers, on May 2, 2008, Google posted a message titled "Where did I park?" on its AdWords Agency Blog announcing that it had finally changed the policy and was providing site-by site data for parked domains.

107.   Katharine Allan of Google's Agency Team wrote: "We recently added a new level of detail to Placement Performance reports to answer this question. Placement Performance reports give site-by-site performance metrics for the sites where your ads appeared within Google's content network. Now, rather than seeing one consolidated entry for all parked domains in your reports, you'll see separate rows displaying performance statistics for individual parked domains."

108.   Prior to May 2, 2008, Google completely failed to disclose domain names, IP addresses, and associated performance data of parked domain and error pages included in its Content Network. Google has never, and still does not disclose this data for parked domain and error pages included in its Search Network.

109.   Google's conduct, as alleged herein, has injured the general public and contravene well-established public policy.

110.   Google's conduct, as alleged herein, has distorted the Internet search system for public Internet users and has made it more difficult and time-consuming for Internet users to locate legitimate websites on the Internet, as they are repeatedly diverted through parked advertising pages that simply provide Google with "click" revenue.

COMPLAINT                          23

111.   As a direct and proximate result of Defendant's conduct alleged herein, Plaintiff and the Class were and continue to be unlawfully charged for services that Defendant did not provide or that Plaintiffs and the Class did not agree to pay for.

112.   As a direct and proximate result of Defendant's conduct alleged herein, Plaintiff and the Class were and continue to be charged grossly inflated amounts for advertising through the AdWords program.

113.   As a direct and proximate result of the inclusion of illegal and low-quality sites in the Google Network, Pulaski and the Class paid more for advertising and the cost of participation in the AdWords program.

114.   As a direct and proximate result of Defendant's conduct alleged herein, Pulaskiand the Class have otherwise suffered injury and damage to their business and property.

## CLASS ALLEGATIONS

115.   Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(c) and (b)(3) on behalf of himself and the following Class ("the Class"):

> All persons or entities located within the United States who, within four years preceding the filing of this Complaint, contracted for and participated in Google's AdWords program.

116.   Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.

117.   Also excluded from the Class are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

118.   Upon information and belief, Plaintiff alleges that the total number of Class members is at least in the hundreds of thousands and that the members of the Class are geographically dispersed across the United States.  Consequently, joinder of the individual Class members would be impracticable.

119.   There are many questions of law and fact common to the representative Plaintiff and the proposed Class, and those questions substantially predominate over any

COMPLAINT                          24

individualized questions that may affect individual Class members.  Common questions of fact and law include, but are not limited to, the following:

- Whether Google's representations regarding AdWords were false or misleading;

- Whether Google's breached its Contracts with Plaintiff and the Class;

- Whether Google, in violation of applicable law and its own stated policy, charged Plaintiff and the members of the Class for ads that were placed on parked domain and error page websites;

- Whether Google engaged in unfair, unlawful and/or deceptive business practices;

- Whether Google failed to disclose material facts about its AdWords program; and

- Whether or not Plaintiff and the members of the Class have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relief that should be provided.

120.    Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all Class members have been similarly affected by Defendant's common course of conduct.

121.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex and Class action litigation.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class.  Neither Plaintiff nor his counsel has any interests adverse to those of the proposed Class.

122.    Plaintiff and the members of the Class have suffered, and will continue to suffer, as a result of Defendant's unlawful and wrongful conduct.  A Class action is superior to other available methods for the fair and efficient adjudication of the present controversy, because joinder of all members of the Class would be impractical.

123.    Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation would cause delay and undue expense to all parties affected by Defendant's common course of conduct.

COMPLAINT                              25

1    124.    The Class action device will allow a single court to provide the benefits of

2    unitary adjudication, judicial economy, and the fair and equitable handling of all Class members'

3    claims in a single forum.  The maintenance of this action as a Class action will conserve the

4    resources of the parties and of the judicial system, and will protect the rights of the Class

5    members.

6    125.    Furthermore, for many, if not most, Class members, a Class action is the only

7    feasible mechanism for legal redress for the harm alleged.

8    126.    Adjudication of individual Class members' claims against the Defendant would,

9    as a practical matter, be dispositive of the interests of other Class members not parties to the

10   adjudication and could substantially impair or impede the ability of other Class members to

11   protect their interests.

## FIRST CLAIM OF RELIEF
### (Breach of Contract)

14   127.    Plaintiff realleges the preceding paragraphs as if fully set forth herein.

15   128.    Plaintiff and the class have standing to pursue this claim as Plaintiff and the

16   Class have suffered injury in fact and has lost money or property as a result of Google's actions

17   as set forth above.

18   129.    Plaintiff and Class members entered into the AdWords Contract and the Google

19   Universal Contract with Defendant Google.  Plaintiff and Class member have performed all of

20   their obligations under said contracts.

21   130.    In breach of said Contracts, Google: (1) placed advertisements, and charged

22   Plaintiff and Class members for associated clicks, on its AdSense for Domains and AdSense for

23   Errors sites; (2) placed Plaintiff's and Class members' advertisements, and charged Plaintiff and

24   Class members for associated clicks, on domains/sites that infringe upon Plaintiff's and Class

25   members' own trademarks; (3) placed advertisements, and charged Plaintiff and Class members

26   for associated clicks, on domains/sites that violate trademark, copyright and intellectual property

27   law, (4) overcharged Plaintiff and Class members for advertisements displayed through the

28   AdWords program, and (5) charged Plaintiff and Class members for services they did not agree

to pay for by hiding such charges for clicks on low-quality sites, illegal sites, or sites that violate

COMPLAINT                                    26

Google's publicly disseminated written policies, procedures and guidelines (i.e, gambling sites, pornography sites, etc.)

131.    Google knowingly and intentionally violates United States and international trademark, copyright, and intellectual property laws, for its own commercial gain, in the course of administering its AdWords program.

132.    Google actively conceals its illegal conduct from Plaintiff and the putative Class.

133.    As a direct and proximate result of Google's breach of contract as set forth above Plaintiff and Class members have been damaged.

## SECOND CLAIM FOR RELIEF

### (Breach of Covenant of Good Faith and Fair Dealing)

134.    Plaintiff realleges the preceding paragraphs as if fully set forth herein, and to the extent necessary is plead in the alternative.

135.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Google's actions as set forth above.

136.    Class members have suffered injury in fact and have lost money or property as a result of Google's actions as set forth above.

137.    Google had a duty to act in good faith and deal fairly with Plaintiff and the Class in connection with said contracts and its obligations in administering the AdWords program.

138.    Google breached its duty of good faith and fair dealing to Plaintiff and the Class through its actions as alleged herein.

139.    As a direct and proximate result of Googles' breach of the covenant of good faith and fair dealing as set forth above Plaintiff and Class members have been damaged.

COMPLAINT                                    27

# THIRD CLAIM FOR RELIEF

### (Violation of California Business & Professions Code
### Section 17200 Et Seq. -Unfair Conduct)

140.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

141.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Google's actions as set forth above.

142.    Class members have suffered injury in fact and have lost money or property as a result of Google's actions as set forth above

143.    Google's actions as alleged in this complaint constitute "unfair" conduct within the meaning of California Business and Professions Code sections 17200 *et seq.*

144.    Google's business practices, as alleged herein, are "unfair" because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.  Google's conduct is "unfair" because Google fails to disclose that customers' ads are placed on parked domain and error page sites, and Google does not provide an effective means for customers to exclude their ads from appearing on these sites. In fact, until March 2008, Google provided no means at all for customers to exclude their ads from appearing on these sites.

145.    As a result of Google's "unfair" conduct, Plaintiff and members of the Class expended money on advertising that they would not otherwise have spent, and received less value for their advertising dollars than they should have received.

146.    As a result of Google's "unfair" conduct, Plaintiff and members of the Class have unknowingly been charged and paid for advertising on sites that actually infringe upon the Class members' own trademarks.

147.    Google's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since Google continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

COMPLAINT                                28

148.    Pursuant to Cal. Bus. & Prof. Code §17203, Plaintiff and the Class seek an order of this court enjoining Google from continuing to engage in unlawful, unfair, and/or deceptive business practices and any other act prohibited by law, including those acts set forth in this complaint.

149.    Plaintiff and the Class also seek an order requiring Google to make full restitution of all moneys it has wrongfully obtained from Plaintiff and the Class, along with all other relief allowable under Cal. Bus. & Prof. Code §17200 *et seq.*

## FOURTH CLAIM FOR RELIEF

### (Violation of California Business & Professions Code Section 17200 Et Seq.-Fraudulent Conduct)

150.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

151.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Google's actions as set forth above.

152.    Class members have suffered injury in fact and have lost money or property as a result of Google's actions as set forth above.

153.    Google's actions as alleged in this complaint constitute "fraudulent" conduct within the meaning of California Business and Professions Code §17200 *et seq.*

154.    Google's business practices, as alleged herein, are "fraudulent" because they are likely to deceive consumers, including Plaintiff and members of the Class. Google fails to disclose all material information to AdWords advertisers concerning the types of sites on which their ads will be displayed, and affirmatively conceals the fact that low-quality parked domains and error pages are included in both its Content Network and its Search Network. Google failed to disclose Class members advertisements would also appear on deceptive domains that would violate the Class members own trademarks resulting in them paying for "advertising" to receive traffic from a user who intended to reach the Class member.  Google failed to disclose to advertisers, including Plaintiff and the Class, that, until March 2008, they would have no way to exclude their ads from appearing on these sites. Google continues to fail to provide an effective

COMPLAINT                           29

1   and adequate method of excluding ads from these sites, or to adequately disclose that any method

2   of excluding ads from these sites exists at all.

3        155.    As a result of Google's "fraudulent" conduct, Plaintiff and members of the Class

4   expended money on advertising that they would not otherwise have spent, and received less

5   value for their advertising dollars than they should have received.

6        156.    Google's wrongful business practices alleged herein constituted, and continue to

7   constitute, a continuing course of unfair competition since Google continues to market and sell

8   its products in a manner that is likely to deceive customers.

9        157.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and the Class seek an

10  order of this court enjoining Google from continuing to engage in "fraudulent" business practices

11  and any other act prohibited by law, including those acts set forth in this complaint.

12       158.    Plaintiff and the Class also seek an order requiring Google to make full

13  restitution of all moneys it has wrongfully obtained from Plaintiff and the Class, along with all

14  other relief allowable under Cal. Bus. & Prof. Code §17200 *et seq.*

15                          **FIFTH CLAIM FOR RELIEF**

16                  **(Violation of California Business & Professions**
17                  **Code § 17200 Et Seq.-Unlawful Conduct)**

18       159.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to

19  the extent necessary, pleads this cause of action in the alternative.

20       160.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact

21  and has lost money or property as a result of Google's actions as set forth above.

22       161.    Class members have suffered injury in fact and have lost money or property as

23  a result of Google's actions as set forth above.

24       162.    Google's actions as alleged in this complaint constitute an "unlawful" practice

25  within the meaning of California Business and Professions Code §17200 *et seq.* because

26  Google's actions are "unfair" and "fraudulent," as alleged above, and because they violate

27  California Business and Professions Code §17500 *et seq.,* which proscribe false advertising, as

28  alleged below.

