BRIAN S. KABATECK,  SBN 152054
 (bsk@kbklawyers.com)
RICHARD L. KELLNER,  SBN 171416
 (rlk@kbklawyers.com)
ALFREDO TORRIJOS,  SBN 222458
 (at@kbklawyers.com)
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, California  90017
Telephone: (213) 217-5000
Facsimile: (213) 217-5010

Attorneys for Plaintiff
David Almeida

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ALMEIDA, individually and on behalf of all others similarly situated,<br><br>           Plaintiff,<br><br>      vs.<br><br>GOOGLE, INC., a Delaware Corporation; and DOES 1 through 10, inclusive,<br><br>           Defendants. | CASE NO.   CV 08-02088 RMW<br><br>HON. RONALD M. WHYTE<br><br>**DECLARATION OF MICHAEL V. STORTI IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT AND TO SET NEW CASE MANAGEMENT CONFERENCE**<br><br><u>Hearing</u><br>Date:  October 30, 2009<br>Time:  9:00 a.m.<br>Courtroom:  6 |

## DECLARATION OF MICHAEL V. STORTI

I, Michael V. Storti, declare as follows:

1.      I am over the age of 18 and a resident of California.  I make this declaration of my personal and first-hand knowledge, and, if called and sworn as a witness, I would and could testify competently hereto.

---

**DECLARATION OF MICHAEL V. STORTI IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT AND TO SET NEW CASE MANAGEMENT CONFERENCE (CV 08-02088 RMW)**

2.      I am an attorney admitted to practice in the state California.  I am an associate at the law firm of Kabateck Brown Kellner LLP and I am one of the attorneys representing plaintiff David Almeida ("Plaintiff") in this action.

3.      Attached hereto as Exhibit "A" is a true and correct copy of the proposed First Amended Complaint.

4.      Attached hereto as Exhibit "B" is a true and correct copy of the original complaint filed in this action on April 22, 2008.

5.      Plaintiff served his First Set of Interrogatories and First Set of Requests for Production of Documents on October 6, 2008.

6.      Attached hereto as Exhibit "C" is a true and correct copy of the Case Management Order signed by the Court on October 10, 2008.

7.      Attached hereto as Exhibit "D" is a true and correct copy of Defendant Google's Objections and Responses to Plaintiff's First Set of Interrogatories, served on December 5, 2008.

8.      Attached hereto as Exhibit "E" is a true and correct copy of Defendant Google's Responses to Plaintiff's First Set of Requests for Production of Documents, served on December 5, 2008.

9.      Attached hereto as Exhibit "F" is a true and correct copy of a meet and confer letter sent to Google's counsel, David Silbert, dated January 16, 2009.

10.     Attached hereto as Exhibit "G" is a true and correct copy of a meet and confer letter sent to Google's counsel, David Silbert, dated February 2, 2009.

11.     Attached hereto as Exhibit "H" is a true and correct copy of a letter from Mr. Silbert, dated February 18, 2009.

12.     Attached hereto as Exhibit "I" is a true and correct copy of the Case Management Order signed by the Court on April 2, 2009.

13.     On June 5, 2009, I spoke with Mr. Silbert and informed him that Plaintiff wished to file an amended complaint, substituting Largo Cargo Co. as

— 2 —

1   class representative.  I asked if Google would stipulate to the amendment.  Mr.

2   Silbert stated that he would confer with his client inform me when a decision was

3   made.

4       14.   On June 18, 2009, I spoke with Mr. Silbert who informed me that

5   Google would not stipulate to a dismissal.  He stated that Plaintiff signed up before

6   Google began using the CPC content bid input box alleged in the complaint.  He

7   stated that the case *Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018 (9th

8   Cir. 2003), required dismissal of the action.

9       15.   None of the documents produced by Google substantiate Google's

10  response to Plaintiff's Interrogatory No. 2.

11      16.   Plaintiff has not yet taken a 30(b)(6) deposition of Google.

12      17.   Attached hereto as Exhibit "J" is a true and correct copy of an email

13  from Mr. Silbert, dated May 8, 2009.  The attachment to the email was the

14  verification to Google's interrogatory responses that were served five months

15  earlier.

16      18.   On June 18, 2009, Plaintiff agreed to dismiss the action if Google

17  would stipulate to a dismissal.  Attached hereto as Exhibit "K" is a true and correct

18  copy of an email from Mr. Silbert, dated June 18, 2009.

19      19.   Attached hereto as exhibit "L" is a true and correct copy of an email

20  from Mr. Silbert, dated August 13, 2009.

21      20.   Attached hereto as Exhibit "M" is a true and correct copy of an email

22  chain between Mr. Silbert and myself.  The first email, to Mr. Silbert, is dated

23  August 25, 2009.  Mr. Silbert's response is dated August 26, 2009.

24      I declare under penalty of perjury that the foregoing is true and correct,

25  executed on September 11, 2009 in Los Angeles, California.

26

                         _____

27                           /s/

                        Michael V. Storti

28                           — 3 —

**DECLARATION OF MICHAEL V. STORTI IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT AND TO SET NEW CASE MANAGEMENT CONFERENCE (CV 08-02088 RMW)**

**EXHIBIT A**

1   BRIAN S. KABATECK, SBN 152054
    (bsk@kbklawyers.com)
2   RICHARD L. KELLNER, SBN 171416
    (rlk@kbklawyers.com)
3   ALFREDO TORRIJOS, SBN 222458
    (at@kbklawyers.com)
4   KABATECK BROWN KELLNER LLP
    644 South Figueroa Street
5   Los Angeles, California  90017
    Telephone: (213) 217-5000
6   Facsimile: (213) 217-5010

7   Attorneys for Plaintiff
    David LargoCargo.Com

8

9

10                  **UNITED STATES DISTRICT COURT**

11                 **NORTHERN DISTRICT OF CALIFORNIA**

12

13   LARGO CARGO CO., a Florida          CASE NO.   CV 08-02088 RMW
     corporation, individually and on
14   behalf of all others similarly situated,   HON. RONALD M. WHYTE

15                Plaintiff,              **FIRST AMENDED CLASS ACTION
16                                        COMPLAINT**
          vs.
17                                        **JURY TRIAL DEMANDED**

18   GOOGLE, INC., a Delaware
     Corporation; and DOES 1 through 10,
19   inclusive,

20                Defendants.

21

22

23

24        Plaintiff Largo Cargo Co. ("Plaintiff"), individually and on behalf of the

25   class described below, by its attorneys, make the following allegations pursuant to

26   the investigation of its counsel and based upon information and belief except as to

27   allegations specifically pertaining to Plaintiff and its counsel, which are based on

28   personal knowledge.  Plaintiff brings this action for damages and injunctive relief

_____
                    **FIRST AMENDED CLASS ACTION COMPLAINT**

1    against Defendant, demanding a trial by jury.

2                           **NATURE OF THE ACTION**

3          1.      Plaintiff brings this class action against defendant Google, Inc.

4    ("Google") to recover damages and other relief available at law and in equity on

5    behalf of itself as well as on behalf of the members of the following class:

6                *All persons or entities located within the United States*

7                *who bid on a keyword though AdWords, left the "CPC*

8                *content bid" input blank, and were charged for content*

9                *ads.*

10         2.      This action arises from Google's deceptive, fraudulent, and unfair

11   practice of tricking advertisers who seek online advertising through Google's

12   AdWords program into bidding for a service that they do not want.

13         3.      Google is commonly thought simply as an Internet search engine; in

14   fact, Google's business is online advertising. Google's business model is primarily

15   dependent on linking individuals who are searching the internet with advertisers

16   who pay Google (and others) for each time the linkage occurs.  The Google

17   Network is the largest online advertising network in the United States.

18         4.      AdWords is Google's primary advertising program and is the main

19   source of its revenue.  Through AdWords, Google permits would-be advertisers to

20   bid on words or phrases that will trigger the advertisers' ads.  AdWords is

21   premised on a pay-per-click ("PPC") model, meaning that the advertisers pay only

22   when their ads are clicked.  As part of the AdWords bidding process, therefore,

23   advertisers must set a maximum cost per click ("CPC") bid that the advertiser is

24   willing to pay each time someone clicks on its ad.  When an advertiser is choosing

25   its CPC bid, it is also given the "option" of entering a separate bid for clicks

26   originating from Google's "content network" which consists of sites that are not

27   search engines.  These content network sited are those that use AdSense, the other

28   side of the Google advertising model.

**FIRST AMENDED CLASS ACTION COMPLAINT**

5. This action arises from the fact that Google does not inform it advertisers that if they leave the CPC content bid input blank, Google will use the advertiser's CPC bid for clicks occurring on the content network. Google does this despite the fact that ads placed on the content network are demonstrably inferior to ads appearing on search result pages. Because there is no option to opt out of content ads during the AdWords registration process, advertisers reasonably believe that by leaving the CPC content bid input blank they can opt out of having their ads placed on the content network. Google, however, has charged and continues to charge those advertisers who lease the CPC content bid input blank for content ads on third party websites.

**PARTIES**

6. Plaintiff Largo Cargo Co. is a Florida corporation and has previously registered for an AdWords account as more particularly described herein and has also previously been charged for content ads as more particularly described herein.

7. Plaintiff is informed and believes and thereon alleges that defendant Google Inc. is a Delaware Corporation doing business in the state of California. Plaintiff is informed and believes and thereon alleges that there is no one state where Google conducts a substantial predominance of its business, making its principal place of business the state where it is headquartered. Google's principal campus and corporate headquarters are located in 1600 Amphitheatre Parkway, Mountain View, California.

8. Plaintiff does not know the true names or capacities of the persons or entities sued herein as DOES 1 to 10, inclusive, and therefore sues such defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the DOE defendants is in some manner legally responsible for the damages suffered by Plaintiffs and the members of the class as alleged herein. Plaintiff will amend this complaint to set forth the true names and capacities of these defendants when they have been ascertained, along with appropriate charging

**FIRST AMENDED CLASS ACTION COMPLAINT**

allegations, as may be necessary.

## JURISDICTION AND VENUE

9.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) in that it is a class action filed under rule 23 of the Federal Rules of Civil Procedure, the matter in controversy, as aggregated pursuant to 28 U.S.C. § 1332(d)(6) exceeds the sum of $5,000,000 exclusive of interest and costs, and a substantial number of members of the class of plaintiffs are citizens of a state different from that of defendant Google.

10.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(a) in that: (1) Google resides in this judicial district; (2) a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district; and (3) Google is subject to personal jurisdiction in the Northern District of California.

## FACTUAL BACKGROUND

11.     Google offers advertisers two types of ads.  The first is the search ad. When an Internet user uses Google to search for a specific term or term, Google will display the ads of advertisers who have bid for those particular keywords.  The second type of ad is the contextual based ad, or content ad.  These ads are shown on third party websites that have content that matches the keywords bid on by the advertiser.  For example, an ad for a hardware store may be shown on a website that has content about home improvement projects.

12.     In order to advertise with Google, advertisers must register with AdWords, Google's advertising program.  The process of registering with AdWords involves an online process that begins by clicking on the "Advertising Programs" link on Google's homepage.  After selecting to register with AdWords and the desired version, the advertiser moves to the initial step of the sign-up process.  First, the advertiser selects the target language and geographic location. Then, the advertiser creates the ad that will be placed on Google's website or on

third party websites and selects the desired keywords.  The advertiser then selects the maximum daily budget and the maximum CPC bid.  Here, the advertiser has two choices, the "Default CPC bid" and the "CPC content bid".  Next to the "CPC content bid" input is the word "optional".

13.    Nowhere on this page, or anywhere in the registration process is there the option to opt-out of content ads.

14.    Advertisers who do not want to pay for ads placed on third party websites therefore leave the "CPC content bid" input blank, believing that the word "optional" means that having content ads placed on third party websites is optional.

15.    Google, however, fails to inform that an advertiser who leaves this "optional" input blank will nonetheless be charged for third party content ads.  By redefining the universally understood meaning of an input form left blank, and then intentionally concealing this redefinition, Google has fraudulently taken millions of dollars from Plaintiff and the members of the class.

16.    Plaintiff enrolled in AdWords in January of 2008.    Plaintiff set the desired bids for it's ads, and, not wanting to pay for ads placed on third part content sites, left the CPC content bid input blank.  Plaintiff, like any reasonable consumer, expected that leaving an input blank would indicate that it did not want to bid on content ads.  This expectation was supported by the fact that Plaintiff was not given the option of opting out of content bids during the advertising campaign creation process.

17.    Despite leaving the CPC content bid input blank, Google charged Plaintiff over $10,000 for unwanted third party content ads.

## CLASS ALLEGATIONS

18.    Description of the Class: Plaintiff brings this nationwide class action on behalf of himself and the Class defined as follows:

> *All persons or entities located within the United States*
> *who bid on a keyword though AdWords, left the "CPC*

1  *content bid" input blank, and were charged for content*

2  *ads.*

3  19.   Excluded from the Class are governmental entities, Defendant, any

4  entity in which Defendant has a controlling interest, and Defendant's officers,

5  directors, affiliates, legal representatives, employees, co-conspirators, successors,

6  subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or

7  judicial officer presiding over this matter and the members of their immediate

8  families and judicial staff.

9  20.   Plaintiff reserves the right to modify the class description and the

10  class period based on the results of discovery.

11  21.   <u>Numerosity</u>:  The proposed Class is so numerous that individual

12  joinder of all its members is impracticable.  Due to the nature of the trade and

13  commerce involved, however, Plaintiff believes that the total number of class

14  members is at least in the hundreds of thousands and that the members of the Class

15  are numerous and geographically dispersed across the United States.  While the

16  exact number and identities of class members are unknown at this time, such

17  information can be ascertained through appropriate investigation and discovery.

18  The disposition of the claims of the class members in a single class action will

19  provide substantial benefits to all parties and to the court.

20  22.   <u>Common Questions of Law and Fact Predominate</u>:  There are many

21  questions of law and fact common to the representative Plaintiff and the proposed

22  Class, and those questions substantially predominate over any individualized

23  questions that may affect individual class members.  Common questions of fact

24  and law include, but are not limited to, the following:

25  a.   Whether Google charges for advertisements placed on third

26  party websites when the "optional" CPC content bid input is

27  left blank, and whether Google discloses this material fact to

28  consumers;

b.   Whether Google failed to disclose that when the "optional" CPC content bid input is left blank, Google will still charge for ads placed on third party websites;

c.   Whether or not Plaintiffs and the members of the class have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relief that should be afforded;

d.   Whether Google engaged in unfair, unlawful and/or fraudulent business practices; and

e.   Whether Goolge failed to disclose material facts about the subject Google Adwords program.

23.   Typicality:   Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the class have been similarly affected by Defendant's common course of conduct since their charged for content ads after leaving the "optional" CPC content bid input blank.

24.   Adequacy of Representation:  Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation.  Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so.  Neither Plaintiff nor its counsel have any interests adverse to those of the proposed Class.

25.   Superiority of a Class Action:   Plaintiff and the members of the Class have suffered, and will continue to suffer, harm as a result of defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy as individual joinder of all members of the class is impractical.  Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation

**FIRST AMENDED CLASS ACTION COMPLAINT**

1   magnifies the delay and expense to all parties in the court system of resolving the

2   controversies engendered by Defendant's common course of conduct.  The class

3   action device allows a single court to provide the benefits of unitary adjudication,

4   judicial economy, and the fair and equitable handling of all class members' claims

5   in a single forum. The conduct of this action as a class action conserves the

6   resources of the parties and of the judicial system, and protects the rights of the

7   class member.  Furthermore, for many, if not most, Class members, a class action

8   is the only feasible mechanism that allows therein an opportunity for legal redress

9   and justice.

10       26.    Adjudication of individual Class members' claims with respect to the

11   Defendant would, as a practical matter, be dispositive of the interests of other

12   members not parties to the adjudication and could substantially impair or impede

13   the ability of other class members to protect their interests.

**FIRST CAUSE OF ACTION**

**UNJUST ENRICHMENT**

16       27.    Plaintiff realleges the preceding paragraphs as if fully set forth herein

17   and, to the extent necessary, plead this cause of action in the alternative.

18       28.    Through the actions described above, Google has received money

19   belonging to Plaintiff and the Class through the fees collected from ads placed on

20   third party content sites when a reasonable advertiser would have believed that

21   leaving the CPC content bid input blank meant that they would not be charged for

22   content ads.

23       29.    Additionally, Google has reaped substantial profit by concealing the

24   fact when left blank, the "optional" CPC content bid would be set at an amount

25   that could reach the amount bid for the search bid.  Ultimately, this resulted in

26   Google's wrongful receipt of profits and injury to Plaintiff and the Class.  Google

27   has benefited from the receipt of such money that it would not have received but

28   for its concealment.

30.     As a direct and proximate result of Google's misconduct as set forth above, Google has been unjustly enriched.

31.     Under principles of equity and good conscience, Google should not be permitted to keep the full amount of money belonging to Plaintiff and the Class which Google has unjustly received as a result of its actions.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## SECOND CAUSE OF ACTION

## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTIONS 17200 ET SEQ.

