William M. Audet, SBN 117456
Jason T. Baker, SBN 212380
ALEXANDER, HAWES & AUDET, LLP
152 North Third Street, Suite 600
San Jose, CA 95112
Telephone: 408.289.1776
Facsimile: 408.287.1776

Lester L. Levy
Michele Fried Raphael
Renee Karalian
WOLF POPPER LLP
845 Third Avenue
New York, NY 10022
Telephone: 212.759.4600
Facsimile: 212.486.2093

Attorneys for Plaintiffs

David T. Biderman, Bar No. 101577
Judith B. Gitterman, Bar No. 115661
M. Christopher Jhang, Bar No. 211463
PERKINS COIE LLP
180 Townsend Street, 3rd Floor
San Francisco, California 94107-1909
Telephone: 415.344.7000
Facsimile: 415. 244-7050

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CLRB HANSON INDUSTRIES LLC d/b/a INDUSTRIAL PRINTING, and HOWARD STERN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE, INC.,<br><br>Defendant. | CASE NO: C05-03649 JW<br><br>**Joint Case Management Statement (Including Joint Fed. R. Civ. P. 26(f) Report, and Proposed Orders, Pursuant to N.D. L.R. 16-9)** |

## JOINT CASE MANAGEMENT STATEMENT

JOINT FEDERAL RULE OF CIV. PROC. 26(f) REPORT
(CASE NO: C05 03649)
Doc. 151841

The parties to the above-entitled action jointly submit this Case Management Statement and Proposed Orders.

## DESCRIPTION OF THE CASE

**1. Brief Description Of The Events Underlying the Action**

**A. Plaintiffs' Brief Description of the Case**

This class action is brought by Plaintiffs CLRB Hanson Industries, LLC, d/b/a Industrial Printing and Howard Stern on behalf of themselves and similarly situated advertisers against Defendant Google, Inc. ("Google") arising from Google's practice of overbilling persons who pay to have their website listed as a sponsored link on the Google search results page. Pursuant to Google's uniform AdWords Agreement, class members "purchased" key words which are supposed to trigger their ad to appear when someone enters those words in the Google search box. As detailed in the First Amended Complaint (the "FAC"), during the sign-up process for the AdWords Agreement and in the form AdWords Agreement which consists of the AdWords Program Terms (2 pages) and 142 pages of "Frequently Asked Questions" ("FAQs," collectively, the "Agreement" and located on Google's website), Google advertised and offered potential advertisers the right to set their own daily advertising budget and to pay no more than that amount for each day that their ad runs. Google further offered and gave advertisers the right to pause their ad and to not be charged for those days that their ad is paused. In contrast to its representations, Google converts the daily budget set by an advertiser into a monthly budget (by multiplying the chosen daily budget by the number of days in a month) and bills the advertiser up to said monthly budget - - regardless of whether the ad was paused. Google overdelivers ads on days they run and exceeds the daily budget on any given day, but does not provide any credit if the cumulative overage in any given month is within the "monthly" budget. For example, if an advertiser sets his/her daily budget at $100, runs his/her ad only on Mondays, 4 days in a month, and Google overdelivers the ad by 20% on each of the four days the ad runs and charges the advertiser $480 for the month ($120 per day), Google will not provide a credit even though it exceeded the advertiser's "daily budget" by $80, because it deems the charge to be within the "monthly budget" of $3,000 ($100 per day times 30 days). As alleged in the FAC, Plaintiffs claim that this conduct constitutes breach of contract, breach of the

implied covenant of good faith and fair dealing, a violation of California Business & Professional Code §§ 17200 *et seq.,* a violation of California Business & Professional Code §§ 17500 *et seq.,* and unjust enrichment.