COMPLAINT                              30

163.    As a result of Google's "unlawful" conduct, Plaintiff and members of the Class expended money on advertising that they would not otherwise have spent, and received less value for their advertising dollars than they would have received.

164.    Pursuant to Cal. Bus. & Prof. Code section 17203, Plaintiff and the Class seek an order of this court enjoining Google from continuing to engage in unlawful business practices, including those acts set forth in this complaint.

165.    Plaintiff and the Class also seek an order requiring Google to make full restitution of all moneys it has wrongfully obtained from Plaintiff and the Class, along with all other relief allowable under Cal. Bus. & Prof. Code §17200 *et seq.*

## SIXTH CLAIM FOR RELIEF

### (Violation of California Business & Professions Code § 17500 Et Seq.)

166.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

167.    Google engaged in advertising and marketing to the public and offered for sale advertising services on a nationwide basis, including in California.

168.    Google engaged in the advertising and marketing alleged herein with intent to directly or indirectly induce the sale of advertising services to customers like Plaintiff.

169.    Google's advertisements and marketing representations regarding the characteristics of AdWords and the placement of its customers' ads were false, misleading and deceptive as set forth more fully above.

170.    At the time it made and disseminated the statements alleged herein, Google knew or should have known that the statements were untrue or misleading, and acted in violation of Cal. Bus. & Prof. Code §17500 *et seq.*

171.    Plaintiff seeks restitution, injunctive relief, and all other relief allowable under Cal. Bus. & Prof. Code §17500 *et seq.*

COMPLAINT                                              31

1

## SEVENTH CLAIM FOR RELIEF

2

### (Unjust Enrichment)

3      172.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to

4 the extent necessary, pleads this cause of action in the alternative.

5      173.    Through the actions described above, Google has received money belonging to

6 Plaintiff and the Class through fees collected from ads placed on parked domains and error

7 websites, even though reasonable customers would have believed that they were not paying for

8 and would not be charged for ads placed on such websites.

9      174.    Google has also reaped substantial profit by collecting and retaining revenue

10 from Plaintiff and the Class generated through clicks generated through ads that were displayed

11 on such websites.

12      175.    Google has received money belonging to Plaintiff and the Class resulting from

13 clicks on these ads.

14      176.    As a direct and proximate result of Google's misconduct as set forth above,

15 Google has been unjustly enriched.

16      177.    Google should not be permitted to keep sums that Google has unjustly received

17 as a result of its actions.

18

## PRAYER FOR RELIEF

19      WHEREFORE, Plaintiff, Adam Pulaski and the Class pray for relief as follows:

20      a.      That the Court determine that the claims alleged herein may be maintained as a

21 class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure;

22      b.      That the Court adjudge and decree that the Defendant has engaged in the conduct

23 alleged herein;

24      c.      That the defendant be permanently enjoined and restrained from, in any manner,

25 directly or indirectly, continuing, maintaining, or engaging in the unfair, unlawful, and/or

26 deceptive practices alleged herein;

27      d.      That plaintiff and the class members be awarded restitution, including

28 disgorgement of profits obtained by defendant as a result of their acts of unfair, unlawful or

COMPLAINT                    32

1  deceptive practices and acts of unjust enrichment and breach of the covenant of good faith and

2  fair dealing;

3      e.    That the plaintiff and class members be awarded compensatory damages and/or

4  all other available monetary and equitable remedies for the breach of contract claims identified

5  above;

6      f.    That plaintiff and the class members be awarded both pre-and post-judgment

7  interest at the maximum allowable rate on any amounts awarded;

8      g.    That plaintiff and the class members recover their costs of suit, including

9  reasonable attorneys' fees as provided by law;

10      h.    That plaintiff and the class members be awarded such other and further relief as

11  may be necessary and appropriate.

## JURY DEMAND

13      Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Constitution of the

14  United States, Plaintiff and the Class members demand a trial by jury for all issues so triable.

17  Dated: August 14, 2008

GUIDO SAVERI (022349)
R. ALEXANDER SAVERI (SBN 173102)
CADIO ZIRPOLI (SBN 179108)
SAVERI & SAVERI, INC.
111 Pine Street, Suite 1700
San Francisco, CA 94111-5619
Telephone: (415) 217-6810

TERRY GROSS (103878)
ADAM C. BELSKY (147800)
MONIQUE ALONSO (127078)
GROSS BELSKY ALONSO LLP
180 Montgomery Street, Suite 2200
San Francisco, CA 94104
Telephone: (415) 544-0200

Counsel for Pulaski & Middleman, LLC

COMPLAINT                              33

# EXHIBIT 5



Leo P. Norton                                          VIA EMAIL & MAIL
(858) 550-6083
lnorton@cooley.com

August 25, 2008

Guido Saveri (guido@saveri.com)                Terry Gross (terry@gba-law.com)
R. Alexander Saveri (rick@saveri.com)          Adam C. Belsky (adam@gba-law.com)
Cadio Zirpoli (cadio@saveri.com)               Monique Alonso (monique@gba-law.com)
Saveri & Saveri Inc.                           Gross & Belsky Alonso LLP
111 Pine Street, Suite 1700                    180 Montgomery Street
San Francisco, CA 94111                        Suite 2200
                                               San Francisco, CA 94104

Brian S. Kabateck (bsk@kbklawyers.com)         Erik Swen Syverson
Richard L. Kellner (rlk@kbklawyers.com)        (eriksyverson@gmail.com)
Alfredo Torrijos (ar@kbklawyers.com)           Pick & Boydston, LLP
Kabateck Brown Kellner, LLP                    1000 Wilshire Boulevard
644 S. Figueroa Street                         Suite 600
Los Angeles, CA 90017                          Los Angeles, CA 90017

Robert C. Schubert
(rschubert@ schubertlawfirm.com)
Willem F. Jonckheer
(wjonckheer@ schubertlawfirm.com)
Kimberly Ann Kralowec
(kkralowec@schubertlawfirm.com)
Schubert Jonckheer Kolbe & Kralowec LLP
Three Embarcadero Center
Suite 1650
San Francisco, CA 94111

**RE: Google AdWords Putative Class Actions Pending in N.D. Cal.**
   *David Almeida v. Google, Inc.*, Case No. C 08-02088-RMW (filed April 22, 2008)
   *Hal K. Levitte v. Google, Inc.*, Case No. C 08-03369-JW (filed July 11, 2008)
   *RK West, Inc. v. Google, Inc.*, Case No. C 08-03452-RMW (filed July 17, 2008)
   *Pulaski & Middleman, LLC v. Google Inc.*, Case No. C 08-03888-SI (filed August 14, 2008)

Dear Counsel:

We are counsel for Google Inc. in the *Levitte*, *RK West*, and *Pulaski & Middleman* cases.[1]  We
write to: (1) notify you that the *Levitte*, *RK West*, and *Pulaski & Middleman* cases are related to
each other and to the earlier-filed *Almeida* case; (2) attempt to reach a stipulation on Google's
intended administrative motion under Civil Local Rules 3-12 and 7-11 to relate the cases; and
(3) request that Google's time to answer or otherwise respond to the *Levitte*, *RK West*, and

---

[1] Keker & Van Nest, LLP is counsel of record for Google in the *Almeida* case.



**Cooley**
GODWARD KRONISH /LLP

Plaintiffs' Counsel in Google AdWords Actions
August 25, 2008
Page Two

*Pulaski & Middleman* complaints be coordinated and an extension of time such that Google's new response deadline in those three cases is on or before September 30, 2008. For your reference, I am enclosing a copy of the four related complaints.

## Related Google AdWords Putative Class Actions

Civil Local Rule 3-12 states that actions are related when "[t]he actions concern substantially the same parties, property, transaction or event" and "[i]t appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." Civil L.R. 3-12(a). The four putative class actions easily satisfy the Court's requirements for related cases.

Google is the sole named defendant in all four putative class actions, and therefore, the cases concern the same defendant. Further, the cases concern substantially the same putative plaintiffs because each case asserts a putative class of Google AdWords customers.

Also, all four putative class actions arise from and relate to the named plaintiffs' and putative class members' contractual relationship with Google for Google's AdWords advertising program. Although the *Almeida* case challenges alleged charges for clicks occurring on the content network when the "CPC input" is left blank, while the *Levitte, RK West*, and *Pulaski* cases challenge alleged charges for clicks for advertisements placed on parked domain or error page websites, each of the cases arise from and involve the same subject matter—Google's AdWords advertising program. All the actions involve and require an understanding of Google's advertising program, Google's contractual relationship with the named plaintiffs and putative class members, AdWords, the AdWords bidding process, the way advertisements are displayed and where they are displayed, and the fees that Google charges and how those fees are charged.

Additionally, all the actions assert claims for alleged unjust enrichment and alleged violation of California Business and Professions code section 17200 arising from the Google AdWords advertising program.

Last, given that the cases concern substantially the same subject matter and involve overlapping putative classes, there is the potential for unduly burdensome duplication of party and judicial labor and expense. Moreover, there is the potential for conflicting results, at a minimum as to class certification, if the cases are not related and if they proceed as presently assigned before three different judges.

## Stipulation on Google's Administrative Motion

As required under Civil Local Rule 3-12(b), Google stands ready to file an administrative motion under Civil Local Rules 3-12 and 7-11 to relate the cases. If the cases are related, all four cases will be reassigned to the same judge, which is the judge in the low-numbered case. Here, the low-numbered case is the *Almeida* case, and the judge assigned to that case is Ronald M. Whyte. Also, the *RK West* case is already assigned to him. The *Levitte* and *Pulaski & Middleman* cases would be reassigned to him if the cases are related.



Plaintiffs' Counsel in Google AdWords Actions
August 25, 2008
Page Three

Under Civil Local Rule 7-11(a), the administrative motion "must be accompanied by a proposed order and by either a stipulation under Civil L.R. 7-12 or by a declaration that explains why a stipulation could not be obtained." Civil L.R. 7-11(a). We ask that you stipulate that the cases are related, which will result in all the cases being assigned to Judge Whyte. The administrative motion does not address the level of coordination or consolidation. That will be addressed later after the cases are reassigned to the same judge.

### Request for Extension of Time to Respond

The *Levitte*, *RK West*, and *Pulaski & Middleman* cases have all recently been served and presently have deadlines to answer or otherwise respond to the complaints staggered throughout the first half of September. We would appreciate the professional courtesy of coordinating the deadline to respond in those three actions, and request an extension of time to respond in those three actions to on or before September 30, 2008. By then, Google's administrative motion to relate the cases will be decided (and the cases reassigned if granted). Under Civil Local Rule 6-1, we can simply stipulate to the extension without Court approval, but we will have to file the stipulation in the three respective actions.

Please contact me by end of day **Wednesday, August 27, 2008** to advise whether your respective plaintiffs will stipulate that the cases are related and whether they will agree to coordinate and extend Google's response deadline to on or before September 30, 2008.