32.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

33.     Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Google's actions as delineated herein.

34.     Class members have suffered injury in fact and have lost money or property as a result of Google's actions as delineated herein.

35.     Google's actions as alleged in this complaint constitute an unfair or deceptive practice within the meaning of California Business and Professions Code sections 17200 *et seq.* in that Google's actions are unfair, unlawful and fraudulent, and because Google has made unfair, deceptive, untrue or misleading statements in advertising media, including the Internet, within the meaning of California Business and Professions Code sections 17500 *et seq*.

36.     Google's business practices, as alleged herein, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that consumers are not informed that they will be charged for ad placed on third party websites even though the "optional" CPC content bid input was left blank.

**FIRST AMENDED CLASS ACTION COMPLAINT**

37.     Google's business practices, as alleged herein, are unlawful because the conduct constitutes unjust enrichment, as well as the other causes of action herein alleged.

38.     Google's practices, as alleged herein, are fraudulent because they are likely to deceive consumers.

39.     Google's wrongful business acts alleged herein constituted, and constitute, a continuing course of conduct of unfair competition since Google is marketing and selling their products in a manner that is likely to deceive the public.

40.     Google's business acts and practices, as alleged herein, have caused injury to Plaintiff, the Class and the public.

41.     Pursuant to section 17203 of the California Business and Professions Code, Plaintiff and the Class seek an order of this court enjoining Google from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including those acts set forth in the complaint. Plaintiff and the Class also seek an order requiring Google to make full restitution of all moneys it wrongfully obtained from Plaintiffs and the class.

WHEREFORE, Plaintiff and the class pray for relief as set forth below.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff and members of the proposed Class request that the Court enter an order or judgment against Defendant as follows:

1.     Certification of the proposed Class and notice thereto to be paid by Defendant;

2.     Adjudge and decree that Defendant has engaged in the conduct alleged herein;

3.     For restitution and disgorgement on certain causes of action;

**FIRST AMENDED CLASS ACTION COMPLAINT**

4.    For an injunction ordering Defendant to cease and desist from engaging in the unfair, unlawful, and/or fraudulent practices alleged in the Complaint;

5.    For compensatory and general damages according to proof on certain causes of action;

6.    For special damages according to proof on certain causes of action;

7.    For both pre and post-judgment interest at the maximum allowable rate on any amounts awarded;

8.    Costs of the proceedings herein;

9.    Reasonable attorneys fees as allowed by statute; and

10.   Any and all such other and further relief that this Court may deem just and proper.

Dated: September ___ 2009          **KABATECK BROWN KELLNER LLP**

By: _____
BRIAN S. KABATECK
RICHARD L. KELLNER
ALFREDO TORRIJOS
*Attorneys for Plaintiff and proposed Class*

**FIRST AMENDED CLASS ACTION COMPLAINT**

1

## **DEMAND FOR JURY TRIAL**

2        Plaintiffs hereby demand a trial by jury in the instant action.

3

4   Dated: September ___ 2009        **KABATECK BROWN KELLNER LLP**

5

6

7

8        By: _____
                 BRIAN S. KABATECK
9                RICHARD L. KELLNER
                 ALFREDO TORRIJOS
10               *Attorneys for Plaintiff and proposed Class*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED CLASS ACTION COMPLAINT**

**EXHIBIT B**

1  BRIAN S. KABATECK, SBN 152054
   (bsk@kbklawyers.com)
2  RICHARD L. KELLNER, SBN 171416
   (rlk@kbklawyers.com)
3  ALFREDO TORRIJOS, SBN 222458
   (at@kbklawyers.com)
4  KABATECK BROWN KELLNER LLP
   644 South Figueroa Street
5  Los Angeles, California 90017
   Telephone: (213) 217-5000
6  Facsimile: (213) 217-5010

7  Attorneys for Plaintiff
   David Almeida
8

9

**FILED**

**2008 APR 22  A 11: 47**

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA, S.J.

**ADR**

**E-FILING**

10

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

12  DAVID ALMEIDA, individually and on
13  behalf of all others similarly situated,

14          Plaintiff,

15      vs.

16

17  GOOGLE, INC., a Delaware
    Corporation; and DOES 1 through 10,
18  inclusive,

19          Defendants.

**C08   02088  HRL**

CASE NO.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

20
21
22
23      Plaintiff David Almeida ("Plaintiff"), individually and on behalf of the class
24  described below, by his attorneys, makes the following allegations pursuant to the
25  investigation of his counsel and based upon information and belief except as to
26  allegations specifically pertaining to Plaintiff and his counsel, which are based on
27  personal knowledge. Plaintiff brings this action for damages and injunctive relief against
28  defendant, demanding a trial by jury.

---

**CLASS ACTION COMPLAINT**

## NATURE OF THE ACTION

1. Plaintiff brings this class action against Google, Inc. ("Google") to recover damages and other relief available at law and in equity on behalf of himself as well as on behalf of the members of the following class:

> *All persons or entities located within the United States who*
> *bid on a keyword though AdWords, left the "CPC content*
> *bid" input blank, and were charged for content ads.*

2. This action arises from Google's deceptive, fraudulent and unfair practice of tricking advertisers who seek on-line advertising through Google's AdWords program into bidding for a service that they do not want.

3. Google is commonly thought simply as an Internet search engine; in fact Google's business is online advertising. Google's business model is primarily dependent on linking individuals who are searching the internet with advertisers who pay Google (and others) for each time the linkage occurs. The Google Network is the largest online advertising network in the United States.

4. AdWords is Google's primary advertising program and is the main source of its revenue. Through AdWords, Google permits would-be advertisers to bid on words or phrases that will trigger the advertisers' ads. AdWords is premised on a pay-per-click ("PPC") model, meaning that advertisers pay only when their ads are clicked. As part of the AdWords bidding process, therefore, advertisers must set a maximum cost per click ("CPC") bid that the advertiser is willing to pay each time someone clicks on its ad. When an advertiser is choosing its CPC bid, it is also given the "option" of entering a separate bid for clicks originating from Google's "content network" which consists of sites that are not search engines. These content network sites are those that use AdSense, the other side of the Google advertising model.

5. This action arises from the fact that Google does not inform its advertisers that if they leave the content bid CPC input blank, Google will use the advertiser's CPC bid for clicks occurring on the content network. Google does this despite the fact that ads

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

— 2 —

1  placed on the content network are demonstrably inferior to ads appearing on search result
2  pages. Because there is no option to opt out of content ads during the AdWords
3  registration process, advertisers reasonably believe that by leaving the content ad CPC
4  input blank they can opt out of having their ads placed on the content network. Google,
5  however, has charged and continues to charge those advertisers who leave content ad
6  CPC input blank for content ads on third party websites.

## PARTIES

8      6.     Plaintiff David Almeida ("Plaintiff") is a resident of Essex County,
9  Massachusetts and citizen of Massachusetts. Plaintiff has previously registered for an
10  AdWords account as more particularly described herein and has also previously been
11  charged for content ads as more particularly described herein.

12     7.     Plaintiff is informed and believes and thereon alleges that defendant
13  Google, Inc. ("Google") is a Delaware Corporation doing business in the state of
14  California. Plaintiff is informed and believes and thereon alleges that there is no one
15  state where Google conducts a substantial predominance of its business, making its
16  principal place of business the state where it is headquartered. Network Solutions'
17  headquarters – and, thus, its principal place of business – are located at 1600
18  Amphitheatre Parkway, Mountain View, California. Accordingly, Defendant Google is a
19  citizen of Delaware and California.

20     8.     Plaintiff does not know the true names or capacities of the persons or
21  entities sued herein as DOES 1 to 10, inclusive, and therefore sues such defendants by
22  such fictitious names. Plaintiff is informed and believes and thereon alleges that each of
23  the DOE defendants is in some manner legally responsible for the damages suffered by
24  Plaintiff and the members of the class as alleged herein. Plaintiff will amend this
25  complaint to set forth the true names and capacities of these defendants when they have
26  been ascertained, along with appropriate charging allegations, as may be necessary.
27
28

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

— 3 —

**CLASS ACTION COMPLAINT**

## JURISDICTION AND VENUE

9.    This Court has diversity subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d) in that this is a civil action filed under Rule 23 of the Federal Rules of Civil Procedure and members of the class of Plaintiffs are citizens of a State different from defendant Google, and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs. See 28 U.S.C. § 1332(d)(2), (6).

10.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(a) in that: (1) Google resides in this judicial district; (2) a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district; and (3) Google is subject to personal jurisdiction in the Northern District of California.

## FACTUAL BACKGROUND

11.    Google offers advertisers two types of ads. The first is a search ad. When an Internet user uses Google to search for a specific term or term, Google will display the ads of advertisers who have bid for those particular keywords. The second type of ad is contextual based ads, or content ads. These ads are shown on third party websites that have content that matches the keywords bid on by the advertiser. For example, an ad for a hardware store may be shown on a website that has content about home improvement projects.

12.    In order to advertise with Google, advertisers must register with AdWords, Google's advertising program. The process of registering with AdWords involves an online process that begins by clicking on the "Advertising Programs" link on Google's homepage. After selecting to register with AdWords and the desired version, the advertiser moves to the initial step of the sign-up process. First, the advertiser selects the target language and geographic location. Then, the advertiser creates the ad that will be placed on Google's website or on third party websites and selects the desired keywords. The advertiser then selects the maximum daily budget and the maximum CPC bid. Here,

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

1   the advertiser has two choices, the "Default CPC bid" and the "CPC content bid". Next
2   to the "CPC content bid" input is the word "optional".

3       12.     Nowhere on this page, or anywhere in the registration process, is there the
4   option to opt-out of content ads.

5       13.     Advertisers who do not want to pay for ads placed on third party websites,
6   therefore leave the "CPC content bid" input blank, reasonably believing that the word
7   "optional" means that having content ads placed on third party websites is optional.

8       14.     Google, however, fails to inform that an advertiser who leaves this
9   "optional" input blank will nonetheless be charged for third party content ads. By
10  redefining the universally understood meaning of an input form left blank, and then
11  intentionally concealing this redefinition, Google has fraudulently taken millions of
12  dollars from Plaintiff and the members of the class.

13      15.     Plaintiff enrolled in AdWords in November 2006. Plaintiff created an
14  advertising campaign for his private investigation business. Plaintiff set the desired bids
15  for his ads, and, not wanting to pay for ads placed on third part content sites, left the CPC
16  content bid input blank. Plaintiff, like any reasonable consumer, expected that leaving an
17  input blank would indicate that he did not want to bid on content ads. This expectation
18  was supported by the fact that Plaintiff was not given the option of opting out of content
19  bids during the advertising campaign creation process.

20      16.     Despite leaving the CPC content bid input blank, Google charged Plaintiff
21  for unwanted third party content ads.

22

23                              **CLASS ALLEGATIONS**

24      13.     <u>Description of the Class</u>: Plaintiff brings this nationwide class action on
25  behalf of himself and the Class defined as follows:

26              *All persons or entities located within the United States*
27              *who bid on a keyword though AdWords, left the "CPC*
28              *content bid" input blank, and were charged for content ads.*

— 5 —

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

14. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

15. Plaintiff reserves the right to modify the class description and the class period based on the results of discovery.

16. Numerosity: The proposed Class is so numerous that individual joinder of all its members is impracticable. Due to the nature of the trade and commerce involved, however, Plaintiff believes that the total number of class members is at least in the hundreds of thousands and that the members of the Class are numerous and geographically dispersed across the United States. While the exact number and identities of class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the court.

17. Common Questions of Law and Fact Predominate: There are many questions of law and fact common to the representative Plaintiff and the proposed Class, and those questions substantially predominate over any individualized questions that may affect individual class members. Common questions of fact and law include, but are not limited to, the following:

a. Whether Google charges for advertisements placed on third party websites when the "optional" CPC content bid input is left blank, and whether Google discloses this material fact to consumers;

b. Whether Google failed to disclose that when the "optional" CPC content bid input is left blank, Google will still charge for ads placed on third party websites;

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
Tel: (213) 217-5000
FAX (213) 217-5010

— 6 —

CLASS ACTION COMPLAINT

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
Tel (213) 217-5000
FAX (213) 217-5010

c.    Whether or not Plaintiff and the members of the Class have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relief that should be afforded;

d.    Whether Google engaged in unfair, unlawful and/or fraudulent business practices; and

e.    Whether Google failed to disclose material facts about the subject Google Adwords program.

18.    Typicality:  Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since they were charged for ads although they also left the "optional" CPC content bid blank..

19.    Adequacy of Representation:  Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex and class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interests adverse to those of the proposed Class.

20.    Superiority of a Class Action:  Plaintiff and the members of the Class have suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy as individual joinder of all members of the Class is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of

— 7 —

1   all class members' claims in a single forum. The conduct of this action as a class action
2   conserves the resources of the parties and of the judicial system, and protects the rights of
3   the class member. Furthermore, for many, if not most, Class members, a class action is
4   the only feasible mechanism that allows an opportunity for legal redress and justice.

5       21.    Adjudication of individual Class members' claims with respect to the
6   Defendant would, as a practical matter, be dispositive of the interests of other members
7   not parties to the adjudication and could substantially impair or impede the ability of
8   other Class members to protect their interests.

9

## FIRST CAUSE OF ACTION
### UNJUST ENRICHMENT

12      22.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and,
13  to the extent necessary, pleads this cause of action in the alternative.

14      23.    Through the actions described above, Google has received money
15  belonging to Plaintiff and the Class through the fees collected from ads placed on third
16  party content sites when a reasonable advertiser would have believed that leaving the
17  CPC content bid input blank meant that they would not be charged for content ads.

18      24.    Additionally, Google has reaped substantial profit by concealing the fact
19  that when left blank, the "optional" CPC content bid would be set at an amount that could
20  reach the amount bid for the search bid. Ultimately, this resulted in Google's wrongful
21  receipt of profits and injury to Plaintiff and the Class. Google has benefited from the
22  receipt of such money that it would not have received but for its concealment.

23      25.    As a direct and proximate result of Google's misconduct as set forth above,
24  Google has been unjustly enriched.

25      26.    Under principles of equity and good conscience, Google should not be
26  permitted to keep the full amount of money belonging to Plaintiff and the Class which
27  Google has unjustly received as a result of its actions.

28      WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

— 8 —

**CLASS ACTION COMPLAINT**

## SECOND CAUSE OF ACTION

### FRAUDULENT CONCEALMENT

27.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

28.     Google knew at all material times that when an advertiser left the "optional" CPC content bid input blank, that advertiser would still be charged for content ad placed on third party websites. These facts were not known to Plaintiff and the Class.

29.     Google had a duty to disclose the above known material facts because it knew that these material facts were unknown to Plaintiff and the Class, that Google was in a superior position of knowledge with regard to its own technology, and Google chose to make certain representations that presented only a part of the true story and misled consumers about the subject products.

30.     Google's knowledge that advertisers would be charged for content ads placed on third party websites even when they left the "optional" CPC content bid input blank, combined with Google's knowledge that Plaintiff and the Class relied or relies upon Google to communicate the true state of facts relating to its AdWords program creates a legal obligation on Google's part to disclose to Plaintiff and the Class that leaving the "optional" CPC content bid input blank did not mean that they were not subject to charges for ads placed on third party websites.

31.     Google intentionally concealed and/or suppressed the above facts with the intent to defraud Plaintiff and the Class.

32.     Plaintiff and the Class were unaware of the above facts and would not have acted as they did if they had known of the concealed material facts.

33.     Google's concealment of the above facts has caused damage to Plaintiff and the Class in an amount to be shown at trial.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

# THIRD CAUSE OF ACTION

## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE
## SECTIONS 17200 ET SEQ.

34. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

35. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and have lost money or property as a result of Google's actions as delineated herein.

36. Class members have suffered injury in fact and have lost money or property as a result of Google's actions as delineated herein.

37. Google's actions as alleged in this complaint constitute an unfair or deceptive practice within the meaning of California Business and Professions Code sections 17200 et seq. in that Google's actions are unfair, unlawful and fraudulent, and because Google has made unfair, deceptive, untrue or misleading statements in advertising media, including the Internet, within the meaning of California Business and Professions Code sections 17500 et seq.

38. Google's business practices, as alleged herein, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that consumers are not informed that they will be charged for ads placed on third party websites even though the "optional" CPC content bid input was left blank.

39. Google's business practices, as alleged herein, are unlawful because the conduct constitutes fraudulent concealment, as well as the other causes of action herein alleged.

40. Google's practices, as alleged herein, are fraudulent because they are likely to deceive consumers.

41. Google's wrongful business acts alleged herein constituted, and constitute, a continuing course of conduct of unfair competition since Google is marketing and selling their products in a manner that is likely to deceive the public.