### B. Defendant's Brief Description Of The Case

Google's AdWords program ("AdWords") is an advertising program where Google posts advertisers' sponsored ads on Internet search result pages and websites accessed through the Google search engine or on Google's advertising partners' sites, based upon search terms entered by the Internet user. Advertisers sign-up for AdWords on Google's AdWords webpage. During the sign-up process, advertisers agree to the terms and conditions set forth in Google's AdWords Program Terms ("Terms") and acknowledge that terms of the program are further described in the AdWords' Frequently Asked Questions ("FAQs"). Collectively, the Terms and FAQs comprise the advertiser's "Agreement" with Google.

Under AdWords, advertisers' ads (sponsored links) appear on a computer user's Internet search page depending upon the search term typed in by the user. The advertiser specifies the search terms (the AdWords or key words) which will trigger the display of the advertisers' ads. An advertiser is only charged when an Internet user clicks on the sponsored link and visits the advertiser's site.

The advertiser specifies the cost (the "Cost Per Click" or "CPC") that it is willing to pay. An advertiser's charges are wholly dependent upon the number of Internet users who click on an advertiser's sponsored links ("click throughs"). An advertiser could receive very few click throughs one day, and a large number of click throughs the next. To make sure that an advertiser's ads obtain the maximum available click throughs in a monthly billing period, Google will deliver advertisements in excess of a specified daily budget, so long as the monthly total does not exceed the daily budget times the number of days in the month.

Google fully discloses its practice of maximizing an advertiser's potential click throughs per month. The FAQs section of the AdWords program discloses to advertisers:

> "Though it may sometimes appear that your daily budget is being exceeded,
> that usually isn't the case. Here's why: Our system works to deliver enough

| | |
|---|---|
| 1 | ads to fully satisfy your daily budget over the course of each month.  (That is, |
| 2 | your daily budget times the total number of days in the month.)  Because page |
| 3 | views fluctuate from day to day, <u>we may over-deliver ads on a given day to</u> |
| 4 | <u>make up for potential shortfalls later in the month</u>.  For instance, if you budget |
| 5 | US$100 per day in a 30-day month, you may receive more than US$100 in |
| 6 | clicks on a given day, but the maximum you would pay is US$3,000 for that |
| 7 | month. |
| 8 | |
| 9 | "At the end of the month our system automatically recognizes any charges in |
| 10 | excess of your total monthly budget.  When this happens, you won't be billed |
| 11 | for those excess charges.  Instead, you'll see an over-delivery credit for those |
| 12 | charges on your Advertising Costs page. . . |
| 13 | |
| 14 | "Over time, this system ensures that you maximize your advertising |
| 15 | opportunities while protecting you from being billed in excess of your daily |
| 16 | budget." |
| 17 | |
| 18 | Moreover, "daily budget" is a defined term under the AdWords program, which also |
| 19 | discloses this practice.  The definition reads: |
| 20 | "The amount you're willing to spend on a specific AdWords campaign each |
| 21 | day. |
| 22 | |
| 23 | "AdWords displays your ad as often as possible while staying within your |
| 24 | daily budget.  When the budget limit is reached, you ads will typically stop |
| 25 | showing for that day. |
| 26 | |
| 27 | "On any single day, the AdWords system <u>may deliver up to 20% more ads</u> |
| 28 | <u>than your daily budget calls for</u>.  This helps make up for other days in which |