Sincerely,

Leo P. Norton

Enclosures – as stated

cc:    Daralyn J. Durie
       Keker & Van Nest, LLP (w/ enclosures)

600883 v1/SD

# EXHIBIT 6

## Norton, Leo

| | |
|---|---|
| **From:** | Robert C. Schubert [rschubert@schubertlawfirm.com] |
| **Sent:** | Tuesday, August 26, 2008 1:00 PM |
| **To:** | Norton, Leo; Kimberly A. Kralowec; guido@saveri.com; rick@saveri.com; cadio@saveri.com; terry@gba-law.com; adam@gba-law.com; monique@gba-law.com; eriksyverson@gmail.com; bsk@kbklawyers.com; rlk@kbklawyers.com; at@kbklawyers.com; Willem F. Jonckheer |
| **Cc:** | Rhodes, Michael; Willsey, Peter; ddurie@kvn.com |
| **Subject:** | RE: Google AdWords N.D. Cal. Cases - Letter from Cooley to Plaintiffs' Counsel |

The attorneys in the CA cases will be discussing the issues you raise and expect to get back to you by Thursday at the latest.

**From:** Norton, Leo [mailto:lnorton@cooley.com]
**Sent:** Tuesday, August 26, 2008 12:19 PM
**To:** Kimberly A. Kralowec; guido@saveri.com; rick@saveri.com; cadio@saveri.com; terry@gba-law.com; adam@gba-law.com; monique@gba-law.com; eriksyverson@gmail.com; bsk@kbklawyers.com; rlk@kbklawyers.com; at@kbklawyers.com; Robert C. Schubert; Willem F. Jonckheer
**Cc:** Rhodes, Michael; Willsey, Peter; ddurie@kvn.com
**Subject:** RE: Google AdWords N.D. Cal. Cases - Letter from Cooley to Plaintiffs' Counsel

Ms. Kralowec:

Thank you for your prompt response. We are fine with September 3 for plaintiffs' response to our letter regarding relating the cases.

As for coordinating Google's response deadline and requested extension of time, we request that all plaintiffs' agree to coordinate and extend Google's response to September 30. Although we appreciate you agreeing to a further extension of time in your case (the *Levitte* case) until September 10, such an extension does not result in a coordinated response deadline. The deadline to respond in the *Pulaski* case is September 4. Additionally, Google was recently served with another AdWords parked domain and error page websites putative class action. That case is pending in the N.D. Ill., and has a mid-September response date. We are attempting to get plaintiff in that action to voluntarily dismiss and re-file in the N.D. Cal. in light of the California forum selection and choice of law clauses in the advertising program agreement and terms of service agreement and the four earlier filed overlapping and competing putative class actions in the N.D. Cal. If plaintiff there does not agree to do so, we intend to file a motion to dismiss or transfer or an MDL motion to get all the cases in the N.D. Cal. Considering the upcoming holiday, the number of actions that have recently been served to which responses are due staggered throughout September, the unresolved procedural issues regarding relating all the cases in N.D. Cal. before the same judge, including the N.D. Ill. action, our recent involvement, and the lack of impending deadlines in the cases other than *Almeida*, we believe coordinating the remaining responses in all cases to September 30 is reasonable.

I will call you shortly to discuss further.

Sincerely,

**Leo P. Norton**
Cooley Godward Kronish LLP • 4401 Eastgate Mall
San Diego, CA  92121-1909
Direct: 858/550-6083 • Fax: 858/550-6420
Bio: www.cooley.com/lnorton • Practice: www.cooley.com/litigation

**From:** Kimberly A. Kralowec [mailto:KKralowec@schubertlawfirm.com]
**Sent:** Tuesday, August 26, 2008 9:25 AM
**To:** Norton, Leo; guido@saveri.com; rick@saveri.com; cadio@saveri.com; terry@gba-law.com; adam@gba-law.com; monique@gba-law.com; eriksyverson@gmail.com; bsk@kbklawyers.com; rlk@kbklawyers.com; at@kbklawyers.com; Robert C. Schubert; Willem F. Jonckheer
**Cc:** Rhodes, Michael; Willsey, Peter; ddurie@kvn.com
**Subject:** RE: Google AdWords N.D. Cal. Cases – Letter from Cooley to Plaintiffs' Counsel

Dear Mr. Norton:

I write on behalf of plaintiffs' counsel in the four cases mentioned in your letter. We have received your letter and are in the process of analyzing it. We will require an additional week, through September 3, 2008, to respond to your points. To facilitate this, we are willing to agree to an additional week for Google to respond to the complaint in the *Levitte* case. The new deadline would be September 10, 2008. I am informed that the response deadlines in the other two cases are already later than that. Please contact me with any questions or concerns regarding the above.

Sincerely,

Kimberly A. Kralowec, Esq.
Schubert Jonckheer Kolbe & Kralowec LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
Email: kkralowec@schubertlawfirm.com
Web: http://www.schubertlawfirm.com

**From:** Norton, Leo [mailto:lnorton@cooley.com]
**Sent:** Monday, August 25, 2008 11:25 AM
**To:** guido@saveri.com; rick@saveri.com; cadio@saveri.com; terry@gba-law.com; adam@gba-law.com; monique@gba-law.com; eriksyverson@gmail.com; rlk@kbklawyers.com; ar@kbklawyers.com; rschubert@chubertlawfirm.com; Willem F. Jonckheer; Kimberly A. Kralowec
**Cc:** Rhodes, Michael; Willsey, Peter; ddurie@kvn.com
**Subject:** Google AdWords N.D. Cal. Cases – Letter from Cooley to Plaintiffs' Counsel

Dear Counsel:

I am attaching a letter and enclosures also being sent to you today via mail regarding certain administrative matters relating to the Google AdWords cases pending in the Northern District of California. We request your response on two issues. Please respond by end of day on Wednesday, August 27, 2008.

<<GOOGLE Letter to Counsel.pdf>> <<Almeida v. Google.pdf>> <<Levitte v. Google.pdf>> <<RK West, Inc. v. Google.pdf>> <<Pulaski & Middleman v. Google.pdf>>

Please contact me if you have any questions. Thank you.

Sincerely,

**Leo P. Norton**
Cooley Godward Kronish LLP • 4401 Eastgate Mall
San Diego, CA 92121-1909
Direct: 858/550-6083 • Fax: 858/550-6420
Bio: www.cooley.com/lnorton • Practice: www.cooley.com/litigation

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachment) is not intended or written by us to be used, and cannot be used, (i) by any taxpayer for the purpose of avoiding tax penalties under the Internal Revenue Code or (ii) for promoting, marketing or recommending to another party any transaction or matter addressed herein.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachment) is not intended or written by us to be used, and cannot be used, (i) by any taxpayer for the purpose of avoiding tax penalties under the Internal Revenue Code or (ii) for promoting, marketing or recommending to another party any transaction or matter addressed herein.

# EXHIBIT 7

**Norton, Leo**

| | |
|---|---|
| **From:** | Norton, Leo |
| **Sent:** | Tuesday, September 02, 2008 8:11 AM |
| **To:** | 'rschubert@schubertlawfirm.com'; 'KKralowec@schubertlawfirm.com'; 'guido@saveri.com'; 'rick@saveri.com'; 'cadio@saveri.com'; 'terry@gba-law.com'; 'adam@gba-law.com'; 'monique@gba-law.com'; 'eriksyverson@gmail.com'; 'bsk@kbklawyers.com'; 'rlk@kbklawyers.com'; 'at@kbklawyers.com'; 'wjonckheer@schubertlawfirm.com' |
| **Cc:** | Rhodes, Michael; Willsey, Peter; 'ddurie@kvn.com' |
| **Subject:** | Re: Google AdWords N.D. Cal. Cases - Letter from Cooley to Plaintiffs' Counsel |

We did not receive a response on Thursday as stated in the email below, and it has been over a week since we sent our letter. If we do not receive a response by noon today, we will file the administrative motion to relate the N.D. Cal. cases today, and advise the court (as we are required to do under the local rules) that we attempted to reach a stipulation with plaintiffs regarding relating the cases, but plaintiffs failed to respond.

Please also advise whether plaintiffs agree to coordinating and extending Google's deadline to respond to September 30.

Sincerely,

------Original Message------
From: Robert C. Schubert
To: Leo Norton
To: Kimberly A. Kralowec
To: guido@saveri.com
To: rick@saveri.com
To: cadio@saveri.com
To: terry@gba-law.com
To: adam@gba-law.com
To: monique@gba-law.com
To: eriksyverson@gmail.com
To: bsk@kbklawyers.com
To: rlk@kbklawyers.com
To: at@kbklawyers.com
To: Willem F. Jonckheer
Cc: Michael Rhodes
Cc: Willsey, Peter
Cc: ddurie@kvn.com
Sent: Aug 26, 2008 1:00 PM
Subject: RE: Google AdWords N.D. Cal. Cases - Letter from Cooley to Plaintiffs' Counsel

The attorneys in the CA cases will be discussing the issues you raise and expect to get back to you by Thursday at the latest.


From: Norton, Leo [mailto:lnorton@cooley.com]
Sent: Tuesday, August 26, 2008 12:19 PM
To: Kimberly A. Kralowec; guido@saveri.com; rick@saveri.com; cadio@saveri.com; terry@gba-law.com; adam@gba-law.com; monique@gba-law.com; eriksyverson@gmail.com; bsk@kbklawyers.com; rlk@kbklawyers.com; at@kbklawyers.com; Robert C. Schubert; Willem F. Jonckheer
Cc: Rhodes, Michael; Willsey, Peter; ddurie@kvn.com
Subject: RE: Google AdWords N.D. Cal. Cases - Letter from Cooley to Plaintiffs' Counsel


Ms. Kralowec:

Thank you for your prompt response.  We are fine with September 3 for plaintiffs' response to our letter regarding relating the cases.


As for coordinating Google's response deadline and requested extension of time, we request that all plaintiffs' agree to coordinate and extend Google's response to September 30. Although we appreciate you agreeing to a further extension of time in your case (the Levitte case) until September 10, such an extension does not result in a coordinated response deadline.  The deadline to respond in the Pulaski case is September 4. Additionally, Google was recently served with another AdWords parked domain and error page websites putative class action.  That case is pending in the N.D. Ill., and has a mid-September response date.  We are attempting to get plaintiff in that action to voluntarily dismiss

------Original Message Truncated------

--------------------------
Leo P. Norton
Cooley Godward Kronish LLP
4401 Eastgate Mall
San Diego, CA   92121-1909
Direct: 858-550-6083 Fax: 858-550-6420
Bio: www.cooley.com/lnorton   Practice: www.cooley.com/litigation

# EXHIBIT 8

1   COOLEY GODWARD KRONISH LLP
    MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2   LEO P. NORTON (216282) (lnorton@cooley.com)
    4401 Eastgate Mall
3   San Diego, CA  92121
    Telephone:    (858) 550-6000
4   Facsimile:    (858) 550-6420

5   Attorneys for Defendant
    GOOGLE INC.

6

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11

12  RK WEST, INC., a California corporation        Case No.  08-CV-03452 RMW RS
    d/b/a/ Malibu Wholesale, individually and on
13  Behalf of All Others Similarly Situated,       **OPPOSITION TO**
                                                   **ADMINISTRATIVE MOTION TO**
14                  Plaintiff,                     **CONSIDER WHETHER CASES**
                                                   **SHOULD BE RELATED PURSUANT**
15          v.                                     **TO CIVIL LOCAL RULE 3-12**

16  GOOGLE, INC., a Delaware corporation; and
    DOES 1 through 10, inclusive,
17
                    Defendants.
18

19

20

21

22

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

OPP. TO ADMIN. MOTION TO CONSIDER
WHETHER CASES SHOULD BE RELATED
08-CV-03452 RMW RS

## I. INTRODUCTION

Defendant Google Inc. ("Google") opposes the administrative motion filed by Plaintiff RK West, Inc. ("RK West"), which represents nothing more than a preemptive strike against Google's previously announced administrative motion to relate four cases pending in this district regarding Google's AdWords advertising program, which Google concurrently filed with this opposition in the case *David Almeida v. Google, Inc.*, Case No. C 08-02088-RMW. RK West's motion highlights the erosion of cooperation that has become all too common in putative class action cases. On August 25, 2008, four days before RK West filed its motion in this case, Google wrote all plaintiffs' counsel and notified them that Google stood ready to file an administrative motion to relate four cases, provided copies of the four complaints, and requested that the plaintiffs stipulate, as Google was required to do under Civil Local Rule 7-11 before filing the motion, that the cases were related. Without the courtesy of responding to Google's letter even after obtaining a one-week extension to do so, RK West filed its own administrative motion on August 29, 2008 seeking to relate three of the four cases that Google notified RK West that it intended to relate. Because RK West neglected to deliver the motion on the same day it was filed as required, and instead served it by mail, Google did not learn of RK West's improper tactical maneuver until the late morning of September 2, 2008. Not surprisingly, considering RK West's haste to preemptively file its administrative motion before Google, RK West's motion suffers from numerous procedural and substantive defects. Consequently, it should be denied.