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
FAX (213) 217-5019
(213) 217-5019

— 10 —

42. Google's business acts and practices, as alleged herein, have caused injury to Plaintiff, the Class and the public.

43. Pursuant to section 17203 of the California Business and Professions Code, Plaintiffs and the class seek an order of this court enjoining Google from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including those acts set forth in the complaint. Plaintiff and the Class also seek an order requiring Google to make full restitution of all moneys it wrongfully obtained from Plaintiff and the Class.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff and members of the proposed Class request that the court enter an order or judgment against Defendant as follows:

1. Certification of the proposed Class and notice thereto to be paid by Defendant;

2. Adjudge and decree that Defendant has engaged in the conduct alleged herein;

3. For restitution and disgorgement on certain causes of action;

4. For an injunction ordering Defendant to cease and desist from engaging in the unfair, unlawful, and/or fraudulent practices alleged in the Complaint;

5. For compensatory and general damages according to proof on certain causes of action;

6. For special damages according to proof on certain causes of action;

7. For both pre and post-judgment interest at the maximum allowable rate on any amounts awarded;

8. Costs of the proceedings herein;

9. Reasonable attorneys fees as allowed by statute; and

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

10.  Any and all such other and further relief that this Court may deem just and proper.

Dated: April __22__, 2008          KABATECK BROWN & KELLNER, LLP

By: _____
BRIAN S. KABATECK
RICHARD L. KELLNER
ALFREDO TORRIJOS
*Attorneys for Plaintiff and proposed class*

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in the instant action.

Dated: April _22_, 2008

KABATECK BROWN & KELLNER, LLP

By: _____
BRIAN S. KABATECK
RICHARD L. KELLNER
ALFREDO TORRIJOS
*Attorneys for Plaintiff and proposed class*

Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, California 90017
(213) 217-5000
FAX (213) 217-5010

**EXHIBIT C**

1   BRIAN S. KABATECK  SBN 152054
    RICHARD L. KELLNER  SBN 171416
2   ALFREDO TORRIJOS  SBN 222458
    KABATECK BROWN KELLNER LLP
3   644 South Figueroa Street
    Los Angeles, California  90017
4   Telephone: (213) 217-5000
    Facsimile: (213) 217-5010
5
    Attorneys for Plaintiff and the Proposed Class
6   DAVID ALMEIDA

7
    KEKER & VAN NEST, LLP
8   DARALYN J. DURIE - #169825
    DAVID J. SILBERT - #173128
9   RYAN M. KENT - #220441
    ALYSE BERTENTHAL - #253012
10  710 Sansome Street
    San Francisco, CA  94111-1704
11  Telephone:  (415) 391-5400                    ***E-FILED - 10/10/08***
    Facsimile:  (415) 397-7188
12
    Attorneys for Defendant
13  GOOGLE INC., a Delaware corporation

14

15                       UNITED STATES DISTRICT COURT

16                      NORTHERN DISTRICT OF CALIFORNIA

17                             SAN JOSE DIVISION

18

19  DAVID ALMEIDA, individually and on          Case No. C 08-02088 RMW (PVTx)
    behalf of all others similarly situated,
20                                              **[] SCHEDULING AND CASE
                                 Plaintiff,      MANAGEMENT ORDER**
21
            v.
22
    GOOGLE, INC., a Delaware corporation; and
23  DOES 1 through 10, inclusive,

24                               Defendants.

25

26

27

28

Plaintiff David Almeida and defendant Google Inc. came on for a case management conference on August 15, 2008.  Having considered the Joint Case Management Statement, the arguments presented by counsel and good cause appearing therefore, the Court hereby orders as follows:

## I.  ALTERNATIVE DISPUTE RESOLUTION

The parties have filed a Stipulation and Proposed Order selecting mediation as their preferred ADR process and will complete said mediation process no later than June 9, 2009.

## II.  DISCLOSURES

Google Inc. will make the disclosures required by Rule 26, Federal Rule of Civil Procedure within thirty days of the case management conference.

## III.  DISCOVERY

The parties may pursue all discovery methods available under the Federal Rules of Civil Procedure (including depositions, interrogatories, requests for admission, and requests for production) and will follow the presumptive limits set forth in those Rules, except that the Court orders the limit on depositions made by F.R.Civ.P. 30(a)(2)(A)(i) be changed from a maximum of ten depositions to an equivalent maximum hourly quota of 70 hours to be used at the discretion of each party.

The parties shall abide by the following discovery schedule:

| | |
|---|---|
| November 2, 2009 | Non-expert discovery cut-off |
| November 9, 2009 | Expert opening reports |
| November 23, 2009 | Expert opposition reports |
| December 7, 2009 | Expert reply reports |
| December 14, 2009 | Expert discovery cut-off |

423247.01

1  **IV.    CLASS CERTIFICATION BRIEFING SCHEDULE**

2    The following schedule shall apply to Plaintiff's anticipated motion for class
   certification:

3

4  April 3, 2009          Last day for Plaintiff to file and serve: (1) expert report(s) on class
                          certification; and (2) motion for class certification.

5

6  May 8, 2009            Last day for Defendant to file and serve:  (1) expert report(s) on class
                          certification; and (2) opposition to motion for class certification.

7  May 22, 2009           Last day for Plaintiff to file and serve reply in support of motion for
                          class certification.

8

9  June 19, 2009          Hearing on motion for class certification.

10    IT IS SO ORDERED.

11

12  Dated: 10/10/08

13

14

15                                      By: _Ronald M. Whyte_____

16                                          The Honorable Ronald M. Whyte
                                            United States District Court Judge

17

18

19

20

21

22

23

24

25

26

27

28

2

423247.01

**EXHIBIT D**

1   KEKER & VAN NEST, LLP
    DARALYN J. DURIE - #169825
2   DAVID J. SILBERT - #173128
    ALYSE BERTENTHAL - #253012
3   REBEKAH PUNAK - #248588
    710 Sansome Street
4   San Francisco, CA 94111-1704
    Telephone: (415) 391-5400
5   Facsimile: (415) 397-7188

6   Attorneys for Defendant
    GOOGLE INC., a Delaware corporation

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12
    DAVID ALMEIDA, individually and on          Case No. C 08-02088 RMW
13  behalf of all others similarly situated,
                                                **DEFENDANT GOOGLE INC.'S**
14                              Plaintiff,       **OBJECTIONS AND RESPONSES TO**
                                                **PLAINTIFF'S FIRST SET OF**
15        v.                                     **INTERROGATORIES**

16  GOOGLE, INC., a Delaware corporation; and
    DOES 1 through 10, inclusive,
17
                                Defendants.
18

19

20
    REQUESTING PARTY:        PLAINTIFF DAVID ALMEIDA
21
    RESPONDING PARTY:        DEFENDANT GOOGLE, INC.
22
    SET NO.:                 ONE
23

24

25

26

27

28

1    Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Google

2  Inc. ("Google") responds and objects to Plaintiff's First Set of Interrogatories as follows:

3                                    **GENERAL OBJECTIONS**

4    Google makes the following General Objections to Plaintiff's First Set of Interrogatories,

5  which apply to each Interrogatory regardless of whether the General Objections are specifically

6  incorporated in the Specific Objections and Responses below:

7

8    1.    Google objects to the requests to the extent that they seek information that was

prepared in anticipation of litigation, constitutes attorney work product, discloses mental

9  impressions, conclusions, opinions or legal theories of any attorney for or other representative of

10  Google, contains privileged attorney-client communications, or is otherwise protected from

11  disclosure by any other privileges, immunities, laws, or rules.  Any disclosure of such protected

12  or privileged information is inadvertent and shall not be construed as a waiver of those privileges

13  or protections.  Google reserves the right to correct the record with regard to any such

14  inadvertent disclosure.

15    2.    Google objects to Plaintiff's First Set of Interrogatories and the Definitions and

16  Instructions attached thereto to the extent they purport to impose upon Google duties and/or

17  responsibilities greater than those imposed by the Federal Rules of Civil Procedure, the local

18  rules and any orders of the presiding Court, or other applicable law.  Google will comply with its

19  obligations under the Rules and the law, which Plaintiff has no authority to increase or alter.

20    3.    Google objects to each request to the extent that it seeks information protected

21  from discovery by the right to privacy or any other applicable privilege, including the right to

22  privacy of third parties, or by Google's obligations under applicable law to protect such

23  confidential information.

24    4.    Google objects to each request to the extent that it seeks the disclosure of

25  confidential, proprietary, or trade-secret information.  Google will provide such information only

26  pursuant to an appropriate protective order.

27    5.    Google objects to each request to the extent that it calls for a legal conclusion.

28

1

DEFENDANT GOOGLE INC.'S RESPONSES TO PLAINTIFF FIRST SET OF INTERROGATORIES
CASE NO. C 08-02088 RMW

6.      Google objects to these requests to the extent that they are compound.

7.      Google objects to each definition, instruction or request to the extent that it seeks documents or information (1) not currently in Google's possession, custody, or control; (2) that Google cannot locate after a reasonably diligent search; or (3) that refer to persons, entities, or events not known to Google.  Such instructions, definitions, or requests are objectionable where they seek to require more of Google than any obligation imposed by the Federal Rules of Civil Procedure; subject Google to unreasonable and undue annoyance, oppression, burden, and expense; and/or seek to impose upon Google an obligation to investigate or discover information or materials from sources equally accessible to Plaintiffs.

8.      Google objects to the requests to the extent that they are unduly burdensome, overly broad, oppressive, calls for information that is neither relevant to any issue in the above-captioned litigation nor reasonably calculated to lead to the discovery of admissible evidence, and/or constitutes an abuse of process in view of the cost necessary to investigate and/or identify information weighed against Plaintiff's need for such information.

9.      Google objects to each request, to the extent that it is vague, ambiguous, or confusing, by failing to adequately define terms or by failing to describe the documents or information sought with reasonable particularity.  Google objects to the requests and definitions, to the extent that they purport to attribute any special or unusual meaning to any terms or phrases on the ground that such enlargement, expansion, or alteration renders such a term or request vague, ambiguous, unintelligible, overly broad, unduly burdensome, and/or uncertain.

10.     Google objects to the requests to the extent that each request is duplicative of another request.

11.     Consistent with Rule 33(d) of the Federal Rules of Civil Procedure, Google objects to providing responses to requests that can be derived from documents that have or will be produced (when requested in compliance with Rules 26 and 34) and where the burden to derive such information is substantially the same for Plaintiff as it is for Google.

12.     Google objects to the requests to the extent that they seek to restrict the facts, witnesses, and evidence on which Google may rely on at trial.  By responding and objecting to

2

431711.03

1  these interrogatories, Google does not intend to, and does not, limit the evidence on which it may

2  rely to support its contentions and defenses at trial, or to rebut or impeach contentions,

3  assertions, and evidence presented by Plaintiffs.

4       13.    Google objects to the requests to the extent that they seek information to which

5  Plaintiff already has access, or information that is publicly available.

6       14.    Google objects to the definition of "Google," "You," and "Your," to the extent

7  that it improperly expands the scope of discovery by seeking information and documents that are

8  not currently in the possession, custody, or control of Google. Google responds on behalf of

9  itself and no other person or entity. Google also objects to this definition to the extent the

10  definition purports to include Google's outside counsel, and to the extent the definition purports

11  to include "agents," "representatives," "all persons" or "other persons acting or purporting to

12  act," because those phrases are vague and overbroad. Google also objects to the extent that this

13  definition purports to include counsel as "agents" of Google.

14       15.    Google objects to the definition of "Third Party" to the extent that it improperly

15  expands the scope of discovery by seeking information and documents that are not currently in

16  the possession, custody, or control of Google.

17       16.    Google objects to the definition of "AdWords Customer" to the extent that it

18  purports to include the term "established" on the ground that the term "established" is vague,

19  ambiguous and overbroad. In addition, Google objects to the definition of "AdWords Customer"

20  as overbroad to the extent it includes customers yet unknown to Google.

21       17.    Google further objects to the extent that the requests seek a complete and

22  exhaustive response regarding any issue in this litigation, before discovery has been completed.

23  Any responses Google makes to any proper discovery requests by Plaintiffs will remain at all

24  times subject to additional or different information that discovery or further investigation,

25  analysis, or recollection may disclose. Accordingly, Google reserves the right to amend or

26  supplement its objections and responses.

27       18.    Google's responses are made based on its understanding and interpretation of

28  each request. Google reserves the right to supplement its objections and responses should

1    Plaintiffs subsequently put forth an interpretation of any request that differs from that of Google.

2        19.    Google reserves the right to make any use of, or to introduce at any hearing or

3    trial, information that bears on Google's responses to these requests, but discovered subsequent

4    to Google's responses herein.

5        20.    The responses below shall not be construed as an admission as to the relevance or

6    admissibility of any statement or characterization contained in any request.  The fact that Google

7    has answered part or all of any Request is not intended to be, and shall not be construed as, a

8    waiver by Google of any part of any objection to any Request. Google reserves all objections,

9    including without limitation objections as to competency, relevance, materiality, privilege,

10   authenticity, or admissibility.

11       21.    Google reserves the right to object on any ground at any time to such other or

12   supplemental discovery requests as Plaintiffs may propound involving or relating to the same

13   subject matter of these requests.

14                  **SPECIFIC RESPONSES AND OBJECTIONS**

15   **INTERROGATORY NO. 1:**

16       Identify the date when You first permitted AdWords Customers to separately set Content

17   Bids.

18   **RESPONSE TO INTERROGATORY NO. 1:**

19       Google incorporates by reference its general objections stated above.  Subject to the

20   foregoing objections, and without waiving them, Google responds as follows:

21       In or around November 2005, Google launched a feature that permitted AdWords

22   advertisers who chose to enable the feature to set a separate CPC Content Bid.

23   **INTERROGATORY NO. 2:**

24       Identify the date when You first included a CPC Content Bid Input on the Signup

25   Bidding Page.

26   **RESPONSE TO INTERROGATORY NO. 2:**

27       Google incorporates by reference its general objections stated above.  Subject to the

28   foregoing objections, and without waiving them, Google responds as follows:

DEFENDANT GOOGLE INC.'S RESPONSES TO PLAINTIFF FIRST SET OF INTERROGATORIES
CASE NO. C 08-02088 RMW

431711.03

1    In or around October 2007, Google launched an experimental program under which

2  some—but not all—AdWords customers viewed a CPC Content Bid Input on the Signup

3  Bidding Page.

4  **INTERROGATORY NO. 3:**

5    Identify the number of AdWords Customers within the United States for each month and

6  year from the date identified in Interrogatory No. 2 up to and including the present who initiated

7  one or more AdWords Campaigns where the AdWords Customer left the CPC Content Bid Input

8  blank on the Signup Bidding Page.

9  **RESPONSE TO INTERROGATORY NO. 3:**

10    Google incorporates by reference its general objections stated above.  In particular,

11  Google objects that this Interrogatory is overly broad and extremely burdensome.  Google further

12  objects that this Interrogatory calls for confidential, commercially sensitive, proprietary

13  information which Google will not disclose without an appropriate protective order.  Google is

14  willing to meet and confer with Plaintiff about an appropriate response to this Interrogatory.

15  **INTERROGATORY NO. 4:**

16    Identify the number of AdWords Customers within the United States for each month and

17  year from the date identified in Interrogatory No. 2 up to and including the present who initiated

18  one or more AdWords Campaigns where the AdWords Customer left the CPC Content Bid Input

19  blank on the Signup Bidding Page and where the AdWords Customer was charged for clicks that

20  those ads received on Content Network sites.

21  **RESPONSE TO INTERROGATORY NO. 4:**

22    Google incorporates by reference its general objections stated above.  In particular,

23  Google objects that this Interrogatory is overly broad and extremely burdensome.  Google further

24  objects that this Interrogatory calls for confidential, commercially sensitive, proprietary

25  information which Google will not disclose without an appropriate protective order.  Google is

26  willing to meet and confer with Plaintiff about an appropriate response to this Interrogatory.

27  **INTERROGATORY NO. 5:**

28    Identify the number of AdWords Campaigns for each month and year from the date

431711.03

1   identified in Interrogatory No. 2 up to and including the present that were initiated by AdWords

2   Customers located within the United States and where the AdWords Customer left the CPC

3   Content Bid Input blank on the Signup Bidding Page.

4   **RESPONSE TO INTERROGATORY NO. 5:**

5       Google incorporates by reference its general objections stated above.  In particular,

6   Google objects that this Interrogatory is overly broad and extremely burdensome.  Google further

7   objects that this Interrogatory seeks information that is not reasonably calculated to lead to

8   discovery of admissible evidence.  Google further objects that this Interrogatory calls for

9   confidential, commercially sensitive, proprietary information which Google will not disclose

10   without an appropriate protective order.  Google is willing to meet and confer with Plaintiff

11   about an appropriate response, if any, to this Interrogatory.