|   |   |
|---|---|
| 1 | your daily budget is not reached.  However, you'll never be charged more |
| 2 | than your average daily budget over the course of a month.  For example: if |
| 3 | your daily budget is $10 and the month has 30 days, you might be charged |
| 4 | up to $12 on any single day but your monthly charges will never exceed |
| 5 | $300." |
| 6 | Google also fully discloses that advertisers' daily budgets are based on a 30 or 31 day |
| 7 | calculation and that advertisers may be charged up to 30 or 31 times their daily budgets in a billing |
| 8 | period.  The examples provided in the FAQs and "daily budget" definition demonstrate this point. |
| 9 | See FAQ ("For instance, if you budget US$100 per day in a 30-day month, you may receive more |
| 10 | than US$100 in clicks on a given day, but the maximum you would pay is US$3,000 for that |
| 11 | month."); "Daily Budget" definition ("For example: if your daily budget is $10 and the month has |
| 12 | 30 days, you might be charged up to $12 on any single day but your monthly charges will never |
| 13 | exceed $300."). |
| 14 | Additionally, the FAQs disclose that "[Google's] system works to deliver enough ads to fully |
| 15 | satisfy your daily budget over the course of each month.  (That is, your <u>daily budget times the total</u> |
| 16 | <u>number of days in the month</u>.)"  Likewise, the definition of "daily budget" provides that advertisers |
| 17 | will "never be charged more than [their] average daily budget <u>over the course of a month</u>." |
| 18 | Nowhere in these documents is an exception made for advertisers who have paused their ad |
| 19 | campaign.  Indeed, the FAQs and the "daily budget" definition all state that monthly bills are based |
| 20 | on the number of days in the month. |
| 21 | **2.     The Principal Factual Issues Which the Parties Dispute:** |
| 22 | **Plaintiffs' Position** |
| 23 | Plaintiffs contend that there are no substantial factual issues in dispute with respect to |
| 24 | liability.  Whether Google charges advertisers more than their daily budget on any given day, and |
| 25 | whether it holds each advertiser liable up to a monthly budget (daily budget times the number of |
| 26 | days in a month) regardless of how many days their ad ran, should be readily determinable, if even |
| 27 | in dispute.  Similarly, whether Google advertised and offered advertisers the right to set their own |
| 28 | daily budget and to not be charged for those days that their ad does not run should be readily |

JOINT FEDERAL RULE OF CIV. PROC. 26(f) REPORT
(CASE NO: C05 03649)
Doc. 151841                                            4

determinable, if even in dispute.  Hence, with defendant's cooperation, the parties should be able to expeditiously submit the legal issues to the Court for summary disposition as to liability.  Then, if plaintiffs prevail on the summary disposition as to liability, damages can be determined.

**Defendant's Position**

The principal factual issues disputed by the parties are:

(1)     Whether Google informs advertisers that the AdWords system may exceed what an advertiser's daily budget calls for on any single day in order to make up for other days in which the advertiser's daily budget was not reached and to maximize the advertiser's advertising opportunities.

(2)     Whether Google informs advertisers that advertisers' daily budgets are based on a 30 or 31 day calculation and that advertisers may be charged up to 30 or 31 times their daily budgets in a billing period.

(3)     Whether Google issues overdelivery credits for any charges in excess of an advertiser's total monthly budget.

(4)     Whether the putative class includes members who received overdelivery credits on their billing statements, and those who did not receive this credit.

(5)     Whether the putative class includes members whose claims are barred by the statute of limitations.

(6)     Whether the putative class includes members who advertised under different versions of the AdWords program.

(7)     Whether the putative class includes members who paused their advertising campaigns, and those who did not pause.

(8)     Whether during the sign up process Google "explicitly tells prospective advertisers that they will only be billed [based on the number of] days their ad runs."

(9)     Whether advertisers were charged for periods when their ads were paused.

(10)    Whether Google "converts the daily budgets set by advertisers into monthly budgets."

(11)    Whether the AdWords agreement "expressly distinguishes. . . 'monthly' budgets from an advertiser's 'daily' budget."

(12)    Whether Google "routinely" overdelivers ads to allow advertisers' accounts to go over their

daily budget.

(13) Whether Google "has a substantial financial interest in increasing the charges for AdWords advertising."

(14) The characterization of the FAQs as a "maze of more than 100 pages of information."

(15) The specific amounts plaintiffs claim they were charged for advertising in their First Amended Complaint.

**3.      The Principal Legal Issues Which the Parties Dispute:**

**Plaintiffs' Position**

The principal legal issues in dispute as to liability are whether Google's conduct of overdelivering ads, converting the daily budget set by an advertiser into a monthly budget and charging advertisers up to said monthly amount irrespective of the number of days the ad ran during the month, together with Google's representations and its AdWords Agreement, constitutes a breach of the AdWords Agreement, breach of the implied covenant of good faith and fair dealing, a violation of California Business & Professional Code §§ 17200 *et seq.*, a violation of California Business & Professional Code §§ 17500 *et seq.,* and/or unjust enrichment.