## II. BACKGROUND AND RK WEST'S QUESTIONABLE CONDUCT IN FILING ITS MOTION

There are four cases presently pending against Google in this district relating to Google's AdWords advertising program that are related and that should be reassigned for coordinated or consolidated proceedings before the same judge. Those cases are:

- *David Almeida v. Google, Inc.*, Case No. C 08-02088-RMW ("*Almeida* case");
- *Hal K. Levitte v. Google, Inc.*, Case No. C 08-03369-JW ("*Levitte* case");
- *RK West, Inc. v. Google, Inc.*, Case No. C 08-03452-RMW ("*RK West* case"); and
- *Pulaski & Middleman, LLC v. Google Inc.*, Case No. C 08-03888-SI ("*Pulaski* case").[1]

---

[1] A copy of the *Almeida* case Complaint is attached as Exhibit 1 to the Declaration of Leo P.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

1.

OPP. TO ADMIN. MOTION TO CONSIDER
WHETHER CASES SHOULD BE RELATED
08-CV-03452 RMW RS

1    On August 25, 2008, Google's counsel sent all plaintiffs' counsel a meet and confer letter

2    that: (1) notified all plaintiffs that Google was prepared to file an administrative motion under

3    Civil Local Rules 3-12 and 7-11 in the *Almeida* case; (2) provided all plaintiffs with copies of the

4    complaints and the reasons why the cases were related; (3) attempted to reach a stipulation that

5    the four cases are related as required under Civil Local Rule 7-11; and (4) requested that Google's

6    deadline to respond to the *Levitte*, *RK West*, and *Pulaski* complaints be coordinated and extended

7    until September 30, 2008.  Norton Declaration, ¶ 3 & Exhibit 2.  Plaintiff's counsel in the *Levitte*

8    case, purportedly on behalf of all plaintiffs, requested a one-week extension to respond to

9    September 3, 2008, and later stated they would respond by August 28, 2008.  Norton Declaration,

10   ¶ 4 & Exhibit 3.  Having not yet received a response as of the morning of September 2, 2008,

11   Google's counsel demanded a response by the end of the day.  Norton Declaration, ¶ 5 & Exhibit

12   4.  Later that morning, Google's counsel received by mail RK West's administrative motion.

13   Norton Declaration, ¶ 7.  As of the filing of this opposition, RK West has not responded to any

14   aspect of Google's letter dated August 25, 2008, including Google's request for a consolidated

15   response date.  Norton Declaration, ¶ 6.  Google has received responses from the plaintiffs in the

16   *Levitte* and *Pulaski* cases, each taking the position that the *Almeida* case is not related but still

17   stipulating to Google's request for a consolidated response deadline of September 30, 2008.

18   Norton Declaration, ¶ 6.

19   **III.  RK WEST'S ADMINISTRATIVE MOTION SHOULD BE DENIED BECAUSE IT IS
         PROCEDURALLY IMPROPER**

20

21   RK West's motion should be denied on four independent procedural grounds: (1) RK

22   West filed it in the wrong case; (2) RK West failed to deliver it to Google the same day it was

23   filed; (3) RK West failed to meet and confer in an effort to obtain a stipulation; and (4) it is

24   procedurally unnecessary in light of Google's administrative motion to relate all four Google

25   AdWords advertising program putative class actions pending in this district.

26   ───────────────────────────────

27   Norton in Support of Opposition.  A copy of the *Levitte* case Complaint is attached as Exhibit C
     to RK West's administrative motion.  A copy of the *RK West* case Complaint is attached as
     Exhibit A to RK West's administrative motion.  A copy of the *Pulaski* case complaint is attached
28   as Exhibit B to RK West's administrative motion.

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

2.    OPP. TO ADMIN. MOTION TO CONSIDER
      WHETHER CASES SHOULD BE RELATED
      08-CV-03452 RMW RS

### A. RK West Filed Its Administrative Motion in the Wrong Case.

Under Civil Local Rule 3-12(b), an administrative motion to relate cases must be filed in the low-numbered case. Civil L.R. 3-12(b). The *RK West* case plaintiff's administrative motion attempts to relate the following three cases:

- *Hal K. Levitte v. Google, Inc.*, Case No. C 08-03369-JW;

- *RK West, Inc. v. Google, Inc.*, Case No. C 08-03452-RMW; and

- *Pulaski & Middleman, LLC v. Google Inc.*, Case No. C 08-03888-SI.

The low-numbered case in this instance is the *Levitte* case, not the *RK West* case, and therefore RK West's administrative motion in this case was not properly filed and should be denied.

### B. RK West Failed To Deliver Its Administrative Motion to Google on the Same Day It Filed It As Required.

Civil Local Rule 3-12(b) requires compliance with Civil Local Rule 7-11's requirements for Administrative Motions, and requires service on all known parties in the cases sought to be related. Civil L.R. 3-12(b). Civil Local Rule 7-11 requires that the "moving party must deliver the motion and all attachments to all other parties on the same day as the motion is filed." Civil L.R. 7-11(a). RK West failed to satisfy this requirement.

RK West filed its administrative motion on Friday, August 29, 2008. Document No. 10. Google did not receive the motion until Tuesday, September 2, 2008 because RK West served the motion and supporting documents by priority U.S. Mail, rather than delivering them on the same day as filed as required. Norton Declaration, ¶ 7. RK West's administrative motion should be denied for failure to adhere to Civil Local Rule 7-11.

### C. RK West Failed To Engage in Any Attempt to Obtain a Stipulation from Google as Required.

Civil Local Rule 7-11(a) mandates that the moving party attempt to obtain a stipulation under Civil Local Rule 7-12 or submit a declaration that explains why a stipulation could not be obtained. Civil L.R. 7-11(a). RK West never communicated with Google regarding its administrative motion, nor did RK West ever respond to Google's attempt to obtain a stipulation on Google's administrative motion. Instead, RK West filed its administrative motion without

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

3.

OPP. TO ADMIN. MOTION TO CONSIDER
WHETHER CASES SHOULD BE RELATED
08-CV-03452 RMW RS

1   warning and knowing full well that Google stood ready to file its administrative motion but was

2   waiting for a response from all plaintiffs' counsel before doing so.  RK West should not be

3   permitted to ignore the Local Rules.  Having failed to adhere to Civil Local Rule 7-11(a), RK

4   West's administrative motion should be denied.

5           **D.      RK West's Administrative Motion Is Procedurally Unnecessary Because of
                Google's Administrative Motion Filed in the *Almeida* Case.**

6

7           Google filed its own administrative motion to relate the *Almeida*, *Levitte*, *RK West*, and

8   *Pulaski* cases.    Because the *Almeida* case is the low-numbered case, Google filed its

9   administrative motion in that action.  Norton Declaration, ¶ 8.  Google's motion renders RK

10  West's motion unnecessary because Civil Local Rules 3-12 provides an opportunity for a party in

11  RK West's position to contend that some, but less than all, of the cases subject to an

12  administrative motion are related.

13          Civil Local Rule 3-12(e) allows a non-moving party to file a response to an administrative

14  motion, and specifically provides that if "a party contends that not all of the cases are related, the

15  party must address whether any of the cases are related to one another."  Civil L.R. 3-12(e).

16  Moreover, Civil Local Rule 3-12(f) provides that if the judge assigned to the low-numbered case

17  (here, the *Almeida* case) decides that the cases are not related, the Clerk shall submit the order to

18  the judges assigned to the other cases, in the order those cases were filed, to decide whether any

19  of those cases are related.  Civil L.R. 3-12(f)(2)-(3).

20          Rather than rushing to file its own preemptive administrative motion, the proper way for

21  RK West to attempt to relate only the *Levitte*, *RK West*, and *Pulaski* cases would have been to

22  oppose Google's administrative motion filed in the *Almeida* case, and request that the Court relate

23  the *Levitte*, *RK West*, and *Pulaski* cases, but not the *Almeida* case.  If the *Almeida* case judge

24  denied the administrative motion, the judge in the *Levitte* case (Judge James Ware) could have

25  related the *Levitte*, *RK West*, and *Pulaski* cases, which all parties in all cases agree at a minimum

26  are related.  RK West's failure to do so has resulted in needless duplicative administrative

27  motions and the attendant expense of multiple filings in different cases.  Moreover, in its rush to

28  beat Google to the punch, RK West stumbled over numerous procedural requirements, including

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

4.

OPP. TO ADMIN. MOTION TO CONSIDER
WHETHER CASES SHOULD BE RELATED
08-CV-03452 RMW RS

1   filing its motion in the wrong case, without properly serving it, and without meeting and

2   conferring.  This attempt to circumvent the Civil Local Rules and take advantage of Google's

3   efforts to meet and confer on the related case issue should be rejected.

4   **IV.   RK WEST'S ADMINISTRATIVE MOTION SHOULD BE DENIED BECAUSE IT DOES NOT**
5   **INCLUDE THE *ALMEIDA* CASE WHICH IS ALSO RELATED AND WHICH IS THE LOW-**
    **NUMBERED CASE**

6       RK West's administrative motion also fails substantively because it rests on the theory

7   that the *Almeida* case is not related.  RK West is wrong.  The *Almeida* case, like the *Levitte*, *RK*

8   *West*, and *Pulaski* cases, asserts claims against Google based on alleged issues with Google's

9   AdWords advertising program.   The claims are based on the same legal theories—unjust

10  enrichment and California Business and Professions Code section 17200.   Further, the cases

11  involve overlapping putative class of Google AdWords customers.  The only difference between

12  the cases is the aspect of the AdWords advertising program being challenged.  But that difference

13  is insubstantial, and does not avoid the potential for unduly burdensome duplication of labor and

14  expense in document and deposition discovery directed at Google's AdWords advertising

15  program and the contracts that govern that program or conflicting results regarding at a minimum

16  class certification.

17  **V.   CONCLUSION**

18      RK West's administrative motion should be denied because it suffers from numerous

19  procedural and substantive defects as set forth above.