12   **INTERROGATORY NO. 6:**

13       Identify the total amount charged to AdWords Customers within the United States for

14   each month and year from the date identified in Interrogatory No. 2 up to and including the

15   present for clicks that AdWords ads received on Content Network sites where the AdWords

16   Customer left the CPC Content Bid Input blank for those ads.

17   **RESPONSE TO INTERROGATORY NO. 6:**

18       Google incorporates by reference its general objections stated above.  In particular,

19   Google objects that this Interrogatory is overly broad and extremely burdensome.  Google further

20   objects that this Interrogatory calls for confidential, commercially sensitive, proprietary

21   information which Google will not disclose without an appropriate protective order.  Google is

22   willing to meet and confer with Plaintiff about an appropriate response to this Interrogatory.

23   **INTERROGATORY NO. 7:**

24       Identify the number of AdWords Customers within the United States for each month and

25   year from the date identified in Interrogatory No. 2 up to and including the present who initiated

26   one or more AdWords Campaigns where the AdWords Customer set the CPC Content Bid Input

27   on the Signup Bidding Page to zero.

28

DEFENDANT GOOGLE INC.'S RESPONSES TO PLAINTIFF FIRST SET OF INTERROGATORIES
CASE NO. C 08-02088 RMW

431711.03

1  **RESPONSE TO INTERROGATORY NO. 7:**

2      Google incorporates by reference its general objections stated above.  Subject to the

3  foregoing objections, and without waiving them, Google responds as follows:

4      If an Adwords customer attempted to set the CPC Content Bid Input on the Signup

5  Bidding Page to zero, he received a message instructing him to set the bid to a value greater than

6  zero.

7  **INTERROGATORY NO. 8:**

8      Identify the number of AdWords Customers for each month and year from the date

9  identified in Interrogatory No. 2 up to and including the present who changed their Content

10  Network bid to zero or opted out of the Content Network after being charged for clicks that

11  AdWords ads received on Content Network sites where the AdWords Customer left the CPC

12  Content Bid Input blank on the Signup Bidding Page.

13  **RESPONSE TO INTERROGATORY NO. 8:**

14      Google incorporates by reference its general objections stated above.  In particular,

15  Google objects that this Interrogatory is overly broad and extremely burdensome.  Google further

16  objects that this Interrogatory calls for confidential, commercially sensitive, proprietary

17  information which Google will not disclose without an appropriate protective order.  Google is

18  willing to meet and confer with Plaintiff about an appropriate response to this Interrogatory.

19  **INTERROGATORY NO. 9:**

20      Identify and describe the procedure or procedures, as they existed during the month of

21  November 2006, by which You set the Content Bid and the cost-per-click charged to AdWords

22  Customers for clicks to AdWords ads placed on the Content Network when the AdWords

23  Customer had left the CPC Content Bid Input blank.

24  **RESPONSE TO INTERROGATORY NO. 9:**

25      Google incorporates by reference its general objections stated above.  In particular,

26  Google objects that this Interrogatory is not reasonably calculated to lead to discovery of

27  admissible evidence, since it asks about procedures that were in place during a specific period

28  (the month of November 2006) that is before the CPC Content Bid Input appeared on the Signup

7

1  Bidding Page, which is the subject of Plaintiff's Complaint.

2  **INTERROGATORY NO. 10:**

3      Identify any and all changes made to the procedure or procedures identified in

4  Interrogatory No. 9, and the date(s) when these changes were implemented, regardless of

5  whether those changes occurred prior to or subsequent to November 2006.

6  **RESPONSE TO INTERROGATORY NO. 10:**

7      Google incorporates by reference its general objections stated above.  In particular,

8  Google objects that this Interrogatory is overly broad and not reasonably calculated to lead to

9  discovery of admissible evidence to the extent it asks about procedures that were in place before

10  the CPC Content Bid Input appeared on the Signup Bidding Page.  Subject to the foregoing

11  objections, and without waiving them, Google responds as follows:

12      Since October 2007, if an AdWords customer did not set a specific content bid for ads

13  running on the content network, his bid was set to "Auto" by default.  Auto bids are based on an

14  average of all keyword cost-per-click ("CPC") bids, including default ad group CPCs and

15  individual keyword CPCs, for the ad group.  The customer can change this automatic bid, or opt

16  out of the content network altogether, at any time.  To determine the cost-per-click charged,

17  Google uses data available to it to discount the cost of content network clicks based on their

18  effectiveness compared to a search click.  Thus, for example, if Google's data shows that a click

19  from a content page is less likely to turn into actionable business results—such as online sales,

20  registrations, phone calls, or newsletter signups—it reduces the price that the customer pays for

21  that click.

22  **INTERROGATORY NO. 11:**

23      Identify and describe the procedure or procedures, if any, as they existed during the

24  month of November 2006, by which AdWords Customers could opt-out during the Advertising

25  Campaign Creation Process from having AdWords ads placed on the Content Network.

26  **RESPONSE TO INTERROGATORY NO. 11:**

27      Google incorporates by reference its general objections stated above.  In particular,

28  Google objects that this Interrogatory is not reasonably calculated to lead to discovery of

431711.03

1   admissible evidence, since it asks about procedures that were in place during a specific period

2   (the month of November 2006) that is before the CPC Content Bid Input appeared on the Signup

3   Bidding Page, which is the subject of Plaintiff's Complaint.

4   **INTERROGATORY NO. 12:**

5       Identify and describe any and all changes made to the procedure or procedures identified

6   in Interrogatory No. 11, and the date(s) when these changes were implemented, regardless of

7   whether those changes occurred prior to or subsequent to November 2006.

8   **RESPONSE TO INTERROGATORY NO. 12:**

9       Google incorporates by reference its general objections stated above.  In particular,

10   Google objects that this Interrogatory is overly broad and not reasonably calculated to lead to

11   discovery of admissible evidence to the extent it asks about procedures that were in place before

12   the CPC Content Bid Input appeared on the Signup Bidding Page.  Subject to the foregoing

13   objections, and without waiving them, Google responds as follows:

14       At all relevant times, AdWords customers have been free to turn the content network

15   "off" by following simple and clear procedures after an ad campaign has been created, but

16   generally not during the Advertising Campaign Creation Process itself.  In some contexts,

17   however, the customer could do so during the Campaign Creation Process such as when an

18   advertiser created a new campaign that matched the settings of an existing campaign, where the

19   content network was turned "off" in the existing campaign.  In addition, for a small number of

20   current advertisers involved in a beta test, the initial campaign creation and the choice of

21   settings, including the option to opt out of the content network, appear on the same page.

22   **INTERROGATORY NO. 13:**

23       Identify and describe any procedure or procedures, if any, by which You track complaints

24   from and/or provide refunds to AdWords Customers who were charged for clicks to AdWords

25   ads placed on the Content Network but who left the CPC Content Bid Input blank.

26   **RESPONSE TO INTERROGATORY NO. 13:**

27       Google incorporates by reference its general objections stated above.  In particular,

28   Google objects to this Interrogatory as compound, since it calls for answers to multiple discrete

1  questions or subparts.  Google further objects to this Interrogatory to the extent that it seeks

2  information protected by the attorney-client privilege and/or work product doctrine.  Google also

3  objects to this Interrogatory as overly broad to the extent it seeks information about procedures

4  in place before the CPC Content Bid Input appeared on the Signup Bidding Page, which is the

5  subject of Plaintiff's Complaint.  Subject to the foregoing objections, and without waiving them,

6  Google responds as follows:

7          Google tracks certain advertising-related contacts in a database that *may* contain emails

8  (which may or may not be "complaints") from customers who were charged for clicks on the

9  content network after they left the CPC Content Bid Input on the Signup Bidding Page blank.

10  Other contacts about that subject, including, for example, any telephonic contacts, may or may

11  not be tracked.  When requests for refunds are received, they are evaluated on a case-by-case

12  basis.

13

14  Dated:  December 5, 2008                    KEKER & VAN NEST, LLP

15

16

17                                              By: _____
                                                DAVID J. SILBERT
18                                              Attorneys for Defendant
                                                GOOGLE, INC., a Delaware corporation

19

20

21

22

23

24

25

26

27

28

DEFENDANT GOOGLE INC.'S RESPONSES TO PLAINTIFF FIRST SET OF INTERROGATORIES
CASE NO. C 08-02088 RMW

431711.03

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made.  I am over the age of eighteen years and not a party to the within action.  My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California  94111.

On December 5, 2008, I served the following document(s):

**DEFENDANT GOOGLE, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format.  The transmission was reported as complete and without error

and

by regular **UNITED STATES MAIL** by placing a true and correct copy in a sealed envelope addressed as shown below.  I am readily familiar with the practice of Keker & Van Nest, LLP for collection and processing of correspondence for mailing.  According to that practice, items are deposited with the United States Postal Service at San Francisco, California on that same day with postage thereon fully prepaid.  I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter date is more than one day after the date of deposit for mailing stated in this affidavit.

Brian S. Kabateck, Esq.
Richard L. Kellner, Esq.
Alfredo Torrijos Esq.
KABATECK BROWN KELLNER, LLP
644 South Figueroa Street
Los Angeles, CA  90017
TEL:    (213) 217-5000
FAX:   (213) 217-5010
EMAIL:        bsk@kbklawyers.com
EMAIL:        rlk@kbklawyers.com
EMAIL:        at@kbklawyers.com

Executed on December 5, 2008, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

*Lauren Hartz-Lewis*
Lauren Hartz-Lewis

432245.01

**EXHIBIT E**

1    KEKER & VAN NEST, LLP
     DARALYN J. DURIE - #169825
2    DAVID J. SILBERT - #173128
     ALYSE BERTENTHAL - #253012
3    REBEKAH PUNAK - #248588
     710 Sansome Street
4    San Francisco, CA  94111-1704
     Telephone:  (415) 391-5400
5    Facsimile:  (415) 397-7188

6    Attorneys for Defendant
     GOOGLE INC., a Delaware corporation
7

8                        UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

12
     DAVID ALMEIDA, individually and on          Case No. C 08-02088 RMW
13   behalf of all others similarly situated,
                                                  **DEFENDANT GOOGLE INC.'S**
14                              Plaintiff,         **RESPONSES TO PLAINTIFF'S FIRST**
                                                  **SET OF REQUESTS FOR PRODUCTION**
15        v.                                      **OF DOCUMENTS**

16   GOOGLE, INC., a Delaware corporation; and
     DOES 1 through 10, inclusive,
17
                                Defendants.
18

19

20
     REQUESTING PARTY:      PLAINTIFF DAVID ALMEIDA
21
     RESPONDING PARTY:      DEFENDANT GOOGLE, INC.
22
     SET NO.:               ONE
23

24

25

26

27

28

---

DEFENDANT GOOGLE INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS
CASE NO. C 08-02088 RMW

431715.02

1    Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Google

2  Inc. ("Google") responds and objects to Plaintiff's First Set of Requests for Production as

3  follows:

4                                    **GENERAL OBJECTIONS**

5    1.    Google objects to the requests, definitions and instructions to the extent that they

6  seek to impose on Google any obligations exceeding or differing from the requirements of the

7  Federal Rules of Civil Procedure, the Local Rules and any orders of the presiding Court, or other

8  applicable law.  Google will comply with its obligations under the Rules and the law, which

9  Plaintiff has no authority to increase or alter.

10    2.    Google objects to the definitions, instructions, and requests to the extent that they

11  seek information that was prepared in anticipation of litigation, constitutes attorney work

12  product, discloses mental impressions, conclusions, opinions or legal theories of any attorney for

13  or other representative of Google, contains privileged attorney-client communications, or is

14  otherwise protected from disclosure by any other privileges, laws, or rules.  Google shall not

15  produce such material in response to Plaintiff's requests.  Any disclosure of such protected or

16  privileged information is inadvertent and shall not be construed as a waiver of any applicable

17  privileges or protections.  Google reserves the right to correct the record with regard to any such

18  inadvertent disclosure.

19    3.    Google objects to the instructions, definitions, and requests to the extent that they

20  seek documents constituting or containing confidential or proprietary information, trade secrets,

21  intellectual property, or commercially sensitive information.  To the extent that any such

22  documents may be produced, the production will occur only following and pursuant to the entry

23  of a suitable confidentiality agreement and only to the extent Google can do so consistent with its

24  legal and confidentiality obligations.

25    5.    Google objects to each request to the extent that it seeks information protected

26  from discovery by any right to privacy or any other applicable privilege, including the right to

27  privacy of third parties, or by Google's obligations under applicable law to protect such

28  confidential information.  To the extent that any such documents may be produced, the

1

431715.02

1   production will occur only following and pursuant to the entry of a suitable confidentiality

2   agreement and only to the extent Google can do so consistent with its legal and confidentiality

3   obligations.

4         6.     Google objects to the instructions, definitions, and requests to the extent they seek

5   documents constituting or containing information protected from disclosure by any statute, rule,

6   or regulation.  Google will provide such material in response only to the extent it can do so

7   consistent with its legal obligations.

8         7.     Google objects to all instructions, definitions and requests to the extent that they

9   seek documents or information (1) not currently in Google's possession, custody, or control, or

10  (2) that Google cannot locate after a reasonably diligent search.  Google also objects to

11  Plaintiffs' instructions, definitions, or requests to the extent they seek in any other way to subject

12  Google to unreasonable and undue annoyance, oppression, burden, and expense; and/or seek to

13  impose upon Google an obligation to investigate or discover information or materials from

14  sources equally accessible to Plaintiff.

15        8.     Google objects to the definitions, instructions, and requests to the extent they seek

16  information readily available through public sources or records, on the grounds that such

17  requests unreasonably subject Google to undue burden and expense.

18        9.     Google objects to the instructions, definitions, and requests as overly broad,

19  unduly burdensome, cumulative and duplicative to the extent that they seek the production of

20  "all" and "any" documents of a specified type or nature, when a limited number of such

21  documents will provide the requested information.  Google also objects to the instructions,

22  definitions, and requests as overly broad, vague and ambiguous, and not reasonably calculated to

23  lead to the discovery of admissible evidence, to the extent that they seek information regarding

24  "any" or "all" persons, entities, objects or events.

25       10.    Google objects to the instructions, definitions, and requests to the extent they seek

26  electronically stored information that is not reasonably accessible by Google because of undue

27  burden or cost (e.g., documents stored on back-up tape or other systems for archival or disaster

28  recovery purposes, data residing in hardware buffer memories, deleted files that have not been

2

431715.02

1    fully overwritten, replica data resulting from automatic back-up functions, etc.).

2         11.    Google objects to the instructions, definitions, and requests to the extent they

3    require Google to provide Plaintiffs with direct access to Google's computer systems or

4    hardware, including but not limited to active databases, servers, desktop computers, laptops, hard

5    drives, PDAs, blackberries, or cell phones.

6         12.    Google objects to the requests, definitions, and instructions to the extent that they

7    seek to restrict the facts, witnesses, and evidence on which Google may rely on at trial.  By

8    responding and objecting to these requests, Google does not intend to, and does not, limit the

9    evidence on which it may rely to support its contentions and defenses at trial, or to rebut or

10   impeach contentions, assertions, and evidence presented by Plaintiffs.  Furthermore, Google

11   reserves the right to supplement or amend its responses and objections.

12        13.    Googles objects to each request to the extent that it calls for a legal conclusion.

13        14.    Google objects to the definitions and instructions to the extent such definitions

14   and instructions purport to enlarge, expand, or alter in any way the plain meaning and scope of

15   any specific term or specific requests on the ground that such enlargement, expansion, or

16   alteration renders the term or request vague, ambiguous, unintelligible, overly broad, unduly

17   burdensome, and/or uncertain.

18        15.    Google objects to the definition of "Google," "You," and "Your," to the extent

19   that it improperly expands the scope of discovery by seeking information and documents that are

20   not currently in the possession, custody, or control of Google.  Google responds on behalf of

21   itself and no other person or entity.  Google also objects to this definition to the extent the

22   definition purports to include Google's outside counsel, and to the extent the definition purports

23   to include "agents," "representatives," "all persons" or "other persons acting or purporting to

24   act," because those phrases are vague and overbroad.  Google also objects to the extent that this

25   definition purports to include counsel as "agents" of Google.

26        16.    Google objects to the definition of "Third Party" to the extent that it improperly

27   expands the scope of discovery by seeking information and documents that are not currently in

28   the possession, custody, or control of Google.

3

431715.02

17.     Google objects to the definition of "AdWords Customer" to the extent that it purports to include the term "established" on the ground that the term "established" is vague, ambiguous and overbroad.  In addition, Google objects to the definition of "AdWords Customer" as overbroad to the extent it includes customers yet unknown to Google.

18.     Google objects to the definition of "Document" as vague, overbroad, and unduly burdensome.

19.     Google further objects to these requests on the grounds that they are overly broad, and seek information that is neither relevant to any party's claim or defense in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence.  To be discoverable, information must be "relevant to any party's claim or defense" and at least "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  For example, Googles object on this ground to the extent that any request seeks information regarding time periods during which the CPC Content Input Bid did not appear on the Signup Bidding Page.