**Defendant's Position**

The principal legal issues disputed by the parties are:

(1)     Whether plaintiffs can satisfy the requirements for maintaining a class action. Specifically:

(a)     Whether plaintiffs' can satisfy the commonality requirement of FRCP Rule 23 by demonstrating that a common nucleus of operative facts applies to the putative class, that relief will turn on questions of law applicable in the same manner to each putative member of the class, and that the alleged common issues of fact or law are of sufficient importance to the case that the Court finds that a class action is the most efficient method of determining the rights of the parties.

(b)     Whether plaintiffs can satisfy the typicality requirement by demonstrating that their claims are typical of the claims of the putative class, that they possess the same interest and suffer the same injury as the putative class members, and that their claims arise from the same event or practice or course of conduct that gives rise to the claims of putative class members and are based on the same legal theory.

(c) Whether the putative class is so numerous that joinder of all putative members individually is impracticable, and whether class membership is objectively ascertainable.

(d) Whether plaintiffs are able meet their burden of demonstrating that they can fairly and adequately protect the interests of all members in the putative class, that their attorneys are qualified and competent, and that they do not have any interests antagonistic to the remainder of the putative class.

(e) Whether plaintiffs can establish that a class action remedy is superior to individual claims by demonstrating that the interests of putative members in individually controlling the action, the extent and nature of any pending litigation commenced by or against the putative class involving the same issues, the desirability or undesirability of concentrating the litigation of the claims in this forum, the availability of alternative remedies, and the difficulties likely to be encountered if this action were to proceed as a class lawsuit, all weight in favor of a class action proceeding.

(2) Whether plaintiffs have standing to bring the claims asserted.

(3) Whether Google is entitled under the express terms of the agreement with advertisers to overdeliver ads in excess of an advertiser's daily budget on any single day.

(4) Whether Google is entitled under the express terms of its agreement with advertisers to calculate the daily budget on a 30 or 31 day basis.

(5) Whether there was a breach of contract.

(6) Whether there was a breach of the implied covenant of good faith and fair dealing.

(7) Whether Google violated unfair competition laws by overdelivering ads in excess of the advertiser's daily budgets on any single day when Google's right to do this is fully disclosed in the contract. [Cal. Bus. & Prof. Code §§ 17200 *et seq*.]

(8) Whether Google violated unfair competition laws by calculating advertiser's daily budgets on a 30 or 31 day basis when Google's right to do this is fully disclosed in the contract. [Cal. Bus. & Prof. Code §§ 17200 *et seq*.]

(9) Whether Google violated false advertising laws by overdelivering ads in excess of the advertiser's daily budgets on any single day when Google's right to do this is fully disclosed in the contract. [Cal. Bus. & Prof. Code §§ 17500 *et seq*.]

1  (10)  Whether Google violated false advertising laws by calculating advertiser's daily budgets on a
2  30 or 31 day basis when Google's right to do this is fully disclosed in the contract. [Cal. Bus. &
3  Prof. Code §§ 17500 *et seq*.]
4  (11)  Whether plaintiffs may sustain an unjust enrichment cause of action without alleging the
5  invalidity of their agreement with Google.
6  (12)  Whether plaintiffs' claims are limited or precluded since the terms and conditions of their
7  agreement with Google disclaims "all warranties, express or implied," precludes "liab[ility] for any
8  consequential, special, indirect, exemplary, punitive, or other damages whether in contract, tort or
9  any other legal theory," and limits each party's aggregate liability "to amounts paid or payable to
10 Google by [the advertiser] for the ad giving rise to the claim."

**4.     The Other Factual Issues Which Remain Unresolved**:

**Plaintiffs' Position**

There are no other significant unresolved factual issues at this time as to liability.