20  Dated: September 4, 2008                COOLEY GODWARD KRONISH LLP
                                            MICHAEL G. RHODES (116127)
21                                          LEO P. NORTON (216282)

22

23                                          By:              /s/Leo P. Norton
                                                         Leo P. Norton
24
                                            Attorneys for Defendant GOOGLE INC.
25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

5.   **OPP. TO ADMIN. MOTION TO CONSIDER
WHETHER CASES SHOULD BE RELATED
08-CV-03452 RMW RS**

1

## CERTIFICATE OF SERVICE

2   I hereby certify that on September 4, 2008, I electronically filed the foregoing **OPPOSITION TO ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED PURSUANT TO CIVIL LOCAL RULE 3-12** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record at the following listed email addresses.

3

4

5   - **Brian S. Kabateck**
      bsk@kbklawyers.com

6   - **Richard Kellner**
      rlk@kbklawyers.com,rs@kbklawyers.com

7   - **Alfredo Torrijos**
      at@kbklawyers.com,icd@kbklawyers.com

8

9   I also hereby certify that I caused the foregoing document to be personally delivered by consigning the document(s) to an authorized courier and/or process server for hand delivery on this 4th day of September, 2008 to the following listed addresses.

10

11

12   Erik Swen Syverson
      Pick & Boydston, LLP
13   1000 Wilshire Boulevard
      Suite 600
14   Los Angeles, CA 90017
      *Attorneys for Plaintiff RK West, Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cooley Godward
Kronish LLP
Attorneys At Law
San Diego

6.

OPP. TO ADMIN. MOTION TO CONSIDER
WHETHER CASES SHOULD BE RELATED
08-CV-03452 RMW RS

Guido Saveri
R. Alexander Saveri
Cadio Zirpoli
Saveri & Saveri Inc.
111 Pine Street
Suite 1700
San Francisco , CA 94111
*Attorneys for Plaintiff Pulaski & Middleman, LLC*

Terry Gross
Adam C. Belsky
Monique Alonso
Gross Belsky Alonso LLP
180 Montgomery Street
Suite 2200
San Francisco , CA 94104
*Attorneys for Plaintiff Pulaski & Middleman, LLC*

Robert C. Schubert
Willem F. Jonckheer
Kimberly Ann Kralowec
Schubert Jonckheer Kolbe & Kralowec LLP
Three Embarcadero Center
Suite 1650
San Francisco , CA 94111
*Attorneys for Plaintiff Hal K. Levitte*

Hon. Susan Illston
United States District Court
Northern District of California
450 Golden Gate Ave.
Courtroom 10, 19th Floor
San Francisco, CA 94102
**COURTESY COPY**
*Pulaski & Middleman, LLC v. Google Inc., Case No. 08-cv-03888*

Hon. James Ware
United States District Court
Northern District of California
280 South 1st Street
Courtroom 8, 4th Floor
San Jose, CA  95113
**COURTESY COPY**
*Hal K. Levitte, Case No. 08-cv-03369*

602140 /SD

Kendra Jones
COOLEY GODWARD KRONISH LLP
4401 Eastgate Mall
San Diego, CA  92121-1909
Telephone: (858) 550-6000
FAX: (858) 550-6420
Email:  kjones@cooley.com

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

7.

**OPP. TO ADMIN. MOTION TO CONSIDER
WHETHER CASES SHOULD BE RELATED
08-CV-03452 RMW RS**

# EXHIBIT 9

1   COOLEY GODWARD KRONISH LLP
    MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2   LEO P. NORTON (216282) (lnorton@cooley.com)
    4401 Eastgate Mall
3   San Diego, CA 92121
    Telephone:    (858) 550-6000
4   Facsimile:     (858) 550-6420

5   Attorneys for Defendant
    GOOGLE INC.

6

7

8               UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                 SAN JOSE DIVISION

11

12   RK WEST, INC., a California corporation
    d/b/a Malibu Wholesale, individually and on
13   behalf of all others similarly situated,

14             Plaintiff,

15       v.

16   GOOGLE, INC. a Delaware Corporation; and
    DOES 1 through 10, inclusive,
17
            Defendants.
18

| | |
|---|---|
| Case No. 08-CV-03452 RMW RS | |
| **DECLARATION OF LEO P. NORTON IN SUPPORT OF OPPOSITION TO ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED PURSUANT TO CIVIL LOCAL RULE 3-12** | |

19

20

21

22

23

24

25

26

27

28

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

NORTON DEC I/S/O OPPOSITION TO
ADMINISTRATIVE MOTION
08-CV-03452 RMW RS

I, Leo P. Norton, declare:

1.     I am an attorney licensed to practice law in the State of California, and I am admitted to practice before this Court.  I am an associate with the law firm of Cooley Godward Kronish LLP, attorneys for Defendant Google Inc. in this action and in the three actions that RK West seeks to relate through its administrative motion.  As an attorney for Google, I have personal knowledge of the facts set forth in this Declaration, and if called upon to testify, I could and would testify competently thereto.

2.     Attached hereto as Exhibit 1 is a true and correct copy of the Complaint against Google in the case entitled *David Almeida v. Google, Inc.*, Case No. C 08-02088-RMW ("*Almeida* case"), which was filed on April 22, 2008.

3.     On August 25, 2008, I sent plaintiffs' counsel in the *Almeida*, *Levitte*, *RK West*, and *Pulaski* cases a meet and confer letter via email and mail.  I wrote to them to:  (1) notify them that the *Levitte*, *RK West*, and *Pulaski* cases are related to each other and to the earlier-filed *Almeida* case; (2) attempt to reach a stipulation on Google's intended administrative motion under Civil Local Rules 3-12 and 7-11 to relate the cases; and (3) request that Google's time to answer or otherwise respond to the *Levitte*, *RK West*, and *Pulaski* cases complaints be coordinated and an extension of time such that Google's new response deadline in those three cases is on or before September 30, 2008.  I requested that plaintiffs counsel respond to my letter by end of day Wednesday, August 27, 2008.  Attached as Exhibit 2 is a true and correct copy of the letter I sent to plaintiffs' counsel on August 25, 2008.

4.     On August 26, 2008, at 9:24 a.m., I received an email from plaintiff's counsel in the *Levitte* case, which was copied to all other plaintiffs' counsel, purporting to write on behalf of plaintiffs' counsel in the *Almeida*, *Levitte*, *RK West*, and *Pulaski* cases and requesting an additional week to and including September 3, 2008 to respond to my August 25, 2008 letter and granting an interim extension to respond to the complaint in the *Levitte* case.  Later that day, at 12:19 p.m., I responded via email, which was copied to all plaintiffs' counsel in the four cases, granting their requested extension.  Still later that day, at 1:00 p.m., I received another email from plaintiff's counsel in the *Levitte* case, which was copied to all other plaintiffs' counsel, stating

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

1.

NORTON DEC I/S/O OPPOSITION TO
ADMINISTRATIVE MOTION
08-CV-03452 RMW RS

1   that plaintiffs' counsel in the four cases would be discussing the issues raised in my August 25,

2   2008 letter and that they would respond by Thursday, August 28, 2008 at the latest. Attached as

3   Exhibit 3 is a true and correct copy of an email chain containing my email to all plaintiffs'

4   counsel on August 25, 2008 enclosing my August 25, 2008 letter, the *Levitte* case plaintiff's

5   counsel's response on August 26, 2008, at 9:24 a.m., my response that day at 12:19 p.m., and the

6   *Levitte* case plaintiff's counsel's response at 1:00 p.m.

7       5.      I did not receive a response from any of the plaintiffs' counsel on Thursday,

8   August 28, 2008 as promised. Having still not received any response after the holiday weekend, I

9   emailed all plaintiffs' counsel on September 2, 2008, at 8:11 a.m., demanding that plaintiffs

10  respond to my August 25, 2008 letter by noon. Attached as Exhibit 4 is a true and correct copy of

11  my September 2, 2008 email.

12      6.      As of the signing and filing of this declaration, I have not received a response to

13  my August 25, 2008 letter or any of my email communications from the *RK West* case plaintiff's

14  counsel. The *RK West* plaintiff's counsel, who is also the *Almeida* case plaintiff's counsel, is the

15  only plaintiff's counsel that has not responded to my communications, and it is the only plaintiff's

16  counsel that has not responded to my request that Google's time to answer or otherwise respond

17  to the *Levitte*, *RK West*, and *Pulaski* cases complaints be coordinated and that Google be granted

18  an extension of time such that Google's new response deadline in those three cases is on or before

19  September 30, 2008. I have received responses from the *Levitte* and *Pulaski* cases plaintiffs, both

20  of whom take the position that the *Almeida* case is not related but have stipulated to Google's

21  request for a consolidated response deadline of September 30, 2008.

22      7.      Late in the morning on September 2, 2008, I received via priority U.S. mail the *RK*

23  *West* case plaintiff's Administrative Motion to Consider Whether Cases Should be Related

24  Pursuant to Civil Local Rule 3-12 and supporting documents that were filed in the *RK West* case.

25  The administrative motion seeks to relate the *Levitte*, *RK West*, and *Pulaski* cases before Judge

26  James Ware.

27      8.      Today, concurrently with the filing of its opposition to the *RK West* case plaintiff's

28  administrative motion, Google filed its administrative motion in the *Almeida* case, which seeks to

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

2.

NORTON DEC I/S/O OPPOSITION TO
ADMINISTRATIVE MOTION
08-CV-03452 RMW RS

relate the *Almeida*, *Levitte*, *RK West*, and *Pulaski* cases. The *Almeida* case is the low-numbered case.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on September 4, 2008, at San Diego, California.

Leo P. Norton

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

NORTON DEC I/S/O OPPOSITION TO
ADMINISTRATIVE MOTION
08-CV-03452 RMW RS

# CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2008, I electronically filed the foregoing **DECLARATION OF LEO P. NORTON IN SUPPORT OF OPPOSITION TO ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED PURSUANT TO CIVIL LOCAL RULE 3-12** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record at the following listed email addresses.

- **Brian S. Kabateck**
  bsk@kbklawyers.com
- **Richard Kellner**
  rlk@kbklawyers.com, rs@kbklawyers.com
- **Alfredo Torrijos**
  at@kbklawyers.com, icd@kbklawyers.com

I also hereby certify that I caused the foregoing document to be personally delivered by consigning the document(s) to an authorized courier and/or process server for hand delivery on this 4th day of September, 2008 to the following listed addresses.

Erik Swen Syverson
Pick & Boydston, LLP
1000 Wilshire Boulevard
Suite 600
Los Angeles, CA 90017
*Attorneys for Plaintiff RK West, Inc.*

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

4.