20.     Google objects to these requests on the grounds that they are overly broad and vague as to time.

21.     Google further objects to the extent the requests seek a complete and exhaustive response or explanation regarding any issue in this litigation, before discovery has been completed.  Any responses Google makes to any proper discovery requests by Plaintiff will remain at all times subject to additional or different information that discovery or further investigation, analysis, or recollection may disclose.  Accordingly, Google will at all times reserve the right to amend or supplement its objections and responses.

22.     Google reserves the right to make any use of, or to introduce at any hearing or trial, information that is responsive to Plaintiff's requests, but reviewed, discovered, or discovered to be relevant subsequent to Google's responses herein.

23.     Google's responses are made based on its understanding and interpretation of each request.  Google reserves the right to supplement its objections and responses should Plaintiff subsequently put forth an interpretation of any request that differs from those of Google.

4

DEFENDANT GOOGLE INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS
CASE NO. C 08-02088 RMW

431715.02

24. Google reserves the right to object on any ground at any time to such other or supplemental discovery requests as Plaintiff may propound involving or relating to the same subject matter of these requests.

25. The responses below shall not be construed as an admission as to the relevance or admissibility of any statement or characterization contained in any request. Google reserves all objections, including without limitation objections as to competency, relevance, materiality, privilege, authenticity, or admissibility.

26. The responses below shall not be construed as an admission of or agreement with any implication, statement, characterization or conclusions implied or stated in any instruction, definition, or request.

27. No response to any request below suggests that documents responsive to the request exist.

28. The term "will produce" as used in these responses means that, subject to the general and specific objections set forth herein, Google will produce documents of the types or categories described to the extent that such documents exist and are within Google's possession, custody and/or control. Google's statement that it "will produce" documents should not be construed as a statement or concession that such documents in fact exist.

29. To the extent that pleadings and/or papers filed or served in this action are responsive to these requests and without waiving the right to rely on any such documents for any purposes in this action, Google will not separately produce pleadings and/or papers filed or served in this action in response to discovery requests.

The objections above are incorporated by reference as though fully set forth in each response below. Without waiving any of the foregoing objections, Google responds as follows:

## SPECIFIC RESPONSES AND OBJECTIONS

## REQUEST FOR PRODUCTION NO. 1:

Exemplars of all versions of the form agreement and/or the "AdWords Program Terms" between Google and AdWords Customers.

5
DEFENDANT GOOGLE INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS
CASE NO. C 08-02088 RMW

431715.02

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Google incorporates by reference its general objections stated above. In particular, Google objects that the term "the form agreement" is vague and ambiguous; Google interprets this term to be synonymous with its "AdWords Program Terms" for U.S. online customers. Google further objects to this request to the extent it seeks documents from the time period before October 2007 on the basis that the request is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, and without waiving them, Google responds as follows:

Google will produce non-privileged responsive documents in its possession, custody, or control that it identifies after a reasonable search and diligent inquiry, and that have not already been produced, if any exist.

**REQUEST FOR PRODUCTION NO. 2:**

Exemplars of all versions of the Signup Bidding Page.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Google incorporates by reference its general objections stated above. In particular, Google objects to this request to the extent it seeks documents from the time period before October 2007 on the basis that the request is overly broad and not reasonably calculated to lead to the discovery of admissible evidence. The request is also unduly burdensome. Subject to the foregoing objections, and without waiving them, Google responds as follows:

Google will produce non-privileged responsive documents in its possession, custody, or control that it identifies after a reasonable search and diligent inquiry, and that have not already been produced, if any exist.

**REQUEST FOR PRODUCTION NO. 3:**

All drafts, mock-ups, documents proposing changes, documents containing drafts [sic] versions, or documents that refer or relate to the design of the Signup Bidding Page.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Google incorporates by reference its general objections stated above. In particular, Google objects to this request to the extent it seeks documents relating to the Signup Bidding

431715.02

1   Page in place before October 2007 on the basis that the request is overly broad and not

2   reasonably calculated to lead to the discovery of admissible evidence.  The request is also unduly

3   burdensome.  Google further objects to this request to the extent that it seeks information

4   protected by the attorney-client privilege and/or work product doctrine.  Google further objects

5   on the ground that this request seeks information that is highly confidential, proprietary and/or

6   competitively sensitive.  Google will produce such information, if at all, only following and

7   pursuant to the entry of a suitable confidentiality agreement, and only to the extent Google can

8   do so consistent with its legal and confidentiality obligations.  Subject to the foregoing

9   objections, and without waiving them, Google responds as follows:

10       Google will produce non-privileged responsive documents in its possession, custody, or

11   control that it identifies after a reasonable search and diligent inquiry, and that have not already

12   been produced, if any exist.

13   **REQUEST FOR PRODUCTION NO. 4:**

14       All documents that refer or relate to the decision to allow AdWords Customers to set a

15   Content Bid.

16   **RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

17       Google incorporates by reference its general objections stated above.  In particular,

18   Google objects to this request to the extent it seeks documents relating to the setting of a Content

19   Bid by means other than through the CPC Content Bid Input on the Signup Bidding Page, on the

20   basis that the request is overly broad and not reasonably calculated to lead to the discovery of

21   admissible evidence.  The request is also unduly burdensome.  Google further objects to this

22   request to the extent that it seeks information protected by the attorney-client privilege and/or

23   work product doctrine.  Google further objects on the ground that this request seeks information

24   that is highly confidential, proprietary and/or competitively sensitive.  Google will produce such

25   information, if at all, only following and pursuant to the entry of a suitable confidentiality

26   agreement, and only to the extent Google can do so consistent with its legal and confidentiality

27   obligations.  Subject to the foregoing objections, and without waiving them, Google responds as

28   follows:

7

431715.02

1       Google will produce non-privileged responsive documents in its possession, custody, or

2 control that it identifies after a reasonable search and diligent inquiry, and that have not already

3 been produced, if any exist.

4 **REQUEST FOR PRODUCTION NO. 5:**

5       All documents that refer or relate to the decision to present AdWords Customers with the

6 CPC Content Bid Input.

7 **RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

8       Google incorporates by reference its general objections stated above.  In particular,

9 Google objects to this request to the extent it seeks documents relating to the setting of a Content

10 Bid by means other than through the CPC Content Bid Input on the Signup Bidding Page, on the

11 basis that the request is overly broad and not reasonably calculated to lead to the discovery of

12 admissible evidence.  The request is also unduly burdensome.  Google further objects to this

13 request to the extent that it seeks information protected by the attorney-client privilege and/or

14 work product doctrine.  Google further objects on the ground that this request seeks information

15 that is highly confidential, proprietary and/or competitively sensitive.  Google will produce such

16 information, if at all, only following and pursuant to the entry of a suitable confidentiality

17 agreement, and only to the extent Google can do so consistent with its legal and confidentiality

18 obligations.  Subject to the foregoing objections, and without waiving them, Google responds as

19 follows:

20       Google will produce non-privileged responsive documents in its possession, custody, or

21 control that it identifies after a reasonable search and diligent inquiry, and that have not already

22 been produced, if any exist.

23 **REQUEST FOR PRODUCTION NO. 6:**

24       All documents that refer or relate to the issuance of refunds or credits in response to

25 complaints from AdWords Customers who were charged for clicks to AdWords ads placed on

26 the Content Network for ads where the AdWords Customer left the CPC Content Bid Input

27 blank.

28

DEFENDANT GOOGLE INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS
CASE NO. C 08-02088 RMW

431715.02

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

2      Google incorporates by reference its general objections stated above.  In particular,

3  Google objects to this request to the extent it seeks documents relating to the setting of a Content

4  Bid by means other than through the CPC Content Bid Input on the Signup Bidding Page, on the

5  basis that the request is overly broad and not reasonably calculated to lead to the discovery of

6  admissible evidence.  The request is also unduly burdensome.  Google further objects to this

7  request to the extent that it seeks information protected by the attorney-client privilege and/or

8  work product doctrine.  Google further objects on the ground that this request seeks information

9  that is highly confidential, proprietary and/or competitively sensitive.  Google will produce such

10  information, if at all, only following and pursuant to the entry of a suitable confidentiality

11  agreement, and only to the extent Google can do so consistent with its legal and confidentiality

12  obligations.  Subject to the foregoing objections, and without waiving them, Google responds as

13  follows:

14      Google will produce non-privileged responsive documents in its possession, custody, or

15  control that it identifies after a reasonable search and diligent inquiry, and that have not already

16  been produced, if any exist.

17  **REQUEST FOR PRODUCTION NO. 7:**

18      All documents that refer or relate to complaints or inquiries by AdWords Customers

19  concerning the use of the CPC Content Bid Input.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

21      Google incorporates by reference its general objections stated above.  In particular,

22  Google objects that this request is extraordinarily burdensome.  Identifying "all" documents that

23  "refer or relate" to complaints or inquiries concerning the use of the CPC Content Bid Input

24  would require imprecise and extremely time-consuming searching through vast amounts of data,

25  much of it to try to locate documents that are not reasonably calculated to lead to discovery of

26  admissible evidence.  Google further objects to this request to the extent that it seeks information

27  protected by the attorney-client privilege and/or work product doctrine.  Google further objects

28  on the ground that this request seeks information that is highly confidential, proprietary and/or

9

431715.02

1   competitively sensitive.  Google will produce such information, if at all, only following and

2   pursuant to the entry of a suitable confidentiality agreement, and only to the extent Google can

3   do so consistent with its legal and confidentiality obligations.  Google is willing to meet and

4   confer with Plaintiff about an appropriate search and production of documents, if any, in

5   response to this request.

6   **REQUEST FOR PRODUCTION NO. 8:**

7        All documents that refer or relate to complaints or inquiries by AdWords Customers

8   concerning charges for clicks to AdWords ads placed on the Content Network where the

9   AdWords Customers left the CPC Content Bid Input blank.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

11       Google incorporates by reference its general objections stated above.  In particular,

12  Google objects that this request is extraordinarily burdensome.  Identifying "all" documents that

13  "refer or relate" to complaints or inquiries concerning such charges would require imprecise and

14  extremely time-consuming searching through vast amounts of data, much of it to try to locate

15  documents that are not reasonably calculated to lead to discovery of admissible evidence.

16  Google further objects to this request to the extent that it seeks information protected by the

17  attorney-client privilege and/or work product doctrine.  Google further objects on the ground that

18  this request seeks information that is highly confidential, proprietary and/or competitively

19  sensitive.  Google will produce such information, if at all, only following and pursuant to the

20  entry of a suitable confidentiality agreement, and only to the extent Google can do so consistent

21  with its legal and confidentiality obligations.  Google is willing to meet and confer with Plaintiff

22  about an appropriate search and production of documents, if any, in response to this request.

23  **REQUEST FOR PRODUCTION NO. 9:**

24       Exemplars of all versions of invoices sent to AdWords Customers who were charged for

25  clicks to AdWords ads placed on the Content Network but who left the CPC Content Bid Input

26  blank.

27  **RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

28       Google incorporates by reference its general objections stated above.  In particular,

10

431715.02

1  Google objects that the request for "exemplars" of "all" "invoices" sent to such customers is

2  vague and ambiguous.  Google interprets this request as calling for exemplars showing the

3  format of "invoices" sent to such customers, but not any specific "invoices."  Google further

4  objects to this request to the extent it seeks documents relating to the setting of a Content Bid by

5  means other than through the CPC Content Bid Input on the Signup Bidding Page, on the basis

6  that the request is overly broad and not reasonably calculated to lead to the discovery of

7  admissible evidence.  In addition, Google objects to the extent this request seeks information

8  protected from discovery by any right to privacy, including the right to privacy of third parties,

9  or by Google's obligations under applicable law to protect such confidential information.

10  Google will not produce any confidential information of its customers.  Subject to the foregoing

11  objections, and without waiving them, Google responds as follows:

12          Google will produce non-privileged responsive documents in its possession, custody, or

13  control that it identifies after a reasonable search and diligent inquiry, and that have not already

14  been produced, if any exist.

15  **REQUEST FOR PRODUCTION NO. 10:**

16          All documents which refer or relate to the placement and/or use of the word "optional"

17  next to the CPC Content Bid Input.

18  **RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

19          Google incorporates by reference its general objections stated above.  In particular,

20  Google objects to this request to the extent it seeks documents relating to the setting of a Content

21  Bid by means other than through the CPC Content Bid Input on the Signup Bidding Page, on the

22  basis that the request is overly broad and not reasonably calculated to lead to the discovery of

23  admissible evidence.  The request is also unduly burdensome.  Google further objects to this

24  request to the extent that it seeks information protected by the attorney-client privilege and/or

25  work product doctrine.  Google further objects on the ground that this request seeks information

26  that is highly confidential, proprietary and/or competitively sensitive.  Google will produce such

27  information, if at all, only following and pursuant to the entry of a suitable confidentiality

28  agreement, and only to the extent Google can do so consistent with its legal and confidentiality

1 obligations.  Subject to the foregoing objections, and without waiving them, Google responds as

2 follows:

3     Google will produce non-privileged responsive documents in its possession, custody, or

4 control that it identifies after a reasonable search and diligent inquiry, and that have not already

5 been produced, if any exist.

6 **REQUEST FOR PRODUCTION NO. 11:**

7     All documents referring or relating to studies, research or discussions comparing the

8 effectiveness to AdWords Customers of ads placed on the Search Network versus ads placed on

9 the Content Network.

10 **RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

11     Google incorporates by reference its general objections stated above.  In particular,

12 Google objects to this request to the extent it seeks documents relating to period before

13 November 2007, on the basis that the request is overly broad and not reasonably calculated to

14 lead to the discovery of admissible evidence.  The request is also unduly burdensome.  Google

15 further objects to this request to the extent that it seeks information protected by the attorney-

16 client privilege and/or work product doctrine.  Google further objects on the ground that this

17 request seeks information that is highly confidential, proprietary and/or competitively sensitive.

18 Google will produce such information, if at all, only following and pursuant to the entry of a

19 suitable confidentiality agreement, and only to the extent Google can do so consistent with its

20 legal and confidentiality obligations.

21 **REQUEST FOR PRODUCTION NO. 12:**

22     Exemplars of all versions of web pages where an AdWords Customer can opt-out of the

23 Content Network.

24 **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

25     Google incorporates by reference its general objections stated above.  In particular,

26 Google objects to this request to the extent it seeks documents relating to period before

27 November 2007, on the basis that the request is overly broad and not reasonably calculated to

28 lead to the discovery of admissible evidence.  The request is also unduly burdensome.  Subject to

1  the foregoing objections, and without waiving them, Google responds as follows:

2      Google will produce non-privileged responsive documents in its possession, custody, or

3  control that it identifies after a reasonable search and diligent inquiry, and that have not already

4  been produced, if any exist.

5  **REQUEST FOR PRODUCTION NO. 13:**

6      All documents which Google might use to support any Affirmative Defense set forth in

7  the Answer.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

9      Google incorporates by reference its general objections stated above.  In particular,

10  Google objects to this request as premature, because Google's investigation and analysis is

11  ongoing.  Google further objects to this request to the extent that it seeks information protected

12  by the attorney-client privilege and/or work product doctrine.  Google further objects on the

13  ground that this request seeks information that is highly confidential, proprietary and/or

14  competitively sensitive.  Google will produce such information, if at all, only following and

15  pursuant to the entry of a suitable confidentiality agreement, and only to the extent Google can

16  do so consistent with its legal and confidentiality obligations.  Subject to the foregoing

17  objections, and without waiving them, Google responds as follows:

18      Google will produce non-privileged responsive documents in its possession, custody, or

19  control that it identifies after a reasonable search and diligent inquiry, and that have not already

20  been produced, if any exist.

21

22

23  Dated:  December 5, 2008                    KEKER & VAN NEST, LLP

24

25                                             By: _____

26                                             DAVID J. SILBERT
                                               Attorneys for Defendant
27                                             GOOGLE, INC., a Delaware corporation

28

---

13

DEFENDANT GOOGLE INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS
CASE NO. C 08-02088 RMW

431715.02

PROOF OF SERVICE

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111.

On December 5, 2008, I served the following document(s):

**DEFENDANT GOOGLE, INC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error

and

by regular **UNITED STATES MAIL** by placing a true and correct copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker & Van Nest, LLP for collection and processing of correspondence for mailing. According to that practice, items are deposited with the United States Postal Service at San Francisco, California on that same day with postage thereon fully prepaid. I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter date is more than one day after the date of deposit for mailing stated in this affidavit.