**Defendant's Position**

Other factual issues, such as service of process, personal jurisdiction, subject matter jurisdiction or venue, are not at issue.

**5.     The Parties Which Have Not Been Served And The Reasons**:

All parties have been served.

**6.      The Additional Parties Which The Parties Intend To Join**:

Defendant has no present intention to join additional parties.  Plaintiffs may add additional plaintiffs.

**7.     The Following Parties Consent To Assignment Of This Case To A United States Magistrate Judge For [Court or Jury] Trial**

No party consents to assignment of this case to a Magistrate Judge for trial.

**ALTERNATIVE DISPUTE RESOLUTION**

**8.    The Notice Of Need For ADR Phone Conference**

On March 9, 2006, the parties filed a Notice of Need for ADR Phone Conference.  A phone conference is scheduled for March 29, 2006 at 10:30 a.m.

| | |
|---|---|
| 1 | **DISCLOSURES** |
| 2 | **9.** **The Parties Certify That They Have Made The Following Disclosures** |
| 3 | The parties have agreed to exchange initial disclosures pursuant to FRCP 26(a) on March 29, |
| 4 | 2006. |
| 5 | **DISCOVERY** |
| 6 | **10.** **The Parties Agree To The Following Discovery Plan** |
| 7 | See Joint Fed. R. Civ.P. 26(f) Report below. |
| 8 | **PLAINTIFF'S POSITION REGARDING CLASS ISSUES** |


# DISCLOSURES

**9.** **The Parties Certify That They Have Made The Following Disclosures**

The parties have agreed to exchange initial disclosures pursuant to FRCP 26(a) on March 29, 2006.

# DISCOVERY

**10.** **The Parties Agree To The Following Discovery Plan**

See Joint Fed. R. Civ.P. 26(f) Report below.

# PLAINTIFF'S POSITION REGARDING CLASS ISSUES

**11.** **The Specific Paragraphs Of FRCP 23 Under Which The Action Is Maintainable As A Class Action**

**Plaintiffs' Position**

Plaintiffs request both injunctive relief and damages, so that class certification is proper under both Rule 23(b)(2) and Rule 23(b)(3).

**Defendant's Position**

Defendant contends that class certification is not proper under Rule 23(b)(3), since the questions of law or fact common to the members of the class do not predominate over any questions affecting only individual members. Also, it is questionable whether plaintiffs have standing. The difficulties that would arise from individual factual and legal issues would outweigh any benefits from the management of this case as a class action.

**12.** **A Description Of The Class Or Classes In Whose Behalf The Action Is Brought**

Plaintiffs seek certification of a plaintiff class defined in the First Amended Complaint as "all persons who were charged by Google more than their set daily budgets for their advertising campaign(s)."

**13.** **Facts Showing That Plaintiff Is Entitled To Maintain This Action Under FRCP 23(a) And (b)**

    **a.** **Numerosity**.

**Plaintiffs' Position**

Plaintiffs maintain that thousands of advertisers have been affected by Google's conduct.

**Defendant's Position**

Defendant contends that it is premature to determine if the purported class is sufficiently numerous.

    **b.**    **Commonality**.

**Plaintiffs' Position**

Plaintiffs maintain that the issues of fact and law with regard to Google's representations in connections with its AdWords program together with its conversion of a daily budget into a monthly budget and overbilling and whether such conduct constitutes breach of contract, breach of the duty of good faith and fair dealing, violation of California Business & Professional Code §§ 17200 *et seq.,* a violation of California Business & Professional Code §§ 17500 *et seq.,* and/or unjust enrichment, are common among all class members.

**Defendant's Position**

Defendant contends that commonality is not satisfied. A common nucleus of operative facts does not apply to plaintiffs' defined class. Among other things, plaintiffs' class definition overbroadly encompasses putative class members who may have paused their advertising campaigns, and those who may not have paused. In addition, putative class members may have received an "overdelivery credit" on their billing statement. The class definition also does not specify a time period; thus, inconsistent legal issues may apply since some members of the putative class may be barred by the statute of limitations or may have advertised under a different version of the AdWords program.