NORTON DEC I/S/O OPPOSITION TO
ADMINISTRATIVE MOTION
08-CV-03452 RMW RS

| | |
|---|---|
| Guido Saveri | Terry Gross |
| R. Alexander Saveri | Adam C. Belsky |
| Cadio Zirpoli | Monique Alonso |
| Saveri & Saveri Inc. | Gross Belsky Alonso LLP |
| 111 Pine Street | 180 Montgomery Street |
| Suite 1700 | Suite 2200 |
| San Francisco , CA 94111 | San Francisco , CA 94104 |
| *Attorneys for Plaintiff Pulaski & Middleman, LLC* | *Attorneys for Plaintiff Pulaski & Middleman, LLC* |
| | |
| Robert C. Schubert | Hon. Susan Illston |
| Willem F. Jonckheer | United States District Court |
| Kimberly Ann Kralowec | Northern District of California |
| Schubert Jonckheer Kolbe & Kralowec LLP | 450 Golden Gate Ave. |
| Three Embarcadero Center | Courtroom 10, 19th Floor |
| Suite 1650 | San Francisco, CA 94102 |
| San Francisco , CA 94111 | **COURTESY COPY** |
| *Attorneys for Plaintiff Hal K. Levitte* | *Pulaski & Middleman, LLC v. Google Inc., Case No. 08-cv-03888* |

Hon. James Ware
United States District Court
Northern District of California
280 South 1st Street
Courtroom 8, 4th Floor
San Jose, CA 95113
**COURTESY COPY**
*Hal K. Levitte, Case No. 08-cv-03369*

_____

Kendra Jones
COOLEY GODWARD KRONISH LLP
4401 Eastgate Mall
San Diego, CA 92121-1909
Telephone: (858) 550-6000
FAX: (858) 550-6420
Email: kjones@cooley.com

602239 /SD

COOLEY GODWARD
KRONISH LLP
ATTORNEYS AT LAW
SAN DIEGO

5.

NORTON DEC I/S/O OPPOSITION TO
ADMINISTRATIVE MOTION
08-CV-03452 RMW RS

# EXHIBIT 1

**FILED**

Fee Paid $1

2008 APR 22 A 11: 47

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA, S. J.

ADR

E-FILING

1  BRIAN S. KABATECK, SBN 152054
   (bsk@kbklawyers.com)
2  RICHARD L. KELLNER, SBN 171416
   (rlk@kbklawyers.com)
3  ALFREDO TORRIJOS, SBN 222458
   (at@kbklawyers.com)
4  KABATECK BROWN KELLNER LLP
   644 South Figueroa Street
5  Los Angeles, California  90017
   Telephone: (213) 217-5000
6  Facsimile: (213) 217-5010
7  Attorneys for Plaintiff
   David Almeida
8

9

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

DAVID ALMEIDA, individually and on
behalf of all others similarly situated,

    Plaintiff,

    vs.

GOOGLE, INC., a Delaware
Corporation; and DOES 1 through 10,
inclusive,

    Defendants.

CASE NO. C08 02088 HRL

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

    Plaintiff David Almeida ("Plaintiff"), individually and on behalf of the class described below, by his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief except as to allegations specifically pertaining to Plaintiff and his counsel, which are based on personal knowledge. Plaintiff brings this action for damages and injunctive relief against defendant, demanding a trial by jury.

**CLASS ACTION COMPLAINT**

## NATURE OF THE ACTION

1.     Plaintiff brings this class action against Google, Inc. ("Google") to recover damages and other relief available at law and in equity on behalf of himself as well as on behalf of the members of the following class:

> *All persons or entities located within the United States who bid on a keyword though AdWords, left the "CPC content bid" input blank, and were charged for content ads.*

2.     This action arises from Google's deceptive, fraudulent and unfair practice of tricking advertisers who seek on-line advertising through Google's AdWords program into bidding for a service that they do not want.

3.     Google is commonly thought simply as an Internet search engine; in fact Google's business is online advertising. Google's business model is primarily dependent on linking individuals who are searching the internet with advertisers who pay Google (and others) for each time the linkage occurs. The Google Network is the largest online advertising network in the United States.

4.     AdWords is Google's primary advertising program and is the main source of its revenue. Through AdWords, Google permits would-be advertisers to bid on words or phrases that will trigger the advertisers' ads. AdWords is premised on a pay-per-click ("PPC") model, meaning that advertisers pay only when their ads are clicked. As part of the AdWords bidding process, therefore, advertisers must set a maximum cost per click ("CPC") bid that the advertiser is willing to pay each time someone clicks on its ad. When an advertiser is choosing its CPC bid, it is also given the "option" of entering a separate bid for clicks originating from Google's "content network" which consists of sites that are not search engines. These content network sites are those that use AdSense, the other side of the Google advertising model.

5.     This action arises from the fact that Google does not inform its advertisers that if they leave the content bid CPC input blank, Google will use the advertiser's CPC bid for clicks occurring on the content network. Google does this despite the fact that ads

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

— 2 —

1  placed on the content network are demonstrably inferior to ads appearing on search result

2  pages. Because there is no option to opt out of content ads during the AdWords

3  registration process, advertisers reasonably believe that by leaving the content ad CPC

4  input blank they can opt out of having their ads placed on the content network. Google,

5  however, has charged and continues to charge those advertisers who leave content ad

6  CPC input blank for content ads on third party websites.

### PARTIES

8      6.     Plaintiff David Almeida ("Plaintiff") is a resident of Essex County,

9  Massachusetts and citizen of Massachusetts. Plaintiff has previously registered for an

10  AdWords account as more particularly described herein and has also previously been

11  charged for content ads as more particularly described herein.

12     7.     Plaintiff is informed and believes and thereon alleges that defendant

13  Google. Inc. ("Google") is a Delaware Corporation doing business in the state of

14  California. Plaintiff is informed and believes and thereon alleges that there is no one

15  state where Google conducts a substantial predominance of its business, making its

16  principal place of business the state where it is headquartered. Network Solutions'

17  headquarters – and, thus, its principal place of business – are located at 1600

18  Amphitheatre Parkway, Mountain View, California. Accordingly, Defendant Google is a

19  citizen of Delaware and California.

20     8.     Plaintiff does not know the true names or capacities of the persons or

21  entities sued herein as DOES 1 to 10, inclusive, and therefore sues such defendants by

22  such fictitious names. Plaintiff is informed and believes and thereon alleges that each of

23  the DOE defendants is in some manner legally responsible for the damages suffered by

24  Plaintiff and the members of the class as alleged herein. Plaintiff will amend this

25  complaint to set forth the true names and capacities of these defendants when they have

26  been ascertained, along with appropriate charging allegations, as may be necessary.

27

28

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
Tel: (213) 217-5000
FAX (213) 217-5010

— 3 —

## JURISDICTION AND VENUE

9.    This Court has diversity subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d) in that this is a civil action filed under Rule 23 of the Federal Rules of Civil Procedure and members of the class of Plaintiffs are citizens of a State different from defendant Google, and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs. See 28 U.S.C. § 1332(d)(2), (6).

10.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(a) in that: (1) Google resides in this judicial district; (2) a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district; and (3) Google is subject to personal jurisdiction in the Northern District of California.

## FACTUAL BACKGROUND

11.    Google offers advertisers two types of ads. The first is a search ad. When an Internet user uses Google to search for a specific term or term, Google will display the ads of advertisers who have bid for those particular keywords. The second type of ad is contextual based ads, or content ads. These ads are shown on third party websites that have content that matches the keywords bid on by the advertiser. For example, an ad for a hardware store may be shown on a website that has content about home improvement projects.

12.    In order to advertise with Google, advertisers must register with AdWords, Google's advertising program. The process of registering with AdWords involves an online process that begins by clicking on the "Advertising Programs" link on Google's homepage. After selecting to register with AdWords and the desired version, the advertiser moves to the initial step of the sign-up process. First, the advertiser selects the target language and geographic location. Then, the advertiser creates the ad that will be placed on Google's website or on third party websites and selects the desired keywords. The advertiser then selects the maximum daily budget and the maximum CPC bid. Here,

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

— 4 —

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

1  the advertiser has two choices, the "Default CPC bid" and the "CPC content bid". Next
2  to the "CPC content bid" input is the word "optional".

3      12.     Nowhere on this page, or anywhere in the registration process, is there the
4  option to opt-out of content ads.

5      13.     Advertisers who do not want to pay for ads placed on third party websites,
6  therefore leave the "CPC content bid" input blank, reasonably believing that the word
7  "optional" means that having content ads placed on third party websites is optional.

8      14.     Google, however, fails to inform that an advertiser who leaves this
9  "optional" input blank will nonetheless be charged for third party content ads. By
10  redefining the universally understood meaning of an input form left blank, and then
11  intentionally concealing this redefinition, Google has fraudulently taken millions of
12  dollars from Plaintiff and the members of the class.

13      15.     Plaintiff enrolled in AdWords in November 2006. Plaintiff created an
14  advertising campaign for his private investigation business. Plaintiff set the desired bids
15  for his ads, and, not wanting to pay for ads placed on third part content sites, left the CPC
16  content bid input blank. Plaintiff, like any reasonable consumer, expected that leaving an
17  input blank would indicate that he did not want to bid on content ads. This expectation
18  was supported by the fact that Plaintiff was not given the option of opting out of content
19  bids during the advertising campaign creation process.

20      16.     Despite leaving the CPC content bid input blank, Google charged Plaintiff
21  for unwanted third party content ads.

22

23                          **CLASS ALLEGATIONS**

24      13.     <u>Description of the Class</u>: Plaintiff brings this nationwide class action on
25  behalf of himself and the Class defined as follows:

26          *All persons or entities located within the United States*
27          *who bid on a keyword though AdWords, left the "CPC*
28          *content bid" input blank, and were charged for content ads.*

                          — 5 —

                    CLASS ACTION COMPLAINT

T-782   P.012/019   F-295

14.     Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

15.     Plaintiff reserves the right to modify the class description and the class period based on the results of discovery.

16.     Numerosity: The proposed Class is so numerous that individual joinder of all its members is impracticable. Due to the nature of the trade and commerce involved, however, Plaintiff believes that the total number of class members is at least in the hundreds of thousands and that the members of the Class are numerous and geographically dispersed across the United States. While the exact number and identities of class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the court.

17.     Common Questions of Law and Fact Predominate: There are many questions of law and fact common to the representative Plaintiff and the proposed Class, and those questions substantially predominate over any individualized questions that may affect individual class members. Common questions of fact and law include, but are not limited to, the following:

    a.      Whether Google charges for advertisements placed on third party websites when the "optional" CPC content bid input is left blank, and whether Google discloses this material fact to consumers;

    b.      Whether Google failed to disclose that when the "optional" CPC content bid input is left blank, Google will still charge for ads placed on third party websites;

— 6 —

CLASS ACTION COMPLAINT

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

c.    Whether or not Plaintiff and the members of the Class have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relief that should be afforded;

d.    Whether Google engaged in unfair, unlawful and/or fraudulent business practices; and

e.    Whether Google failed to disclose material facts about the subject Google Adwords program.

18.    Typicality:    Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since they were charged for ads although they also left the "optional" CPC content bid blank..

19.    Adequacy of Representation:    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interests adverse to those of the proposed Class.

20.    Superiority of a Class Action:    Plaintiff and the members of the Class have suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy as individual joinder of all members of the Class is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of

— 7 —

**CLASS ACTION COMPLAINT**

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

1  all class members' claims in a single forum. The conduct of this action as a class action

2  conserves the resources of the parties and of the judicial system, and protects the rights of

3  the class member. Furthermore, for many, if not most, Class members, a class action is

4  the only feasible mechanism that allows an opportunity for legal redress and justice.

5      21.    Adjudication of individual Class members' claims with respect to the

6  Defendant would, as a practical matter, be dispositive of the interests of other members

7  not parties to the adjudication and could substantially impair or impede the ability of

8  other Class members to protect their interests.