Brian S. Kabateck, Esq.
Richard L. Kellner, Esq.
Alfredo Torrijos Esq.
KABATECK BROWN KELLNER, LLP
644 South Figueroa Street
Los Angeles, CA 90017
TEL: (213) 217-5000
FAX: (213) 217-5010
EMAIL: bsk@kbklawyers.com
EMAIL: rlk@kbklawyers.com
EMAIL: at@kbklawyers.com

Executed on December 5, 2008, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_Lauren Hartz-Lewis_
Lauren Hartz-Lewis

**EXHIBIT F**



**Kabateck** Brown Kellner LLP

January 16, 2009

**VIA EMAIL**
David Silbert
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

**RE:   Almeida v. Google, Inc.**

Dear Mr. Silbert:

I am writing in an effort to meet and confer regarding your client's responses to plaintiff's First Set of Interrogatories and Requests for Production of Documents in this action. As detailed below, we believe that discovery responses submitted by Google, Inc. are deficient and we therefore presently seek a telephonic conference with you as required by Local Rule 37-1 prior to the filing of a motion to compel. Please let me know if you are available either Monday, January 19th or Tuesday, January 20th for this conference.

## I.
## GOOGLE'S RESPONSES TO PLAINTIFF'S INTERROGATORIES ARE FACIALLY DEFICIENT

Google's responses to Plaintiff's First Set of Interrogatories are deficient for at least two reasons: (i) Google has yet to provide a verification for its responses; and (ii) many of Google's interrogatory responses are not full and complete.

### A.    Google Has Yet to Comply with the Signature Requirement of Rule 33.

Rule 33(b)(3) requires that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath,"

David Silbert
January 16, 2009
Page 2 of 8



**Kabateck** Brown Kellner LLP

and Rule 33(b)(5) requires that "[t]he person who makes the answers must sign them." To date, we have yet to receive a verification that Google's responses to Plaintiff's First Set of Interrogatories were made under oath. This is unacceptable. See *Saria v. Mass. Mut. Life Ins. Co.*, 228 F.R.D. 536, 540 (S.D. W.Va. 2005) ("The failure to meet the simple requirement of providing verification can only be seen as a flagrant disregard of [the Federal] Rules, Advisory Notes, and case precedents"). Please advise us at your earliest convenience when we can except your client's verification.

**B.    Google's Boilerplate Objections to Interrogatories 3, 4, 5, 6 and 8 Are Unfounded and Do Not Excuse Google's Failure to Provide Responses.**

Your client asserts the same boilerplate objections in its responses to Plaintiff's Interrogatories 3, 4, 5, 6 and 8 – namely, that the interrogatories are "overly broad and extremely burdensome" and that the interrogatories seek confidential, proprietary information. We believe these objection are meritless and do not justify Google's refusal to provide any of the information requested.

Google fails to forward any reason why it would be unduly burdensome for it to provide the requested information. A blanket assertion – like the one made by Google here – that responding to discovery is "unduly burdensome" is insufficient under the Federal Rules of Civil Procedure. "[T]he fact that the production of documents may involve inconvenience and expense is not alone a sufficient reason for refusing discovery which is otherwise appropriate." *U.S. v. American Optical Co.*, 39 F.R.D. 580, 587 (N.D. Cal 1966). Google's apparent reliance on these objections for refusing to provide plaintiff with the requested discovery is especially inappropriate given the nature of the information sought. Interrogatories 3, 4, 5, 6 and 8 seek, in general terms, information on the number of customers included in the class, the number of advertising campaigns created by class members, and the amount charged class members for content ads when the CPC Content Bid Input was left blank. Plaintiff, frankly, would be shocked if Google does not already maintain this

David Silbert
January 16, 2009
Page 3 of 8



**Kabateck** Brown Kellner LLP

information in the normal course of its business. We also find it peculiar
that Google would assert that collecting the information sought by Plaintiff
is burdensome given that it is in the business of "organizing the world's
information."

Google's refusal to provide the requested discovery on the basis that
the information sought is confidential and/or proprietary is also not well
taken. There is no absolute privilege against discovery of a party's trade
secrets or similar confidential information. *DirecTV, Inc. v. Trone*, 209
F.R.D. 455, 459-60, (C.D. Cal. 2002). The burden is on the party opposing
discovery to make an affirmative showing that the information is a trade
secret under Rule 26(c)(7), that the disclosure of the information would be
harmful, and that the harm outweighs the other party's legitimate discovery
interests. *Id.* Indeed, under federal case law, once the requesting party "has
established relevance and necessity [of producing the trade secret], the
discovery is virtually always ordered." *Trevino v. ACB American, Inc.*, 232
F.R.D. 612, 617 (N.D. Cal. 2006) (internal quotes and citations omitted).

We are cognizant of Google's offer to provide the requested
information and documents once a protective order is agreed upon by the
parties and entered by the Court. To that end we have enclosed with this
letter a proposed protective order for your consideration. While we are
willing to work with you in good faith toward arriving at a stipulated
protective order that the parties can jointly submit to the Court for its
approval, we unable to delay our discovery in this action much longer. We
therefore ask that you please provide us with your comments regarding our
proposed protective order post haste.

    **C.**    **Google Has Failed to Provide Full and Complete Responses
to Plaintiff's Interrogatories.**

While Google has provided some information in its responses to
Interrogatories 7, 10, 12 and 13, its responses are nonetheless facially
deficient since Google fails to fully respond to the discovery as is required
by the Federal Rules of Civil Procedure. FRCP 33(b)(3).

David Silbert
January 16, 2009
Page 4 of 8



**Kabateck** Brown Kellner LLP

Interrogatory No. 7 requests the number of AdWords Customers who
initiated one or more AdWords Campaigns where the CPC Content Bid
Input was set to zero, for each month and year from October 2007. Google's
response to this interrogatory is deficient for two reasons. First, Google fails
to answer the question. If Google is attempting to indicate that there have
been no AdWords Campaigns initiated where the CPC Content Bid Input
was set to zero because they are shown the referenced message and
prevented from continuing the Advertising Campaign Creation Process, then
Google should so indicate. Second, plaintiff cannot discern whether
whatever practice is in fact employed has been the consistently and
universally applied from October 2007 to the present.

Interrogatory No. 10 requests information on all changes, including
the date the change was made, to the procedure Google uses to determine the
Content Bid when the CPC Content Bid Input is left blank. Google's
response to this interrogatory is deficient for two reasons. First, the response
fails to give sufficient detail about the process or procedure used by Google
to determine a Content Bid when the CPC Content Bid Input is left blank.
For example, the response indicates that Google uses data to discount the
amount of the automatic bid based on its effectiveness compared to a search
ad. The response however, fails to specify what information Google relies
on. Second, the response is also deficient because it gives no indication if,
or how, this procedure may have changed since its implementation in
October 2007.

Interrogatory No. 12 requests information on changes, including the
date the change was made, to the procedure by which AdWords Customers
could opt out from the Content Network. Google's response to this
interrogatory is deficient because it simply cites two examples of how an
Adwords Customer can opt out of the Content Network during the
Campaign Creation Process. This does not fully answer the interrogatory.
If the two cited examples are to only two methods by which an Adwords
Customer could have opted out of the Content Network during the
Campaign Creation Process, we request that this be made clear in the

David Silbert
January 16, 2009
Page 5 of 8



**Kabateck** Brown Kellner LLP

response.  If that is not the case, a sufficient response to the interrogatory requires a description of all methods by which this opt out could have been accomplished.

Interrogatory No. 13 seeks information on the procedures Google uses to track the complaints made by, or refunds given to, AdWords Customers who were charged for Content Network ads where the CPC Content Bid Input was left blank.  Google's fails to provide the information actually requested by this interrogatory and instead states that some database may or may not track emails that may or may not be complaints.  This is wholly insufficient.  Plaintiff requests that Google provide the parameters used to determine which customer contacts are tracked.  Plaintiff also requests that Google provide the criteria used by to determine whether to issue a refund to a customer. Additionally, to the extent Google objects to this interrogatory based on attorney-client privilege or the work product doctrine, this objection is insufficient.  The FRCP requires the grounds for any objection be stated with specificity. FRCP 33(b)(4).  Google's boilerplate objection does not suffice.

## II.
## TO DATE GOOGLE HAS FAILED TO PROVIDE ANY DOCUMENTS IN RESPONSE TO PLAINTIFF'S DISCOVERY REQUESTS

We received Google's written responses and objections to Plaintiff's First Set of Requests for Production of Documents a bit over a month ago. However, we have not yet received documents in response to *any* of plaintiff's requests – *even for the request that Google has forwarded no objections and has stated that it would be producing documents*. Specifically, Google objected to Request No. 1 only to the extent it seeks documents from before October 2007.  However, Google failed to produce any documents from after October 2007.

David Silbert
January 16, 2009
Page 6 of 8



**Kabateck** Brown Kellner LLP

## III.
## GOOGLE'S STATED OBJECTIONS TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS ARE MERITLESS

**A.    Google's Boilerplate Objections to Plaintiff's First Set of Requests for Production of Documents Are Unfounded and Do Not Excuse Google's Failure to Provide the Requested Documents.**

Google objects to nearly all of plaintiff's requests on the grounds that production of the requested documents would be unduly burdensome. However, just as with its responses to plaintiff's Interrogatories, Google wholly fails to provide any support for this objection. These blanket, unfounded objections are insufficient under the FRCP. "[T]he fact that the production of documents may involve inconvenience and expense is not alone a sufficient reason for refusing discovery which is otherwise appropriate." *U.S. v. American Optical Co.*, 39 F.R.D. 580, 587 (N.D. Cal 1966).

Google similarly objects to nearly all of Plaintiff's requests on the grounds that they seek documents protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine. But again these, "boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege." *Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). To the extent that Google has a legitimate objection based on privilege, it is required to identify and describe the documents in sufficient detail to enable the demanding party to assess the applicability of the privilege. FRCP 26(b)(5).

David Silbert
January 16, 2009
Page 7 of 8



**Kabateck** Brown Kellner LLP

**B.    Google's Objections that Plaintiff's Requests for Production Are Outside the Scope of Discovery are Unfounded.**

Google objects to Requests for Production Nos. 2 and 3 on the grounds that they seek documents from before October 2007.  Google asserts that these requests are not reasonably calculated to lead to the discovery of admissible evidence.  That is incorrect.  The requested documents may contain information related to numerous elements of Plaintiff's claims against Google, including Google's knowledge of the falsity of its statements, Google's duty to disclose concealed facts, and information related the FRCP 23 requirements for class certification.

Likewise, Google's objections to Requests for Production Nos. 11 and 12 on the grounds that they seek documents from before November 2007.  Plaintiff assumes that Google intended to object to the production of documents from before November 2005, as this was the date Google identified as when it first allowed AdWords Customers to set Content Bids.  However, these documents may also contain information related to numerous elements of Plaintiff's claims against Google, including Google's knowledge of the falsity of its statements, Google's duty to disclose concealed facts and may contain information related the FRCP 23 requirements for class certification.

**C.    Google's Objections Based on Ambiguity and Privacy Are Baseless.**

Google objects to Request for Production No. 9 because it finds the terms "exemplar" and "all" vague and ambiguous.  Google's claim of failure to comprehend these terms is surprising since it appeared to understand those two terms when used in Requests for Production Nos. 1 and 2.  However, Google's interpretation that the request seeks only examples of invoices, not specific invoices, is correct.

Since this Request does not seek the actual invoices from specific customers, Google's objection based on the privacy of its customers has no

David Silbert
January 16, 2009
Page 8 of 8



**Kabateck** Brown Kellner LLP

merit.  To the extent an actual invoice would be the best "exemplar," Google can redact all private information.

> **D.     Plaintiff Is Willing to Meet and Confer in Order to Arrive At An Efficient Methodology for the Production of Documents Responsive to Requests Nos. 7 and 8.**

Plaintiff's Requests Nos. 7 and 8 seek documents relating to complaints or inquiries by AdWords Customers concerning the use of the CPC Content Bid Input or charges stemming from Content Network advertisements where the AdWords Customer left the CPC Content Bid Input blank.  Google objects based on its assertion that a search for these documents would be extraordinarily burdensome.  While Plaintiff does not share Google's view that such a search would be represent an extraordinary burden, it is willing to meet and confer to attempt to identify ways to limit any extraneous documents that may result from the search.  This will, however, require that Google provide a more specific and thorough response to his Interrogatory No. 13 in order to understand Google's procedures for tracking and storing complaints from its customers.

I look forward to hearing from you regarding your availability to meet and confer this week.

Very truly yours,

KABATECK BROWN KELLNER  LLP

MICHAEL STORTI

**EXHIBIT G**



**Kabateck** Brown Kellner LLP

February 2, 2009

<u>**VIA EMAIL**</u>
David Silbert
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111

RE:  *Almeida v. Google, Inc.* – **Google's Discovery Responses**

Dear Mr. Silbert:

I am writing to follow-up on my email to you of last Tuesday.  As I noted in
that email we have not yet received (i) a proposed protective order from you
– or, alternatively, suggested revisions to the proposed protective order that
we provided you on January 16, 2009; (ii) a timeline regarding when your
client will provide further, substantive responses to Plaintiff's
interrogatories; or (iii) documents responsive to Plaintiff's discovery
requests.  During our telephone conference of January 20, 2009 you agreed
to provide all the above to us by no later than the beginning of last week;
your silence is, therefore, disconcerting.

As you may recall, Google advanced several objections to Plaintiffs'
discovery requests.  During our telephonic meet and confer, we discussed
ways to address Google's concerns.  One of Google's objections was that its
responses to Plaintiff's discovery requests would require the disclosure of
confidential, proprietary information and that it would only respond pursuant
to a protective order.  Plaintiff indicated that he was agreeable to a protective
order and enclosed a proposed protective order with his letter requesting a
meet and confer.  During the meet and confer, you indicated that you would
provide us with your client's proposed protective order.  However, we have
not yet received the proposed protective order.

Google also objected based on its assertion that responding to several of
Plaintiff's interrogatories would constitute an undue burden.  You
represented that Google would have to create search algorithms to identify

David Silbert
February 2, 2009
Page 2 of 2



**Kabateck** Brown Kellner LLP

the requested information. In an effort to aid in the search, Plaintiff
narrowed the scope of some of the interrogatories and delayed or eliminated
others. Plaintiff simply requested a timeline of when Google would be able
to conduct its search and begin responding to the interrogatories. To date,
Plaintiff has not received this timeline. Please provide Plaintiff with a
timeline of when your client will be able to begin responding to Plaintiff's
interrogatories by 5:00 p.m., Friday, February 6, 2009.

Further, you indicated that a significant number of documents had been
collected and were ready for production. You stated that production was
dependent on the document format Plaintiff preferred. Plaintiff informed
you via email later that day that production in PDF format was preferable.
However, more than a week has passed and no documents have been
produced. Please begin producing documents responsive to Plaintiff's
request no later than 5:00 p.m., Friday, February 6, 2009.

Finally, Plaintiff has yet to receive a signed verification for Google's
responses to Plaintiff's interrogatories, as required by FRCP 33(b)(3).
Please provide the signed verification by 5:00 p.m., Friday, February 6,
2009.

While it is Plaintiff's desire to resolve these issues without resorting to the
court, he cannot afford any more delay. Accordingly, if Plaintiff does not
receive the above requested documents by 5:00 p.m., Friday, February 6,
2009, he will be forced to file a motion to compel production.

Very truly yours,

**KABATECK BROWN KELLNER LLP**

Michael V. Storti

cc:
Alfredo Torrijos (via email)

**EXHIBIT H**

LAW OFFICES

# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

DAVID J. SILBERT
DSILBERT@KVN.COM

February 18, 2009

**VIA EMAIL**

Michael V. Storti
Kabateck Brown Kellner LLP
644 South Figueroa St.
Los Angeles, CA 90017

Re:   <u>David Almeida v. Google Inc.</u>, Case No. 08-02088 RMW

Dear Mr. Storti:

      I write concerning your recent correspondence and our January 23, 2009 meet-and-confer regarding discovery. Your correspondence suggests that our discovery compliance has not been timely and in good faith. We strongly disagree. As you are aware, the discovery responses Google served on December 5, 2008 made clear that Plaintiff's discovery demands were unreasonably overbroad and burdensome, but we specifically invited your office to meet-and-confer about those demands and to agree on reasonable parameters for document and information searches. After we did not hear from you for over a month, we asked several times to set up a meet-and-confer for that purpose, without receiving a response. When we finally did meet-and-confer at the end of January, we explained our desire to work cooperatively with you, as well as the need for you to constrain your requests to reasonable limits. We write now to confirm the substance of our discussions, explain where we stand with respect to many of these demands, and reiterate our desire to work cooperatively in discovery.

## DOCUMENT PRODUCTION

      During our meet and confer, you confirmed that you seek to certify a class only of advertisers who were presented with a content bid window on the campaign creation page, which first appeared in October 2007. In general, you agreed that our responses to your Interrogatories and Requests for Production will be limited to information or documents created between October 2007 and the present. You requested, however, that we search for documents between November 2005 and the present in response to your Requests for Production Nos. 2 and 3. We agree to produce non-privileged responsive documents that we identify after a reasonable search. Similarly, we will agree to produce such documents dating from November 2005 through the present in response to your Requests for Production Nos. 11 and 12.