    **c.**    **Typicality**.

**Plaintiffs' Position**

Plaintiffs maintain that their claims with regard to Google's conduct are the same as the claims of other class members.

**Defendant's Position**

Defendant contends that typicality is not satisfied for the same reasons that the commonality requirement is not satisfied. Among other things, plaintiffs' class definition overbroadly encompasses putative class members who may have paused their advertising campaigns, and those

who may not have paused.  In addition, putative class members may have received an "overdelivery credit" on their billing statement.  The class definition also does not specify a time period; thus, inconsistent legal issues may apply since some members of the putative class may be barred by the statute of limitations or may have advertised under a different version of the AdWords program.

### d. Adequacy.

**Plaintiffs' Position**

Plaintiffs allege in the complaint that plaintiffs have retained sophisticated, experienced counsel and are dedicated to the successful resolution of this action.

**Defendant's Position**

Defendant contends that it is premature to determine if this requirement is satisfied and that the burden is on plaintiffs to demonstrate adequacy.

### e. Superiority.

**Plaintiffs' Position**

Plaintiffs maintain that a class action is the superior method to adjudicate common issues. Absent a class action, each individual advertiser would have to litigate the same issues, namely, whether Google's conduct constituted the aforementioned legal claims, against Google, an extremely well-financed company.  The cost of such litigation by each individual advertisers is likely to exceed their individual recovery.

**Defendant's Position**

Defendant contends a class action is not superior to individual suits because questions of law and fact common to the members of the class do not predominate over questions affecting only individual members.  As stated in the sections above, some class members may not have paused their campaigns, may have received overdelivery credits, may have claims that are barred by the statute of limitations, or may have advertised under a different version of the AdWords program. The difficulties that would arise from individual factual and legal issues would outweigh any benefits from the management of this case as a class action.

14. **A Proposed Date for the Court to Consider Whether the Case Can Be Maintained as a Class Action.**

**Plaintiffs' Position**

Plaintiffs believe that it is premature to set an exact date by which to file a motion for class certification because some discovery is necessary. Plaintiffs do intend to move for certification as soon as practicable.

**Defendant's Position**

Defendant agrees that it is premature to set a date for the filing of a motion for class certification and that discovery is necessary.

## TRIAL SCHEDULE

15. **The Parties Request A Trial Date As Follows**

The parties agree that it is premature to estimate a date for trial at this time.

16. **Length Of Trial**

The parties agree that it is premature to estimate the length of trial at this time.

# **JOINT FED. R. CIV. P. 26(f) REPORT**

Counsel for the parties have consulted as required by Federal Rule of Civil Procedure ("Fed.R. Civ. P.") 26(f), and the parties hereby submit this Joint Report as to all agreements reached regarding the matters set forth in Fed. R. Civ. P. 26(f), and a brief description of the positions of each party on those matters on which they disagree. At the same time as this Report, the parties hereby submit the [Proposed] Case Management Order.

**1.** **Timing, Form Or Requirement For Rule 26(a) Disclosures**.

The parties agree that no changes to the form or requirements of the Rule 26(a) disclosures are necessary. The parties will exchange their Rule 26(a) disclosures on or before March 29, 2006.

**2.** **Subjects For Discovery, Scheduling Of Discovery, Phases Of Discovery, And Focus Of Discovery**

**(a)** **Subjects For Discovery.**

**Plaintiffs' Position**.

Plaintiffs assert claims for breach of contract, breach of the implied covenant of good faith and fair dealing, a violation of California Business & Professional Code §§ 17200 *et seq.,* a violation of California Business & Professional Code §§ 17500 *et seq.,* and unjust enrichment. Plaintiffs seek damages and equitable relief, including reimbursement of amounts charged by Google in excess of advertisers' daily budgets, and enjoining Google from continuing to charge more than advertisers' daily budgets, costs and expenses of litigation, including attorneys' fees, and all additional and further relief that may be available.