9

10      **FIRST CAUSE OF ACTION**

11      **UNJUST ENRICHMENT**

12      22.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and,

13  to the extent necessary, pleads this cause of action in the alternative.

14      23.    Through the actions described above, Google has received money

15  belonging to Plaintiff and the Class through the fees collected from ads placed on third

16  party content sites when a reasonable advertiser would have believed that leaving the

17  CPC content bid input blank meant that they would not be charged for content ads.

18      24.    Additionally, Google has reaped substantial profit by concealing the fact

19  that when left blank, the "optional" CPC content bid would be set at an amount that could

20  reach the amount bid for the search bid. Ultimately, this resulted in Google's wrongful

21  receipt of profits and injury to Plaintiff and the Class. Google has benefited from the

22  receipt of such money that it would not have received but for its concealment.

23      25.    As a direct and proximate result of Google's misconduct as set forth above,

24  Google has been unjustly enriched.

25      26.    Under principles of equity and good conscience, Google should not be

26  permitted to keep the full amount of money belonging to Plaintiff and the Class which

27  Google has unjustly received as a result of its actions.

28      WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

— 8 —

## SECOND CAUSE OF ACTION

### FRAUDULENT CONCEALMENT

27.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

28.    Google knew at all material times that when an advertiser left the "optional" CPC content bid input blank, that advertiser would still be charged for content ad placed on third party websites. These facts were not known to Plaintiff and the Class.

29.    Google had a duty to disclose the above known material facts because it knew that these material facts were unknown to Plaintiff and the Class, that Google was in a superior position of knowledge with regard to its own technology, and Google chose to make certain representations that presented only a part of the true story and misled consumers about the subject products.

30.    Google's knowledge that advertisers would be charged for content ads placed on third party websites even when they left the "optional" CPC content bid input blank, combined with Google's knowledge that Plaintiff and the Class relied or relies upon Google to communicate the true state of facts relating to its AdWords program creates a legal obligation on Google's part to disclose to Plaintiff and the Class that leaving the "optional" CPC content bid input blank did not mean that they were not subject to charges for ads placed on third party websites.

31.    Google intentionally concealed and/or suppressed the above facts with the intent to defraud Plaintiff and the Class.

32.    Plaintiff and the Class were unaware of the above facts and would not have acted as they did if they had known of the concealed material facts.

33.    Google's concealment of the above facts has caused damage to Plaintiff and the Class in an amount to be shown at trial.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

— 9 —

CLASS ACTION COMPLAINT

## THIRD CAUSE OF ACTION

### VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE
### SECTIONS 17200 ET SEQ.

34. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

35. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and have lost money or property as a result of Google's actions as delineated herein.

36. Class members have suffered injury in fact and have lost money or property as a result of Google's actions as delineated herein.

37. Google's actions as alleged in this complaint constitute an unfair or deceptive practice within the meaning of California Business and Professions Code sections 17200 et seq. in that Google's actions are unfair, unlawful and fraudulent, and because Google has made unfair, deceptive, untrue or misleading statements in advertising media, including the Internet, within the meaning of California Business and Professions Code sections 17500 et seq.

38. Google's business practices, as alleged herein, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that consumers are not informed that they will be charged for ads placed on third party websites even though the "optional" CPC content bid input was left blank.

39. Google's business practices, as alleged herein, are unlawful because the conduct constitutes fraudulent concealment, as well as the other causes of action herein alleged.

40. Google's practices, as alleged herein, are fraudulent because they are likely to deceive consumers.

41. Google's wrongful business acts alleged herein constituted, and constitute, a continuing course of conduct of unfair competition since Google is marketing and selling their products in a manner that is likely to deceive the public.

— 10 —

**CLASS ACTION COMPLAINT**

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

42.    Google's business acts and practices, as alleged herein, have caused injury to Plaintiff, the Class and the public.

43.    Pursuant to section 17203 of the California Business and Professions Code, Plaintiffs and the class seek an order of this court enjoining Google from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including those acts set forth in the complaint. Plaintiff and the Class also seek an order requiring Google to make full restitution of all moneys it wrongfully obtained from Plaintiff and the Class.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and members of the proposed Class request that the court enter an order or judgment against Defendant as follows:

1.    Certification of the proposed Class and notice thereto to be paid by Defendant;

2.    Adjudge and decree that Defendant has engaged in the conduct alleged herein;

3.    For restitution and disgorgement on certain causes of action;

4.    For an injunction ordering Defendant to cease and desist from engaging in the unfair, unlawful, and/or fraudulent practices alleged in the Complaint;

5.    For compensatory and general damages according to proof on certain causes of action;

6.    For special damages according to proof on certain causes of action;

7.    For both pre and post-judgment interest at the maximum allowable rate on any amounts awarded;

8.    Costs of the proceedings herein;

9.    Reasonable attorneys fees as allowed by statute; and

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

— 11 —

CLASS ACTION COMPLAINT

10.   Any and all such other and further relief that this Court may deem just and

proper.

Dated: April **22**, 2008                KABATECK BROWN & KELLNER, LLP

By: _____
      BRIAN S. KABATECK
      RICHARD L. KELLNER
      ALFREDO TORRIJOS
      *Attorneys for Plaintiff and proposed class*

CLASS ACTION COMPLAINT

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in the instant action.

Dated: April 22, 2008                KABATECK BROWN & KELLNER, LLP

By:

BRIAN S. KABATECK
RICHARD L. KELLNER
ALFREDO TORRIJOS
*Attorneys for Plaintiff and proposed class*

— 13 —

CLASS ACTION COMPLAINT

# EXHIBIT 2



# Cooley
GODWARD KRONISH LLP

Leo P. Norton                                                            VIA EMAIL & MAIL
(858) 550-6083
lnorton@cooley.com

August 25, 2008

Guido Saveri (guido@saveri.com)                Terry Gross (terry@gba-law.com)
R. Alexander Saveri (rick@saveri.com)          Adam C. Belsky (adam@gba-law.com)
Cadio Zirpoli (cadio@saveri.com)               Monique Alonso (monique@gba-law.com)
Saveri & Saveri Inc.                           Gross & Belsky Alonso LLP
111 Pine Street, Suite 1700                    180 Montgomery Street
San Francisco, CA 94111                        Suite 2200
                                               San Francisco, CA 94104

Brian S. Kabateck (bsk@kbklawyers.com)         Erik Swen Syverson
Richard L. Kellner (rlk@kbklawyers.com)        (eriksyverson@gmail.com)
Alfredo Torrijos (ar@kbklawyers.com)           Pick & Boydston, LLP
Kabateck Brown Kellner, LLP                    1000 Wilshire Boulevard
644 S. Figueroa Street                         Suite 600
Los Angeles, CA 90017                          Los Angeles, CA 90017

Robert C. Schubert
(rschubert@ schubertlawfirm.com)
Willem F. Jonckheer
(wjonckheer@ schubertlawfirm.com)
Kimberly Ann Kralowec
(kkralowec@schubertlawfirm.com)
Schubert Jonckheer Kolbe & Kralowec LLP
Three Embarcadero Center
Suite 1650
San Francisco, CA 94111

**RE: Google AdWords Putative Class Actions Pending in N.D. Cal.**
   *David Almeida v. Google, Inc.*, Case No. C 08-02088-RMW (filed April 22, 2008)
   *Hal K. Levitte v. Google, Inc.*, Case No. C 08-03369-JW (filed July 11, 2008)
   *RK West, Inc. v. Google, Inc.*, Case No. C 08-03452-RMW (filed July 17, 2008)
   *Pulaski & Middleman, LLC v. Google Inc.*, Case No. C 08-03888-SI (filed August 14, 2008)

Dear Counsel:

We are counsel for Google Inc. in the *Levitte*, *RK West*, and *Pulaski & Middleman* cases.[1] We write to: (1) notify you that the *Levitte*, *RK West*, and *Pulaski & Middleman* cases are related to each other and to the earlier-filed *Almeida* case; (2) attempt to reach a stipulation on Google's intended administrative motion under Civil Local Rules 3-12 and 7-11 to relate the cases; and (3) request that Google's time to answer or otherwise respond to the *Levitte*, *RK West*, and

---
[1] Keker & Van Nest, LLP is counsel of record for Google in the *Almeida* case.



# Cooley
### GODWARD KRONISH /LLP

Plaintiffs' Counsel in Google AdWords Actions
August 25, 2008
Page Two

*Pulaski & Middleman* complaints be coordinated and an extension of time such that Google's new response deadline in those three cases is on or before September 30, 2008. For your reference, I am enclosing a copy of the four related complaints.

## Related Google AdWords Putative Class Actions

Civil Local Rule 3-12 states that actions are related when "[t]he actions concern substantially the same parties, property, transaction or event" and "[i]t appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." Civil L.R. 3-12(a). The four putative class actions easily satisfy the Court's requirements for related cases.

Google is the sole named defendant in all four putative class actions, and therefore, the cases concern the same defendant. Further, the cases concern substantially the same putative plaintiffs because each case asserts a putative class of Google AdWords customers.

Also, all four putative class actions arise from and relate to the named plaintiffs' and putative class members' contractual relationship with Google for Google's AdWords advertising program. Although the *Almeida* case challenges alleged charges for clicks occurring on the content network when the "CPC input" is left blank, while the *Levitte*, *RK West*, and *Pulaski* cases challenge alleged charges for clicks for advertisements placed on parked domain or error page websites, each of the cases arise from and involve the same subject matter—Google's AdWords advertising program. All the actions involve and require an understanding of Google's advertising program, Google's contractual relationship with the named plaintiffs and putative class members, AdWords, the AdWords bidding process, the way advertisements are displayed and where they are displayed, and the fees that Google charges and how those fees are charged.

Additionally, all the actions assert claims for alleged unjust enrichment and alleged violation of California Business and Professions code section 17200 arising from the Google AdWords advertising program.

Last, given that the cases concern substantially the same subject matter and involve overlapping putative classes, there is the potential for unduly burdensome duplication of party and judicial labor and expense. Moreover, there is the potential for conflicting results, at a minimum as to class certification, if the cases are not related and if they proceed as presently assigned before three different judges.

## Stipulation on Google's Administrative Motion

As required under Civil Local Rule 3-12(b), Google stands ready to file an administrative motion under Civil Local Rules 3-12 and 7-11 to relate the cases. If the cases are related, all four cases will be reassigned to the same judge, which is the judge in the low-numbered case. Here, the low-numbered case is the *Almeida* case, and the judge assigned to that case is Ronald M. Whyte. Also, the *RK West* case is already assigned to him. The *Levitte* and *Pulaski & Middleman* cases would be reassigned to him if the cases are related.


# Cooley
GODWARD KRONISH LLP

Plaintiffs' Counsel in Google AdWords Actions
August 25, 2008
Page Three

Under Civil Local Rule 7-11(a), the administrative motion "must be accompanied by a proposed order and by either a stipulation under Civil L.R. 7-12 or by a declaration that explains why a stipulation could not be obtained." Civil L.R. 7-11(a). We ask that you stipulate that the cases are related, which will result in all the cases being assigned to Judge Whyte. The administrative motion does not address the level of coordination or consolidation. That will be addressed later after the cases are reassigned to the same judge.