435819.04

Michael V. Storti
February 18, 2009
Page 2

We also discussed your Requests for Production Nos. 7 and 8. I explained that responses to those requests require Google to engage in an extraordinarily burdensome and time-consuming search through vast amounts of data. As you requested, we will agree to supplement our response to Interrogatory No. 13 to further describe the search that would be required. You said during our discussions that, if there is no direct way to identify customer complaints relating to the identified issues, you would not pursue these requests.

Finally, as we noted in our responses to your Requests for Production of Documents, Plaintiff's requests would require the disclosure of confidential, proprietary information. Accordingly, Google cannot produce documents until the parties have agreed to a protective order. I have attached a proposed protective order to this letter and look forward to discussing it with you.

## INTERROGATORIES

You agreed to forego your requests for data broken down by month in the interrogatories that request it, and instead to accept composite data that is not broken down by any specific time period. You also agreed to forego a response to Interrogatory No. 5.

We already have responded to Interrogatories 1, 2, 7, 9, 10, 11, 12, and 13 and we are working to resolve the few remaining disputes regarding our responses to those Interrogatories. In particular, you requested that we clarify our response to Interrogatory No. 7 regarding whether an advertiser was prohibited from entering a content bid of "zero" since October 2007. You also requested that we provide more information regarding the circumstances in which an advertiser could opt out of the content network (Interrogatory No. 12) and for additional information regarding the burdens associated with tracking complaints made by advertisers about clicks on the content network (Interrogatory No. 13). We are working to obtain this information and will provide you with supplemental responses accordingly within two weeks. Additionally, you requested that we provide a supplemental response to Interrogatory No. 10. As I previously explained, we believe that the information you're seeking will be contained in documents that we intend to produce; accordingly, we will supplement with reference to those bates-numbered documents once they are produced.

As I explained during our meet and confer, as far as we can determine, Google does not keep the information that you requested in Interrogatory Nos. 3, 4, 6, and 8 in the ordinary course of business. To provide the responses you requested, therefore, Google engineers must gather, process, and analyze vast amounts of data. This will require a time-consuming search for the raw data—much of which is only available on a user-by-user basis—and also will require the engineers to develop and implement a methodology for deriving the responses. They will need to do all this in addition to fulfilling their regular engineering duties at Google.

In the interests of cooperating with you on discovery matters, however, we will in good faith attempt to derive data responsive to these Interrogatories, within the limits noted above. Given the difficulty in obtaining and analyzing the data you have requested, however, we may ultimately be unable to respond fully and completely to each of Interrogatories 3, 4, 6, and 8.

Michael V. Storti
February 18, 2009
Page 3

We will update you on the status of the searches on or before March 1, 2009, and keep you apprised of the progress thereafter. As I explained during the meet-and-confer, because of the extraordinary burden on Google, we will perform a data search and analysis only once, and we will object to piecemeal requests in the future.

Finally, as discussed, a proposed protective order is attached to this letter for your consideration. Google will also provide you a verification for the Interrogatory Responses. The employee who is authorized to provide that verification is currently on vacation and will not return for another week. We will provide the verification upon her return. Please let us know if you have any concerns in this regard.

****************

Thank you again for a productive meet and confer conversation. Although there are still several remaining issues to resolve, we are well on our way to achieving mutually agreeable solutions. I look forward to discussing these with you and to cooperating on any additional issues that may arise.

Very truly yours,

DAVID J. SILBERT

DJS/adb

BRIAN S. KABATECK  SBN 152054
RICHARD L. KELLNER  SBN 171416
ALFREDO TORRIJOS  SBN 222458
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, California  90017
Telephone:  (213) 217-5000
Facsimile:  (213) 217-5010

Attorneys for Plaintiff and the Proposed Class
DAVID ALMEIDA

KEKER & VAN NEST, LLP
CHRISTA M. ANDERSON - #184325
DAVID J. SILBERT - #173128
ALYSE BERTENTHAL - #253012
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Defendant
GOOGLE, INC., a Delaware corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID ALMEIDA, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>GOOGLE, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. C 08-02088 RMW<br><br>**STIPULATED PROTECTIVE ORDER; [PROPOSED] ORDER THEREON** |

# I.   AGREED PROTECTIVE ORDER

To expedite the flow of discovery materials, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that only materials the parties are entitled to keep confidential are subject to such treatment, and to ensure that the parties are permitted reasonably necessary uses of such materials in preparation for and in the conduct of trial, pursuant to Fed. R. Civ. P. 26(c), it is hereby ORDERED THAT:

# II.   INFORMATION SUBJECT TO THIS ORDER

Discovery materials produced in this case may be labeled as one of two categories: CONFIDENTIAL and CONFIDENTIAL OUTSIDE COUNSEL ONLY, as set forth in below. Each of the identified categories of information shall be identified collectively in this Order by the title "Protected Information."

**A.    Limitations on the Use of Protected Information**

1.    Any Protected Information obtained by any party from any person pursuant to discovery in this litigation may be used only for purposes of this litigation.

2.    Any document or tangible thing containing or including any Protected Information may be designated as such by the producing party by marking it "CONFIDENTIAL" or "CONFIDENTIAL OUTSIDE COUNSEL ONLY" prior to or at the time copies are furnished to the receiving party.

3.    All Protected Information not reduced to documentary, tangible or physical form or which cannot be conveniently designated as set forth in paragraph 2, shall be designated by the producing party by informing the receiving party of the designation in writing.

4.    Any documents (including physical objects) made available for inspection by counsel for the receiving party prior to producing copies of selected items shall initially be considered, as a whole, to constitute Protected Information and shall be subject to this Order. Thereafter, the producing party shall have a reasonable time to review and designate the appropriate documents as Protected Information prior to furnishing copies to the receiving party.

435209.03

**B.**      **Information Designated as Confidential Information**

5.      For purposes of this Order, "CONFIDENTIAL INFORMATION" shall mean all information or material produced for or disclosed to a receiving party that a producing party, including any party to this action and any non-party producing information or material voluntarily or pursuant to a subpoena or a court order, considers to constitute confidential technical, sales, marketing, financial, or other commercially sensitive  information, whether embodied in physical objects, documents, or the factual knowledge of persons, and which has been so designated by the producing party.

6.      The following information is not CONFIDENTIAL INFORMATION:

(a)      Published advertising materials;

(b)      Any information which is or, after its disclosure to a receiving party, becomes part of the public domain as a result of publication not involving a violation of this Order;

(c)      Any information that the receiving party can show was already known to it prior to the disclosure;

(d)      Any information which the receiving party can show by written records was received by it after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the producing party; and

(e)      Any information which the receiving party can show was independently developed by it after the time of disclosure by personnel who did not have access to the producing party's CONFIDENTIAL INFORMATION.

7.      Documents designated CONFIDENTIAL and information contained therein shall be available only to:

(a)      Outside litigation counsel of record and supporting personnel employed in the law firm(s) of outside litigation counsel of record, such as attorneys, paralegals, legal translators, legal secretaries, legal clerks and shorthand reporters;

(b)      Technical advisers and their necessary support personnel, subject to the provisions of paragraphs 10-15 herein, and who have signed the form attached

1    hereto as Attachment A;

2    (c)    The parties in-house counsel with responsibility for managing this

3    litigation and employees of a party who either have responsibility for making

4    decisions dealing directly with the litigation in this action or who are assisting

5    outside counsel in preparation for proceedings in this action;

6    (d)    The Court, its personnel and stenographic reporters (under seal or with

7    other suitable precautions determined by the Court); and

8    (e)    Independent legal translators retained to translate in connection with this

9    action; independent stenographic reporters and videographers retained to record

10   and transcribe testimony in connection with this action; graphics, translation, or

11   design services retained by counsel for purposes of preparing demonstrative or

12   other exhibits for deposition, trial, or other court proceedings in the actions; non–

13   technical jury or trial consulting services not including mock jurors.

14   **C.    Information Designated Confidential Outside Counsel Only**

15   8.    The CONFIDENTIAL OUTSIDE COUNSEL ONLY designation is reserved for

16   CONFIDENTIAL INFORMATION that constitutes proprietary marketing, financial, sales, web

17   traffic, research and development, or technical data/information or commercially sensitive

18   competitive information, including, without limitation, confidential information obtained from a

19   nonparty pursuant to a current Nondisclosure Agreement ("NDA"), CONFIDENTIAL

20   INFORMATION relating to future products not yet commercially released, strategic plans, and

21   settlement agreements or settlement communications, the disclosure of which is likely to cause

22   harm to the competitive position of the producing party.  Documents marked CONFIDENTIAL

23   OUTSIDE ATTORNEYS' EYES ONLY shall be treated as if designated CONFIDENTIAL

24   OUTSIDE COUNSEL ONLY.  In determining whether information should be designated as

25   CONFIDENTIAL OUTSIDE COUNSEL ONLY, each party agrees to use such designation only

26   in good faith.

27   9.    Documents designated CONFIDENTIAL OUTSIDE COUNSEL ONLY and

28   information contained therein shall be available only to:

3

435209.03

     (a)     Outside litigation counsel of record and supporting personnel employed in the law firm(s) of outside litigation counsel of record, such as attorneys, paralegals, legal translators, legal secretaries, legal clerks and shorthand reporters;

     (b)     Technical advisers and their necessary support personnel, subject to the provisions of paragraphs 10-15 herein, and who have signed the form attached hereto as Attachment A;

     (c)     The Court, its personnel and stenographic reporters (under seal or with other suitable precautions determined by the Court); and

     (d)     Independent legal translators retained to translate in connection with this action; independent stenographic reporters and videographers retained to record and transcribe testimony in connection with this action; graphics, translation, or design services retained by counsel for purposes of preparing demonstrative or other exhibits for deposition, trial, or other court proceedings in the actions; non–technical jury or trial consulting services not including mock jurors.

**DISCLOSURE OF TECHNICAL ADVISERS**

10.    Information designated by the producing party under any category of Protected Information and such copies of this information as are reasonably necessary for maintaining, defending or evaluating this litigation may be furnished and disclosed to the receiving party's technical advisers and their necessary support personnel. The term "technical adviser" shall mean an independent, outside expert witness or consultant with whom counsel may deem it necessary to consult and who complies with paragraph 12.

11.    No disclosure of Protected Information to a technical adviser or their necessary support personnel shall occur until that person has signed the form attached hereto as Attachment A, and a signed copy has been provided to the producing party; and to the extent there has been an objection under paragraph 13, that objection is resolved as discussed below.

12.    A party desiring to disclose Protected Information to a technical adviser shall also give prior written notice by email to the producing party, who shall have ten (10) business days after such notice is given to object in writing. The party desiring to disclose Protected

4

1    Information to a technical adviser must provide the following information for each technical

2    adviser: name, address, curriculum vitae, current employer, employment history for the past four

3    (4) years, and a listing of cases in which the witness has testified as an expert at trial or by

4    deposition within the preceding four years.  No Protected Information shall be disclosed to such

5    expert(s) or consultant(s) until after the expiration of the foregoing notice period.

6          13.    A party objecting to disclosure of Protected Information to a technical adviser

7    shall state with particularity the ground(s) of the objection and the specific categories of

8    documents that are the subject of the objection.  The objecting party's consent to the disclosure

9    of Protected Information to a technical adviser shall not be unreasonably withheld, and its

10   objection must be based on that party's good faith belief that disclosure of its Protected

11   Information to the technical adviser will result in specific business or economic harm to that

12   party.

13         14.    If after consideration of the objection, the party desiring to disclose the Protected

14   Information to a technical adviser refuses to withdraw the technical adviser, that party shall

15   provide notice to the objecting party.  Thereafter, the objecting party shall move the Court,

16   within ten (10) business days of receiving such notice, for a ruling on its objection.  A failure to

17   file a motion within the ten (10) business day period shall operate as an approval of disclosure of

18   the Protected Information to the technical adviser. The parties agree to cooperate in good faith to

19   shorten the time frames set forth in this paragraph if necessary to abide by any discovery or

20   briefing schedules.

21         15.    The objecting party shall have the burden of showing to the Court "good cause"

22   for preventing the disclosure of its Protected Information to the technical adviser.  This "good

23   cause" shall include a particularized showing that:  (1) the Protected Information is confidential

24   commercial information, (2) disclosure of the Protected Information would result in a clearly

25   defined and serious injury to the objecting party's business, and (3) the proposed technical

26   advisor is in a position to allow the Protected Information to be disclosed to the objecting party's

27   competitors.

28         **CHALLENGES TO CONFIDENTIALITY DESIGNATIONS**

435209.03

16. The parties shall use reasonable care when designating documents or information as Protected Information. Nothing in this Order shall prevent a receiving party from contending that any documents or information designated as Protected Information have been improperly designated. A receiving party may at any time request that the producing party cancel or modify the Protected Information designation with respect to any document or information contained therein.

17. A party shall not be obligated to challenge the propriety of a designation of any category of Protected Information at the time of production, and a failure to do so shall not preclude a subsequent challenge thereto. Such a challenge shall be written, shall be served on counsel for the producing party, and shall particularly identify the documents or information that the receiving party contends should be differently designated. The parties shall use their best efforts to resolve promptly and informally such disputes. If an agreement cannot be reached, the receiving party shall request that the Court cancel or modify a designation. The burden of demonstrating the confidential nature of any information shall at all times be and remain on the designating party.

18. Until a determination by the Court, the information in issue shall be treated as having been properly designated and subject to the terms of this Order.

**LIMITATIONS ON THE USE OF PROTECTED INFORMATION**

19. All Protected Information shall be held in confidence by each person to whom it is disclosed, shall be used only for purposes of this litigation, shall not be used for any business purpose, and shall not be disclosed to any person who is not entitled to receive such information as herein provided. All produced Protected Information shall be carefully maintained so as to preclude access by persons who are not entitled to receive such information.

20. Except as may be otherwise ordered by the Court, any person may be examined as a witness at depositions and trial and may testify concerning all Protected Information of which such person has prior knowledge. Without in any way limiting the generality of the foregoing:

   (a) A present director, officer, and/or employee of a producing party may be examined and may testify concerning all Protected Information which has been

produced by that party and which identifies on its face the present director,

officer, and/or employee as an author or recipient;

(b)    A former director, officer, agent and/or employee of a producing party

may be interviewed, examined and may testify concerning all Protected

Information of which he or she has prior knowledge, including any Protected

Information that refers to matters of which the witness has personal knowledge,

which has been produced by that party and which pertains to the period or periods

of his or her employment; and

(c)    Non-parties may be examined or testify concerning any document

containing Protected Information of a producing party which appears on its face

or from other documents or testimony to have been received from or

communicated to the non-party as a result of any contact or relationship with the

producing party or a representative of the producing party.  Any person other than

the witness, his or her attorney(s), or any person qualified to receive Protected

Information under this Order shall be excluded from the portion of the

examination concerning such information, unless the producing party consents to

persons other than qualified recipients being present at the examination.  If the

witness is represented by an attorney who is not qualified under this Order to

receive such information, then prior to the examination, the producing party shall

request that the attorney provide a signed statement, in the form of Attachment A

hereto, that he or she will comply with the terms of this Order and maintain the

confidentiality of Protected Information disclosed during the course of the

examination.  In the event that such attorney declines to sign such a statement

prior to the examination, the parties, by their attorneys, shall jointly seek a

protective order from the Court prohibiting the attorney from disclosing Protected

Information.

21.    All transcripts of depositions, exhibits, answers to interrogatories, pleadings,

briefs, and other documents submitted to the Court which have been designated as Protected

7

1  Information, or which contain information so designated, shall be filed under seal in a manner

2  prescribed by the Court for such filings.

3      22.    Outside attorneys of record for the parties are hereby authorized to be the persons

4  who may retrieve confidential exhibits and/or other confidential matters filed with the Court

5  upon termination of this litigation without further order of this Court, and are the persons to

6  whom such confidential exhibits or other confidential matters may be returned by the Clerk of

7  the Court, if they are not so retrieved. No material or copies thereof so filed shall be released

8  except by order of the Court, to outside counsel of record, or as otherwise provided for

9  hereunder.

10      23.    Protected Information shall not be copied or otherwise produced by a receiving

11  party, except for transmission to qualified recipients, without the written permission of the

12  producing party, or, in the alternative, by further order of the Court. Nothing herein shall,

13  however, restrict a qualified recipient from making working copies, abstracts, digests and

14  analyses of CONFIDENTIAL and CONFIDENTIAL OUTSIDE COUNSEL ONLY information

15  for use in connection with this litigation and such working copies, abstracts, digests and analyses

16  shall be deemed Protected Information under the terms of this Order. Further, nothing herein

17  shall restrict a qualified recipient from converting or translating CONFIDENTIAL and

18  CONFIDENTIAL OUTSIDE COUNSEL ONLY information into machine readable form for

19  incorporation into a data retrieval system used in connection with this action, provided that

20  access to that Protected Information, in whatever form stored or reproduced, shall be limited to

21  qualified recipients.