While Plaintiffs contend that the material facts as to liability should not be in dispute, absent cooperation by Google, they anticipate having to conduct discovery concerning Google's (non)compliance with the above stated law, as well as to class issues including the number of Google's customers who have been affected by Google's violations of the above stated laws, as well as of the amount of damages, and (absent Google's cooperation), to Google's practice of converting daily budgets into monthly budgets and its representations and offers concerning the daily budget, advertisers' rights to control their own advertising costs and the right to pause their ads.

**Defendant's Position**

Defendant contends that before plaintiffs' class certification motion is heard, discovery should be limited to certification issues and should not be permitted on merits issues. Thus, prior to the certification hearing, the parties' discovery should be limited to information pertaining to the numerosity, commonality, and typicality of plaintiffs' claims, and the adequacy of representation.

Following the certification hearing, discovery will be conducted on the following subjects:

1. Any and all charges incurred by plaintiffs from Google.
2. Any and all billing statements received by plaintiffs from Google.
3. Any and all overdelivery credits plaintiffs received from Google.
4. Any and all evidence of payments by plaintiffs to Google for advertising charges.
5. Any and all AdWords Terms or FAQs in plaintiffs' possession.
6. Any and all communications, written and oral, between plaintiffs and Google pertaining to the AdWords program.
7. Any and all changes plaintiffs made to the status of their advertising campaign (such as pausing/unpausing a campaign or changing the daily budget amount) and the reasons for such changes.

**(b)** **Scheduling Of Discovery.**

**Plaintiffs' Position**

Plaintiffs propose that all non-expert discovery be completed by December 31, 2006, that Plaintiffs' experts reports be produced by January 31, 2007, Defendant's expert reports be produced by , March 1, 2007 and that expert discovery be completed by March 30, 2007.

**Defendant's Position**

Defendant contends that discovery should be limited to certification issues before plaintiffs' class certification motion is heard. Defendant proposes that class discovery be concluded by September 30, 2006, and if applicable, that the briefing and hearing schedule on plaintiff's class certification motion be set thereafter, with defendant's opposition due at least 45 days after the motion is filed. Defendant proposes that non-expert discovery on the merits be completed by March 31, 2007; plaintiff's expert reports be produced by May 1, 2007, defendant's expert reports be

produced by June 1, 2007, and that expert discovery be completed by July 1, 2007.

### (c) <u>Whether Discovery Should Be Conducted In Phases Or Limited To Particular Issues.</u>

**<u>Plaintiffs' Position</u>**

Plaintiffs contend that bifurcation of discovery or limiting it to specific issues will not serve the purposes of judicial efficiency and economy and will defeat same. In this consumer litigation, discovery related to class certification necessarily overlaps substantially with "merits" discovery. For example, the facts needed to prove that Plaintiffs' claims are typical of those of the members of the class and that there are common issues of fact and law alleged in the Complaint are also relevant to the merits. Any attempt to separate these material facts and pigeon-hole them into a "class certification" box or a "merits" box will give rise to delay, wasted judicial resources and higher litigation expenses.

**<u>Defendant's Position</u>**

Defendant contends that discovery should be conducted in two phases – one for issues limited to class certification, and a second for the merits of plaintiffs' claims. Prior to the certification hearing, the parties' discovery should be limited to information pertaining to the numerosity, commonality, and typicality of plaintiffs' claims, and the adequacy of representation. After the court has ruled on certification, the parties should be permitted to conduct discovery on the merits.

### 3. <u>Changes Made In The Limitations On Discovery Imposed By Rules.</u>

**<u>Plaintiffs' Position</u>**

Plaintiffs believe that the limitations on discovery imposed under the Federal Rules or Local Rules may be inappropriate to this complex class action. Although Plaintiffs contend that the material issues of fact are not in dispute, Defendant's litigation tactic may require Plaintiffs to take certain discovery that it not anticipated at this time. Whereas it appears that the ten (10) depositions may be sufficient, more than the allowable twenty-five (25) interrogatories are likely to be required. While Plaintiffs will make every possible effort to narrow discovery, they believe it is premature at this time to determine the appropriate number of depositions and their lengths and the number of

interrogatories.