### Request for Extension of Time to Respond

The *Levitte*, *RK West*, and *Pulaski & Middleman* cases have all recently been served and presently have deadlines to answer or otherwise respond to the complaints staggered throughout the first half of September. We would appreciate the professional courtesy of coordinating the deadline to respond in those three actions, and request an extension of time to respond in those three actions to on or before September 30, 2008. By then, Google's administrative motion to relate the cases will be decided (and the cases reassigned if granted). Under Civil Local Rule 6-1, we can simply stipulate to the extension without Court approval, but we will have to file the stipulation in the three respective actions.

Please contact me by end of day **Wednesday, August 27, 2008** to advise whether your respective plaintiffs will stipulate that the cases are related and whether they will agree to coordinate and extend Google's response deadline to on or before September 30, 2008.

Sincerely,

Leo P. Norton

Enclosures – as stated

cc:     Daralyn J. Durie
        Keker & Van Nest, LLP (w/ enclosures)

600883 v1/SD

# EXHIBIT 3

# Norton, Leo

| | |
|---|---|
| **From:** | Robert C. Schubert [rschubert@schubertlawfirm.com] |
| **Sent:** | Tuesday, August 26, 2008 1:00 PM |
| **To:** | Norton, Leo; Kimberly A. Kralowec; guido@saveri.com; rick@saveri.com; cadio@saveri.com; terry@gba-law.com; adam@gba-law.com; monique@gba-law.com; eriksyverson@gmail.com; bsk@kbklawyers.com; rlk@kbklawyers.com; at@kbklawyers.com; Willem F. Jonckheer |
| **Cc:** | Rhodes, Michael; Willsey, Peter; ddurie@kvn.com |
| **Subject:** | RE: Google AdWords N.D. Cal. Cases - Letter from Cooley to Plaintiffs' Counsel |

The attorneys in the CA cases will be discussing the issues you raise and expect to get back to you by Thursday at the latest.

**From:** Norton, Leo [mailto:lnorton@cooley.com]
**Sent:** Tuesday, August 26, 2008 12:19 PM
**To:** Kimberly A. Kralowec; guido@saveri.com; rick@saveri.com; cadio@saveri.com; terry@gba-law.com; adam@gba-law.com; monique@gba-law.com; eriksyverson@gmail.com; bsk@kbklawyers.com; rlk@kbklawyers.com; at@kbklawyers.com; Robert C. Schubert; Willem F. Jonckheer
**Cc:** Rhodes, Michael; Willsey, Peter; ddurie@kvn.com
**Subject:** RE: Google AdWords N.D. Cal. Cases - Letter from Cooley to Plaintiffs' Counsel

Ms. Kralowec:

Thank you for your prompt response. We are fine with September 3 for plaintiffs' response to our letter regarding relating the cases.

As for coordinating Google's response deadline and requested extension of time, we request that all plaintiffs' agree to coordinate and extend Google's response to September 30. Although we appreciate you agreeing to a further extension of time in your case (the *Levitte* case) until September 10, such an extension does not result in a coordinated response deadline. The deadline to respond in the *Pulaski* case is September 4. Additionally, Google was recently served with another AdWords parked domain and error page websites putative class action. That case is pending in the N.D. Ill., and has a mid-September response date. We are attempting to get plaintiff in that action to voluntarily dismiss and re-file in the N.D. Cal. in light of the California forum selection and choice of law clauses in the advertising program agreement and terms of service agreement and the four earlier filed overlapping and competing putative class actions in the N.D. Cal. If plaintiff there does not agree to do so, we intend to file a motion to dismiss or transfer or an MDL motion to get all the cases in the N.D. Cal. Considering the upcoming holiday, the number of actions that have recently been served to which responses are due staggered throughout September, the unresolved procedural issues regarding relating all the cases in N.D. Cal. before the same judge, including the N.D. Ill. action, our recent involvement, and the lack of impending deadlines in the cases other than *Almeida*, we believe coordinating the remaining responses in all cases to September 30 is reasonable.

I will call you shortly to discuss further.

Sincerely,

**Leo P. Norton**
Cooley Godward Kronish LLP • 4401 Eastgate Mall
San Diego, CA 92121-1909
Direct: 858/550-6083 • Fax: 858/550-6420
Bio: www.cooley.com/lnorton • Practice: www.cooley.com/litigation

---

**From:** Kimberly A. Kralowec [mailto:KKralowec@schubertlawfirm.com]
**Sent:** Tuesday, August 26, 2008 9:25 AM
**To:** Norton, Leo; guido@saveri.com; rick@saveri.com; cadio@saveri.com; terry@gba-law.com; adam@gba-law.com; monique@gba-law.com; eriksyverson@gmail.com; bsk@kbklawyers.com; rlk@kbklawyers.com; at@kbklawyers.com; Robert C. Schubert; Willem F. Jonckheer
**Cc:** Rhodes, Michael; Willsey, Peter; ddurie@kvn.com
**Subject:** RE: Google AdWords N.D. Cal. Cases - Letter from Cooley to Plaintiffs' Counsel

Dear Mr. Norton:

I write on behalf of plaintiffs' counsel in the four cases mentioned in your letter. We have received your letter and are in the process of analyzing it. We will require an additional week, through September 3, 2008, to respond to your points. To facilitate this, we are willing to agree to an additional week for Google to respond to the complaint in the *Levitte* case. The new deadline would be September 10, 2008. I am informed that the response deadlines in the other two cases are already later than that. Please contact me with any questions or concerns regarding the above.

Sincerely,

Kimberly A. Kralowec, Esq.
Schubert Jonckheer Kolbe & Kralowec LLP
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
Email: kkralowec@schubertlawfirm.com
Web: http://www.schubertlawfirm.com

**From:** Norton, Leo [mailto:lnorton@cooley.com]
**Sent:** Monday, August 25, 2008 11:25 AM
**To:** guido@saveri.com; rick@saveri.com; cadio@saveri.com; terry@gba-law.com; adam@gba-law.com; monique@gba-law.com; eriksyverson@gmail.com; rlk@kbklawyers.com; ar@kbklawyers.com; rschubert@chubertlawfirm.com; Willem F. Jonckheer; Kimberly A. Kralowec
**Cc:** Rhodes, Michael; Willsey, Peter; ddurie@kvn.com
**Subject:** Google AdWords N.D. Cal. Cases - Letter from Cooley to Plaintiffs' Counsel

Dear Counsel:

I am attaching a letter and enclosures also being sent to you today via mail regarding certain administrative matters relating to the Google AdWords cases pending in the Northern District of California. We request your response on two issues. Please respond by end of day on Wednesday, August 27, 2008.

<<GOOGLE Letter to Counsel.pdf>> <<Almeida v. Google.pdf>> <<Levitte v. Google.pdf>> <<RK West, Inc. v. Google.pdf>> <<Pulaski & Middleman v. Google.pdf>>

Please contact me if you have any questions. Thank you.

Sincerely,

**Leo P. Norton**
Cooley Godward Kronish LLP • 4401 Eastgate Mall
San Diego, CA  92121-1909
Direct: 858/550-6083 • Fax: 858/550-6420
Bio: www.cooley.com/lnorton • Practice: www.cooley.com/litigation

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachment) is not intended or written by us to be used, and cannot be used, (i) by any taxpayer for the purpose of avoiding tax penalties under the Internal Revenue Code or (ii) for promoting, marketing or recommending to another party any transaction or matter addressed herein.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachment) is not intended or written by us to be used, and cannot be used, (i) by any taxpayer for the purpose of avoiding tax penalties under the Internal Revenue Code or (ii) for promoting, marketing or recommending to another party any transaction or matter addressed herein.

# EXHIBIT 4

## Norton, Leo

**From:** Norton, Leo
**Sent:** Tuesday, September 02, 2008 8:11 AM
**To:** 'rschubert@schubertlawfirm.com'; 'KKralowec@schubertlawfirm.com'; 'guido@saveri.com'; 'rick@saveri.com'; 'cadio@saveri.com'; 'terry@gba-law.com'; 'adam@gba-law.com'; 'monique@gba-law.com'; 'eriksyverson@gmail.com'; 'bsk@kbklawyers.com'; 'rlk@kbklawyers.com'; 'at@kbklawyers.com'; 'wjonckheer@schubertlawfirm.com'
**Cc:** Rhodes, Michael; Willsey, Peter; 'ddurie@kvn.com'
**Subject:** Re: Google AdWords N.D. Cal. Cases - Letter from Cooley to Plaintiffs' Counsel

We did not receive a response on Thursday as stated in the email below, and it has been over a week since we sent our letter. If we do not receive a response by noon today, we will file the administrative motion to relate the N.D. Cal. cases today, and advise the court (as we are required to do under the local rules) that we attempted to reach a stipulation with plaintiffs regarding relating the cases, but plaintiffs failed to respond.

Please also advise whether plaintiffs agree to coordinating and extending Google's deadline to respond to September 30.

Sincerely,

------Original Message------
From: Robert C. Schubert
To: Leo Norton
To: Kimberly A. Kralowec
To: guido@saveri.com
To: rick@saveri.com
To: cadio@saveri.com
To: terry@gba-law.com
To: adam@gba-law.com
To: monique@gba-law.com
To: eriksyverson@gmail.com
To: bsk@kbklawyers.com
To: rlk@kbklawyers.com
To: at@kbklawyers.com
To: Willem F. Jonckheer
Cc: Michael Rhodes
Cc: Willsey, Peter
Cc: ddurie@kvn.com
Sent: Aug 26, 2008 1:00 PM
Subject: RE: Google AdWords N.D. Cal. Cases - Letter from Cooley to Plaintiffs' Counsel

The attorneys in the CA cases will be discussing the issues you raise and expect to get back to you by Thursday at the latest.


From: Norton, Leo [mailto:lnorton@cooley.com]
Sent: Tuesday, August 26, 2008 12:19 PM
To: Kimberly A. Kralowec; guido@saveri.com; rick@saveri.com; cadio@saveri.com; terry@gba-law.com; adam@gba-law.com; monique@gba-law.com; eriksyverson@gmail.com; bsk@kbklawyers.com; rlk@kbklawyers.com; at@kbklawyers.com; Robert C. Schubert; Willem F. Jonckheer
Cc: Rhodes, Michael; Willsey, Peter; ddurie@kvn.com
Subject: RE: Google AdWords N.D. Cal. Cases - Letter from Cooley to Plaintiffs' Counsel


Ms. Kralowec:

1

Thank you for your prompt response.  We are fine with September 3 for plaintiffs' response to our letter regarding relating the cases.


As for coordinating Google's response deadline and requested extension of time, we request that all plaintiffs' agree to coordinate and extend Google's response to September 30.  Although we appreciate you agreeing to a further extension of time in your case (the Levitte case) until September 10, such an extension does not result in a coordinated response deadline.  The deadline to respond in the Pulaski case is September 4.  Additionally, Google was recently served with another AdWords parked domain and error page websites putative class action.  That case is pending in the N.D. Ill., and has a mid-September response date.  We are attempting to get plaintiff in that action to voluntarily dismiss

------Original Message Truncated------

---------------------------
Leo P. Norton
Cooley Godward Kronish LLP
4401 Eastgate Mall
San Diego, CA   92121-1909
Direct: 858-550-6083 Fax: 858-550-6420
Bio: www.cooley.com/lnorton   Practice: www.cooley.com/litigation