22      24.    At the request of any party, the original and all copies of any deposition transcript,

23  in whole or in part, shall be marked "CONFIDENTIAL" by the reporter. This request may be

24  made orally during the deposition or in writing within fifteen (15) days of receipt of the final

25  certified transcript. Deposition transcripts shall be treated as CONFIDENTIAL OUTSIDE

26  COUNSEL ONLY until the expiration of the time to make a confidentiality designation. Any

27  portions so designated shall thereafter be treated in accordance with the terms of this Order.

28      **NONPARTY USE OF THIS PROTECTIVE ORDER**

25.     A nonparty producing information or material voluntarily or pursuant to a subpoena or a court order may designate such material or information as Protected Information pursuant to the terms of this Protective Order.

26.     A nonparty's use of this Protective Order to protect its Protected Information does not entitle that nonparty access to the Protected Information produced by any party in this case.

**NO WAIVER OF PRIVILEGE**

27.     Nothing in this Protective Order shall require production of information that a party contends is protected from disclosure by the attorney-client privilege, the work product immunity or other privilege, doctrine, right, or immunity.  If information subject to a claim of attorney-client privilege, work product immunity, or other privilege, doctrine, right, or immunity is nevertheless inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver or estoppel as to any such privilege, doctrine, right or immunity.   Any party that inadvertently produces materials protected the attorney-client privilege, work product privilege, or other privilege, doctrine, right, or immunity may obtain the return of those materials by promptly notifying the recipient(s) and providing a privilege log for the inadvertently produced materials.  The recipient(s) shall gather and return all copies of the privileged material to the producing party, except for any pages containing privileged markings by the recipient, which pages shall instead be destroyed and certified as such by the recipient to the producing party.  Notwithstanding this provision, outside litigation counsel of record are not required to delete information that may reside on their respective firm's electronic back-up systems that are over-written in the normal course of business.

**MISCELLANEOUS PROVISIONS**

28.     Any of the notice requirements herein may be waived, in whole or in part, but only in writing signed by the attorney-in-charge for the party against whom such waiver will be effective.

29.     Inadvertent or unintentional production of documents or things containing Protected Information which are not designated as one or more category of Protected Information at the time of production shall not be deemed a waiver in whole or in part of a claim

1   for confidential treatment.  With respect to documents, the producing party shall immediately

2   notify the other parties of the error in writing and provide replacement pages bearing the

3   appropriate confidentiality legend.  In the event of any unintentional or inadvertent disclosure of

4   Protected Information other than in a manner authorized by this Protective Order, counsel for the

5   party responsible for the disclosure shall immediately notify opposing counsel of all of the

6   pertinent facts, and make every effort to further prevent unauthorized disclosure including,

7   retrieving all copies of the Protected Information from the recipient(s) thereof, and securing the

8   agreement of the recipients not to further disseminate the Protected Information in any form.

9   Compliance with the foregoing shall not prevent the producing party from seeking further relief

10   from the Court.

11          30.      Within sixty (60) days after the entry of a final non-appealable judgment or order,

12   or the complete settlement of all claims asserted against all parties in this action, each party shall,

13   at the option of the producing party, either return or destroy all physical objects and documents

14   which embody Protected Information it has received, and shall destroy in whatever form stored

15   or reproduced, all physical objects and documents, including but not limited to, correspondence,

16   memoranda, notes and other work product materials, which contain or refer to any category of

17   Protected Information.  All Protected Information, not embodied in physical objects and

18   documents shall remain subject to this Order.  In the event that a party is dismissed before the

19   entry of a final non-appealable judgment or order, this same procedure shall apply to any

20   Protected Information received from or produced to the dismissed party.  Notwithstanding this

21   provision, outside litigation counsel of record are not required to delete information that may

22   reside on their respective firm's electronic back-up systems that are over-written in the normal

23   course of business.  Notwithstanding the foregoing, outside counsel shall be entitled to maintain

24   copies of all pleadings, motions and trial briefs (including all supporting and opposing papers

25   and exhibits thereto), written discovery requests and responses (and exhibits thereto), deposition

26   transcripts (and exhibits thereto), trial transcripts, and exhibits offered or introduced into

27   evidence at any hearing or trial, and their attorney work product which refers or is related to any

28   CONFIDENTIAL and CONFIDENTIAL OUTSIDE COUNSEL ONLY information for archival

purposes only. If a party opts to destroy CONFIDENTIAL or CONFIDENTIAL OUTSIDE
COUNSEL ONLY information, the party must provide a Certificate of Destruction to the
producing party.

31. If at any time documents containing Protected Information are subpoenaed by any
court, arbitral, administrative or legislative body, the person to whom the subpoena or other
request is directed shall immediately give written notice thereof to every party who has produced
such documents and to its counsel and shall provide each such party with an opportunity to
object to the production of such documents. If a producing party does not take steps to prevent
disclosure of such documents within ten (10) business days of the date written notice is given,
the party to whom the referenced subpoena is directed may produce such documents in response
thereto.

32. Testifying experts shall not be subject to discovery on any draft of their reports in
this case and such draft reports, notes or outlines for draft reports are also exempt from
production and discovery.

33. Documents produced in this case with a designation of "HIGHLY
CONFIDENTIAL" shall be treated as if such documents were designated as CONFIDENTIAL
OUTSIDE COUNSEL ONLY under this Protective Order.

34. This Order is entered without prejudice to the right of any party to apply to the
Court at any time for additional protection, or to relax or rescind the restrictions of this Order,
when convenience or necessity requires. Furthermore, without application to this Court, any
party that is a beneficiary of the protections of this Order may enter a written agreement
releasing any other party hereto from one or more requirements of this Order even if the conduct
subject to the release would otherwise violate the terms herein.

35. The United States District Court for the Northern District of California is
responsible for the interpretation and enforcement of this Agreed Protective Order. After
termination of this litigation, the provisions of this Agreed Protective Order shall continue to be
binding except with respect to those documents and information that become a matter of public
record. This Court retains and shall have continuing jurisdiction over the parties and recipients

435209.03

1    of the Protected Information for enforcement of the provision of this Agreed Protective Order

2    following termination of this litigation.  All disputes concerning Protected Information produced

3    under the protection of this Agreed Protective Order shall be resolved by the United States

4    District Court for the Northern District of California.

5    Dated:  February ___, 2009                         KEKER & VAN NEST LLP

6

7

8                                                                  By: _____

9                                                                         DAVID J. SILBERT
                                                                        Attorneys for Defendant
                                                                        GOOGLE, INC.

10

11   Dated:  February ___, 2009                         KABATECK BROWN KELLNER LLP

12

13                                                                 By: _____

14                                                                        BRIAN S. KABATECK
                                                                        Attorneys for Plaintiff
15                                                                        DAVID ALMEIDA

16   Dated:

17

18                                                                 By: _____

19                                                                        The Honorable Ronald M. Whyte
                                                                        United States District Court Judge

20

21

22

23

24

25

26

27

28

12

435209.03

**ATTACHMENT A TO THE STIPULATED PROTECTIVE ORDER**

**CONFIDENTIAL AGREEMENT**

I reside at _____.

    1.      My present employer is _____.

    2.      My present occupation or job description is _____

_____.

    3.      I have read the Stipulated Protective Order dated _____, 2009, and have been engaged as _____ on behalf of _____

_____ in the preparation and conduct of litigation styled *Almeida v. Google, Inc.*

    4.      I am fully familiar with and agree to comply with and be bound by the provisions of said Order. I understand that I am to retain all copies of any documents designated as CONFIDENTIAL and/or CONFIDENTIAL OUTSIDE COUNSEL ONLY information in a secure manner, and that all copies are to remain in my personal custody until I have completed my assigned duties, whereupon the copies and any writings prepared by me containing any CONFIDENTIAL and/or CONFIDENTIAL OUTSIDE COUNSEL ONLY information are to be returned to counsel who provided me with such material.

    5.      I will not divulge to persons other than those specifically authorized by said Order, and will not copy or use except solely for the purpose of this action, any information obtained pursuant to said Order, except as provided in said Order. I also agree to notify any stenographic or clerical personnel who are required to assist me of the terms of said Order.

    6.      In accordance with paragraph 12 of the Stipulated Protective Order (if applicable), I have attached my resume, curriculum vitae or other information to this executed Confidentiality Agreement sufficient to identify my current employer and employment history for the past four (4) years, and the cases in which I have testified as an expert at trial or by deposition within the preceding four (4) years.

    I state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

1

435209.03

1      Executed on _____, 2009.

2                                           _____

4  Company: _____

6  Address: _____

8                   _____

435209.03

**EXHIBIT I**

KEKER & VAN NEST, LLP
CHRISTA M. ANDERSON - #184325
DAVID J. SILBERT - #173128
ALYSE BERTENTHAL - #253012
710 Sansome Street
San Francisco, CA  94111
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Defendant
GOOGLE INC.

BRIAN S. KABATECK  SBN 152054
RICHARD L. KELLNER  SBN 171416
ALFREDO TORRIJOS  SBN 222458
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, California  90017
Telephone:  (213) 217-5000
Facsimile:  (213) 217-5010

*E-FILED - 4/2/09*

Attorneys for Plaintiff
DAVID ALMEIDA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID ALMEIDA, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>  v.<br><br>GOOGLE INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>       Defendants. | Case No. C 08-02088 RMW<br><br>**STIPULATION AND []**<br>**ORDER MODIFYING CASE SCHEDULE** |

1    WHEREAS, at the case management conference on August 15, 2008, the parties jointly

2  submitted a proposed schedule which the Court subsequently adopted;

3    WHEREAS, since that time, the parties have been diligently pursuing discovery;

4    WHEREAS, discovery in this matter is taking longer than the parties originally

5  anticipated;

6    WHEREAS, Google has to date produced approximately 180,000 pages of documents,

7  but believes that additional information still remains to be identified, collected, and produced in

8  response to Plaintiff's document requests;

9    WHEREAS, no previous extensions to the case schedule have been requested;

10    NOW THEREFORE, pursuant to the agreement of the parties:

11    IT IS HEREBY STIPULATED THAT, the Scheduling and Case Management Order

12  should be amended to adjust the dates by approximately 120 days, with new dates set as follows:

13    • Plaintiff shall file and serve (1) any expert report(s) on class certification; and

14      (2) his motion for class certification no later than August 3, 2009.

15    • Defendant shall file and serve (1) any expert report(s) on class certification; and

16      (2) its opposition to class certification no later than September 4, 2009.

17    • Plaintiff shall file and serve his reply in support of the motion for class

18      certification no later than September 21, 2009.

19    • The parties shall conduct a mediation on or before October 9, 2009.

20    • The hearing on Plaintiff's motion for class certification before the Court shall take

21      place on October 23, 2009, or at another date set by the Court.

22    • Non-expert discovery shall be completed no later than March 2, 2010.

23    • Expert opening reports shall be submitted by March 9, 2010.

24    • Expert opposition reports shall be submitted by March 23, 2010.

25    • Expert reply reports shall be submitted by April 6, 2010.

26    • Expert discovery shall be completed no later than April 13, 2010.

27

28

1    SO STIPULATED.

2

3    Dated: _____                    KABATECK BROWN KELLNER LLP

4

5

6                                                  By:  /s/ Alfredo Torrijos _____
                                                       ALFREDO TORRIJOS
7                                                      Attorneys for Plaintiff and the
                                                       Proposed Class
8                                                      DAVID ALMEIDA

9
     Dated: _____                    KEKER & VAN NEST, LLP
10

11

12                                                 By:  /s/ David J. Silbert _____
                                                       DAVID J. SILBERT
13                                                     Attorneys for Defendant
                                                       GOOGLE INC.
14

15

16                              **[] ORDER**

17          IT IS SO ORDERED.

18

19   Dated: _ 4/2 _____, 2009

20

21                                                 _____
                                                   HON. RONALD M. WHYTE
22                                                 UNITED STATES DISTRICT COURT
                                                   NORTHERN DISTRICT OF
23                                                 CALIFORNIA

24

25

26

27

28

**EXHIBIT J**

**Michael Storti**

| | |
|---|---|
| **From:** | David Silbert [DSilbert@KVN.com] |
| **Sent:** | Friday, May 08, 2009 10:12 AM |
| **To:** | Michael Storti |
| **Subject:** | Almeida v. Google |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |
| **Attachments:** | SFOEC04-Exchange-05082009-100008.pdf - Adobe Acrobat.pdf |

Hi Michael:

I'm not sure if I sent this verification to you previously.

**David J. Silbert**
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400
dsilbert@kvn.com
www.kvn.com

This message is intended only for the use of the people to whom it is addressed. The message is confidential, and may contain attorney-client information, attorney work product or other privileged information. If you are not the intended recipient, you are hereby notified that any use or dissemination of this message is prohibited. If you received this message in error, please notify the sender by hitting the "Reply" button, then delete the message.

**EXHIBIT K**

**Michael Storti**

| | |
|---|---|
| **From:** | David Silbert [DSilbert@KVN.com] |
| **Sent:** | Thursday, June 18, 2009 3:06 PM |
| **To:** | Michael Storti |
| **Subject:** | Dismissal |

Michael:

We'll sign a stipulation to dismiss the *Almeida* litigation.  Please forward one at your convenience.

Thanks.

**David J. Silbert**
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400
dsilbert@kvn.com
www.kvn.com

This message is intended only for the use of the people to whom it is addressed.  The message is confidential, and may contain attorney-client information, attorney work product or other privileged information.  If you are not the intended recipient, you are hereby notified that any use or dissemination of this message is prohibited.  If you received this message in error, please notify the sender by hitting the "Reply" button, then delete the message.

**EXHIBIT L**

**Michael Storti**

| | |
|---|---|
| **From:** | David Silbert [DSilbert@KVN.com] |
| **Sent:** | Thursday, August 13, 2009 9:52 AM |
| **To:** | Michael Storti |
| **Subject:** | FW: Almeida v. Google |
| **Attachments:** | Stipulation (KBK edits).DOC |

Michael:

We agreed to waive costs, but we think the recitals need to stay in the stipulation.  The attached version adds them back (and also deletes the erroneous comma in the first paragraph).  If we can't agree on this, it's probably best that you file a motion, since we've been through several iterations at this point.  I'm around today, so give me a call if you'd like to discuss.

Thanks.

---

**From:** Michael Storti [mailto:ms@kbklawyers.com]
**Sent:** Tuesday, August 11, 2009 4:53 PM
**To:** David Silbert
**Subject:** RE: Almeida v. Google

David,

Attached are plaintiff's revisions to the stipulation.  Let me know if these are acceptable.

Thanks,

Michael Storti
Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, CA  90017
(213) 217-5000 (main)
(213) 217-5013 (direct)
(213) 217-5010 (fax)
www.kbklawyers.com
ms@kbklawyers.com

---

**From:** David Silbert [mailto:DSilbert@KVN.com]
**Sent:** Monday, August 10, 2009 3:01 PM
**To:** Michael Storti
**Subject:** Almeida v. Google

Hi Michael:

Here's a revised proposed stipulation, which I think you'll be happy with.  If

so, you can sign for us and file.  Give me a call if you'd like to discuss.


**David J. Silbert**
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400
dsilbert@kvn.com
www.kvn.com

This message is intended only for the use of the people to whom it is addressed.  The message is confidential, and may contain attorney-client information, attorney work product or other privileged information.  If you are not the intended recipient, you are hereby notified that any use or dissemination of this message is prohibited.  If you received this message in error, please notify the sender by hitting the "Reply" button, then delete the message.

**EXHIBIT M**

**Michael Storti**

| | |
|---|---|
| **From:** | David Silbert [DSilbert@KVN.com] |
| **Sent:** | Wednesday, August 26, 2009 3:50 PM |
| **To:** | Michael Storti |
| **Subject:** | RE: Almeida v Google |

Michael:

We've reviewed these cases, and they don't change our conclusion that the proper course here -- where Mr. Almeida never had standing -- is dismissal, as you previously agreed.

Thanks.

**From:** Michael Storti [mailto:ms@kbklawyers.com]
**Sent:** Tuesday, August 25, 2009 5:34 PM
**To:** David Silbert
**Subject:** Almeida v Google

David,

The following cases support the argument that an amended complaint substituting a named plaintiff is appropriate as long as the amendment is not futile and otherwise satisfies the requirements of Rule 15.

> *Griggs v. Pace American Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999)
> *Palmer v. Stassinos*, 236 F.R.D. 460, 463 (N.D.Cal. 2006)

Please let me know if Google will stipulate to the filing of an amended complaint and continuing the case management deadlines.

Sincerely,

Michael Storti
Kabateck Brown Kellner LLP
644 South Figueroa Street
Los Angeles, CA 90017
(213) 217-5000 (main)
(213) 217-5013 (direct)
(213) 217-5010 (fax)
www.kbklawyers.com
ms@kbklawyers.com

_____

This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. Please delete the message and attachments without printing, copying, forwarding or saving them. If you have received this communication in error, please notify us immediately by replying to the sender of this communication or by telephone at (213) 217-5000.