**Defendant's Position**

Defendant contends that prior to the certification hearing, the parties' discovery should be limited to certification issues. Defendant does not at this time request changes to the discovery limits imposed by the Federal Rules.

**4.     Other Orders That Should Be Entered.**

At this time, the parties anticipate requesting entry of a stipulated confidentiality order. Plaintiffs also anticipate requesting entry of a non-destruct order.

**5.     Motion Practice**.

Plaintiffs expect to file an early motion for summary disposition on liability, a non-destruct order, possibly a motion to add additional plaintiffs, a motion for class certification, and if appropriate, a motion for declaratory and injunctive relief during the pendency of merits discovery, and if necessary, a motion for summary judgment after the completion of merits discovery.

Defendants expect to file an opposition to plaintiffs' class certification motion and a motion for summary judgment after the completion of merits discovery.

**6.     Scheduling Conference**.

The parties will appear before the Court on April 3, 2006, for the initial Scheduling Conference in this matter.

DATED: March 23, 2006

**ALEXANDER, HAWES & AUDET, LLP**

By:     /s/
William M. Audet (SBN 117456)
Jason T. Baker (SBN 212380)
152 North Third Street, Suite 600
San Jose, CA 95112
Telephone: 408.289.1776
Facsimile: 408.287.1776

**WOLF POPPER LLP**
Lester L. Levy
Michele F. Raphael
845 Third Avenue
New York, NY 10022

|   |                          |                                                  |
|---|--------------------------|--------------------------------------------------|
| 1 |                          | Telephone: 212.759.4600                          |
| 2 |                          | Facsimile: 212.486.2093                          |
|   |                          | Attorneys for Plaintiffs                         |
| 3 |                          |                                                  |

DATED: March 23, 2006          **PERKINS COIE**

By: ⎯/s/⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
   David T. Biderman
   Judith B. Gitterman
   M. Christopher Jhang
   425 Market Street
   San Francisco, CA 94105
   Telephone: 415.268.7000
   Facsimile: 415.268.7522

Attorneys for Defendant

| | |
|---|---|
| UNITED STATES DISTRICT COURT | |
| NORTHERN DISTRICT OF CALIFORNIA | |
| SAN JOSE DIVISION | |

| | |
|---|---|
| CLRB HANSON INDUSTRIES LLC d/b/a INDUSTRIAL PRINTING, and HOWARD STERN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>vs.<br>GOOGLE, INC.,<br>Defendant. | CASE NO: C05-03649 JW |

**PLAINTIFFS' [PROPOSED] CASE MANAGEMENT ORDER**

This Court, having conducted a Case Management Conference on April 3, 2006, hereby Orders that:

(1) The parties shall complete all non-expert discovery by _____;

(2) Plaintiff shall produce their expert reports on or before _____;

(3) Defendant shall produce its expert reports on or _____.

(4) Expert discovery shall close on _____.

Dated:

_____
United States District Court Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CLRB HANSON INDUSTRIES LLC d/b/a INDUSTRIAL PRINTING, and HOWARD STERN, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　Plaintiffs,<br>vs.<br><br>GOOGLE, INC.,<br>　　　　　　　Defendant. | CASE NO: C05-03649 JW |

### **DEFENDANT'S [PROPOSED] CASE MANAGEMENT ORDER**

This Court, having conducted a Case Management Conference on April 3, 2006, hereby Orders that:

(1) The parties shall complete all class certification discovery by _____;

(2) The parties shall complete all non-expert discovery by _____;

(3) Plaintiff shall produce their expert reports on or before _____;

(4) Defendant shall produce its expert reports on or _____.

(5) Expert discovery shall close on _____.

Dated:

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　United States District Court Judge